Marc Van Der Hout, CA SBN 80778
Judah Lakin, CA SBN 307740
Amalia Wille, CA SBN 293342
Van Der Hout, Brigagliano & Nightingale LLP
180 Sutter Street, Suite 500
San Francisco, CA 94104
Tel: (415) 981-3000
Fax: (415) 981-3003
ndca@vblaw.com

Alison Pennington, CA SBN 231861
Lisa Knox, CA SBN 279406
Julia Rabinovich, CA SBN 290730
Jesse Newmark, CA SBN 247488
Centro Legal de la Raza
3400 E 12th Street
Oakland, CA 94601
Tel: (510) 679-1608
Fax: (510) 427-9164
apennington@centrolegal.org

*Attorneys for Plaintiffs-Petitioners and the Proposed Class*
*(Additional Counsel listed on following page)*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Esteban ALEMAN GONZALEZ,<br>Jose Eduardo GUTIERREZ SANCHEZ,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>Jefferson B. SESSIONS, Attorney General, Department of Justice; Kirstjen NIELSEN, Secretary, Department of Homeland Security; James McHENRY, Director, Executive Office for Immigration Review, Department of Justice; MaryBeth KELLER, Chief Immigration Judge, Executive Office for Immigration Review, Department of Justice; David W. JENNINGS, Field Office Director for the San Francisco Field Office of Immigrations and Customs Enforcement, Department of Homeland Security; David C. LIVINGSTON, Sheriff, Contra Costa County; Kristi BUTTERFIELD, Facility Commander, West County Detention Facility; Contra Costa County<br><br>Defendants. | Case No. 3:18-CV-01869-JSC<br><br>NOTICE OF MOTION AND MOTION PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br><br>Date: May 31, 2018<br>Time: 9:00 a.m.<br>Place: 15th Floor, Courtroom F<br>Before: Hon. Jacqueline Scott Corley |

Matthew H. Green, AZ SBN 020827*
Law Offices of Matthew H. Green
130 West Cushing Street
Tucson, AZ 85701
Tel: (520) 882-8852
Fax: (520) 882-8843
matt@arizonaimmigration.net

Vasudha Talla, CA SBN 316219
Julia Mass, CA SBN 189649
American Civil Liberties Union
Foundation of Northern California
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437
jmass@aclunc.org
vtalla@aclunc.org

Michael Kaufman, CA SBN 254575
American Civil Liberties Union
Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
Tel: (213) 977-5232
Fax: (213) 977-5297
mkaufman@aclusocal.org

Bardis Vakili, CA SBN 247783
American Civil Liberties Union Foundation
of San Diego and Imperial Counties
P.O. Box 87131
San Diego, CA 92138-7131
Tel: (619) 232-2121
Fax: (619) 232-0036
bvakili@aclusandiego.org

*Attorneys for Plaintiffs-Petitioners and the Proposed Class*

* seeking *pro hac vice* admission

MOTION FOR PRELIMINARY INJUNCTION
No. 3:18-CV-01869-JSC

# TABLE OF CONTENTS

NOTICE OF MOTION .............................................................................................................. 1

RELIEF REQUESTED (CIVIL L.R. 7-2(B)(3)) .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.    STATEMENT OF ISSUES TO BE DECIDED ..................................................... 1

II.    INTRODUCTION ..................................................................................................... 1

III.    LEGAL BACKGROUND ......................................................................................... 2

    A.    Statutory Detention Authority ..................................................................... 2

    B.    Reinstatement of Removal Under 8 U.S.C. § 1231(a)(5) ........................... 3

    C.    Administrative Removal under 8 U.S.C. § 1228(b) ................................... 5

    D.    Denied Motions to Reopen with Stay of Removal ..................................... 6

IV.    STATEMENT OF FACTS ....................................................................................... 6

    A.    Esteban Aleman Gonzalez ........................................................................... 7

    B.    Jose Eduardo Gutierrez Sanchez ................................................................. 8

    C.    Putative Class Members ................................................................................ 9

V.    ARGUMENT .......................................................................................................... 10

    A.    Plaintiffs Are Likely to Succeed on the Merits ...................................... 10

        1.    Binding Precedent Mandates that Plaintiffs Will Likely Succeed on the Merits of Their Claim that, by Statute, They Are Entitled to Bond Hearings .............. 10

            a)    Controlling Case Law Mandates that Plaintiffs, as Detainees Under 8 U.S.C. § 1231(a)(6), be Afforded Bond Hearings Once Their Detention Reaches Six Months ................................................................................ 11

            b)    District Courts Have Uniformly Rejected Defendants' Unlawful Practice of Denying Bond Hearings to Plaintiffs .................................................. 13

        2.    Plaintiffs are Likely to Succeed on the Merits of Their Claim that, as a Matter of Due Process, They Are Entitled to Bond Hearings ........................................... 15

        3.    Procedural Protections at Bond Hearings ...................................... 17

        4.    Plaintiffs Are Not Required to Exhaust Administrative Remedies ................. 18

    B.    Plaintiffs Will Suffer Irreparable Harm from Their Continued Detention in the Absence of Preliminary Injunctive Relief ................................................ 20

    C.    The Balance of Hardships Weighs Heavily in Plaintiffs' Favor, and an Injunction is in the Public Interest. ............................................................ 22

VI.    CONCLUSION ...................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Acevedo-Rojas v. Clark*,
    No. C14-1323-JLR, 2014 WL 6908540 (W.D. Wash. Dec. 8, 2014).......................................14

*Addington v. Texas*,
    441 U.S. 418 (1979)..........................................................................................................17

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ........................................................................................10

*Alvarado v. Clark*,
    No. C14-1322-JCC, 2014 WL 6901766 (W.D. Wash. Dec. 5, 2014) .....................................14

*Am. Trucking Ass'ns v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ........................................................................................10

*Ana Silvia Cortes Herrera v. United States Attorney Gen.*,
    No. CV-16-03931-PHX-DJH, 2017 WL 2957798 (D. Ariz. July 11, 2017)............................14

*Andrade-Garcia v. Lynch*,
    828 F.3d 829 (9th Cir. 2016) ......................................................................................3, 4

*Ariz. Dream Act Coal. v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ........................................................................................23

*Bahena v. Aitken*,
    No. 117-CV-00145-JLT, 2017 WL 2797802 (E.D. Cal. June 28, 2017)................................14

*Baños v. Asher*,
    No. C16-1454-JLR, 2018 WL 1617706 (W.D. Wash. Apr. 4, 2018)......................................15

*Barahona-Gomez v. Reno*,
    167 F.3d 1228 (9th Cir. 1999) ........................................................................................24

*Barajas-Romero v. Lynch*,
    846 F.3d 351 (9th Cir. 2017) ......................................................................................4, 6

*Barker v. Wingo*,
    407 U.S. 514 (1972)..........................................................................................................21

*Borjas-Calix v. Sessions*,
    No. CV16-00685-TUC-DCB, 2018 WL 1428154 (D. Ariz. Mar. 22, 2018) ...........................15

*Borjas-Calix v. Sessions*,
    No. CV-16-685-TUC-DCB, 2017 WL 1491629 (D. Ariz. Apr. 26, 2017) ...........................14

*Casas-Castrillon v. Dept. of Homeland Sec.*,
    535 F.3d 942 (9th Cir. 2008) .........................................................................................16

*Cooper v. Oklahoma*,
    517 U.S. 348 (1996)..........................................................................................................17

*Cortez v. Sessions*,
    No. 18-CV-01014-DMR, 2018 WL 1510187 (N.D. Cal. Mar. 27, 2018) ...................15, 19, 20

*Demore v. Kim*,
    538 U.S. 510 (2003)..........................................................................................................16

*Diop v. ICE/Homeland Sec.*,
    656 F.3d 221 (3d Cir. 2011).............................................................................................16

*Diouf v. Mukasey*,
    542 F.3d 1222 (9th Cir. 2008) ..........................................................................................6

*Diouf v. Napolitano*,
  634 F.3d 1081 (9th Cir. 2011) ................................................................... *passim*
*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*,
  959 F.2d 742 (9th Cir. 1991) ................................................................................ 19
*Elrod v. Burns*,
  427 U.S. 347 (1976) ................................................................................................ 22
*Foucha v. Louisiana*,
  504 U.S. 71 (1992) .................................................................................................. 17
*Giron-Castro v. Asher*,
  No. C14-0867-JLR, 2014 WL 8397147 (W.D. Wash. Oct. 2, 2014) ........................ 14
*Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*,
  512 F.3d 1112 (9th Cir. 2008) ............................................................................... 23
*Gomez-Velazco v. Sessions*,
  879 F.3d 989 (9th Cir. 2018) ................................................................................... 6
*Gonzalez v. Asher*,
  No. C15-1778-MJP-BAT, 2016 WL 871073 (W.D. Wash. Feb. 16, 2016) .............. 14
*Guardado-Quevara v. Lynch*,
  No. CV-16-00800-PHX-PGR, 2016 WL 4136547 (D. Ariz. June 27, 2016) ............ 14
*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ................................................................... *passim*
*Herrera v. United States Attorney Gen.*,
  No. CV-16-03931-PHX-DJH, 2017 WL 2963569 (D. Ariz. May 11, 2017) ............ 14
*INS v. Cardoza-Fonseca*,
  480 U.S. 421 (1987) ................................................................................................ 23
*Ixcot v. Holder*,
  646 F.3d 1202 (9th Cir. 2011) ................................................................................. 4
*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ................................................................................. *passim*
*Laing v. Ashcroft*,
  370 F.3d 994 (9th Cir. 2004) ................................................................. 18, 19, 20
*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ................................................................................. 23
*Lopez v. Heckler*,
  713 F.2d 1432 (9th Cir. 1983) ......................................................................... 22, 24
*Martinez-Lopez v. Sessions*,
  No. 17-CV-2473-CAB, 2018 WL 490748 (S.D. Cal. Jan. 19, 2018) ................ 14, 19
*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ........................................................................................... 16, 17
*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ........................................................................... 22, 23
*Mendoza v. Asher*,
  No. C14-0811-JCC-JPD, 2014 WL 8397145 (W.D. Wash. Sept. 16, 2014) ............ 14
*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) ................................................................................. 15
*Moncrieffe v. Holder*,
  133 S. Ct. 1678 (2013) ............................................................................................ 21

*Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S.*,
  743 F.2d 1365 (9th Cir. 1984) ....................................................................................... 21
*Orantes- Hernandez v. Thornburgh*,
  919 F.2d 549 (9th Cir. 1990) ......................................................................................... 24
*Ortiz-Alfaro v. Holder*,
  694 F.3d 955 (9th Cir. 2012) ........................................................................................... 4
*Oshodi v. Holder*,
  729 F.3d 883 (9th Cir. 2013) ......................................................................................... 22
*Padilla-Ramirez v. Bible*,
  862 F.3d 881 (9th Cir. 2017) ............................................................................. 2, 5, 6, 14
*Palma-Platero v. Sessions*,
  No. CV-1701484-PHX-DGC, 2017 WL 3838678 (D. Ariz. Sept. 1, 2017) ............. 14
*Preap v. Johnson*,
  831 F.3d 1193 (9th Cir. 2016) ....................................................................................... 20
*Preminger v. Principi*,
  422 F.3d 815 (9th Cir. 2005) ......................................................................................... 23
*Puga v. Chertoff*,
  488 F.3d 812 (9th Cir. 2007) ......................................................................................... 18
*Quintero v. Asher*,
  No. C14-958-MJP, 2015 WL 144298 (W.D. Wash. Jan. 12, 2015) ........................ 14
*Ramon-Matul v. Sessions*,
  No. CV-17-02865-PHX-DGC, 2017 WL 6884314 (D. Ariz. Sept. 22, 2017) ......... 14
*Ramos v. Sessions*,
  No. 18-CV-00413-JST, 2018 WL 905922 (N.D. Cal. Feb. 15, 2018) ...................... 14
*Ramos v. Sessions*,
  No. 18-CV-00413-JST, 2018 WL 1317276 (N.D. Cal. Mar. 13, 2018) .............. 15, 17
*Rios-Troncoso v. Sessions*,
  No. CV-1701492-PHX-DGC, 2017 WL 3838686 (D. Ariz. Sept. 1, 2017) ............. 14
*Rodriguez v. Robbins*,
  804 F.3d 1060 (9th Cir. 2015) ....................................................................................... 12
*Sanchez-Bautista v. Clark,*
  No. C14-1324-JLR-JPD, 2014 WL 7467022 (W.D. Wash. Dec. 3, 2014) .............. 14
*Santosky v. Kramer*,
  455 U.S. 745 (1982) ........................................................................................................ 17
*Singh v. Holder*,
  638 F.3d 1196 (9th Cir. 2011) ............................................................................. 17, 18, 19
*Tijani v. Willis*,
  430 F.3d 1241 (9th Cir. 2005) ....................................................................................... 16
*U.S. v. Robertson*,
  875 F.3d 1281 (9th Cir. 2017) ....................................................................................... 15
*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) ....................................................................................... 23
*Villa-Anguiano v. Holder*,
  727 F.3d 873 (9th Cir. 2013) ........................................................................................... 4
*Villalta v. Sessions*, No. 17-CV-0,
  5390-LHK, 2017 WL 4355182 (N.D. Cal. Oct. 2, 2017) ............................. 14, 19, 20

*Wang v. Reno*,
  81 F.3d 808 (9th Cir. 1996) ............................................................ 18
*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ........................................................................... 10
*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ..................................................... 2, 11, 12, 16
*Zepeda v. I.N.S.*,
  753 F.2d 719 (9th Cir. 1983) ......................................................... 22

## Statutes

8 U.S.C. § 1225 ................................................................................. 12, 13
8 U.S.C. § 1226 ................................................................................. 12, 13
8 U.S.C. § 1228(b) ............................................................................. *passim*
8 U.S.C. § 1229a ...................................................................................... 4, 6
8 U.S.C. § 1231(a) ........................................................................... 5, 10, 12
8 U.S.C. § 1231(a)(2) ................................................................................ 2, 5
8 U.S.C. § 1231(a)(5) ...................................................................... 3, 7, 8, 9
8 U.S.C. § 1231(a)(6) ......................................................................... *passim*
8 U.S.C. § 1231(b)(3)(A) ............................................................................. 3
8 U.S.C. § 1252(a)(1) ................................................................................... 4

## Rules

Fed. R. Civ. P. 23(c)(1)(C) ........................................................................ 25

## Regulations

8 C.F.R. § 208.16 ..................................................................................... 3, 4
8 C.F.R. § 208.31 ................................................................................. *passim*
8 C.F.R. § 238.1(f)(3) .................................................................................. 5
8 C.F.R. § 241.8 ........................................................................................... 9
8 C.F.R. § 1208.31 ................................................................................... 4, 7
8 C.F.R. § 1240 ............................................................................................ 4

## Other Authorities

DHS, Office of Inspector General ("OIG"), DHS OIG Inspector Cites Concerns with Detainee
  Treatment and Care at ICE Detention Facilities (2017) ......................... 21
Ingrid Eagly & Steven Shafer, *Special Report: Access to Counsel in Immigration Court*, Am.
  Imm. Council (Sept. 2016) ........................................................................ 22
Mark Greenblatt and Maren Machles, *Immigration judges defy a higher court, trapping hundreds
  behind bars*, KSHB (Nov. 20, 2017 ........................................................ 19

## NOTICE OF MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT on May 31, 2018 at 9:00 a.m., before the Honorable Judge Jacqueline Scott Corley, Plaintiffs-Petitioners will, and hereby do, move the court for a class-wide preliminary injunction. Plaintiffs-Petitioners' motion is based on this submission, the pleadings and other documents on file in this case, and any argument presented to the Court.

### RELIEF REQUESTED (CIVIL L.R. 7-2(B)(3))

Plaintiffs-Petitioners request that this court issue a class-wide preliminary injunction enjoining the government from detaining class members for more than 180 days without affording them a bond hearing before an Immigration Judge ("IJ") at which the government bears the burden of justifying continued detention with clear and convincing evidence.

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.     STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiffs-Petitioners' requested preliminary injunction should be granted in view of the fact that:

a.) They are likely to succeed in demonstrating that the government's failure to provide a bond hearing before an IJ after 180 days of detention violates 8 U.S.C. § 1231(a)(6) and/or the Due Process Clause of the United States Constitution;

b.) They will suffer irreparable harm in the absence of preliminary injunctive relief;

c.) The balancing of hardships tips sharply in their favor; and,

d.) The public interest will be served by their requested injunction.

## II.     INTRODUCTION

Plaintiffs-Petitioners Esteban Aleman Gonzalez ("Mr. Aleman Gonzalez") and Jose Eduardo Gutierrez Sanchez ("Mr. Gutierrez Sanchez") seek preliminary injunctive relief for themselves and putative class members (collectively, "Plaintiffs") enjoining Defendants from denying Plaintiffs the individualized bond hearings to which they are entitled once their detention becomes prolonged. Plaintiffs are noncitizens who are subject to final administrative orders of removal and are currently held in immigration detention under the authority of 8 U.S.C.

§ 1231(a)(6), Immigration and Nationality Act ("INA") § 241(a)(6). Plaintiffs have live claims before either the Immigration Court, the Board of Immigration Appeals ("BIA" or "Board"), or a circuit court of appeals. As a result, the government does not have the authority to remove Plaintiffs and many Plaintiffs will ultimately win the right to remain lawfully in the United States.

Controlling case law from the Ninth Circuit Court of Appeals makes clear that, as a matter of statutory interpretation, Defendants must grant individualized bond hearings to persons held in detention pursuant to § 1231(a)(6), for six months or longer. *See Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (*Diouf II*); *Padilla-Ramirez v. Bible*, 862 F.3d 881 (9th Cir. 2017), *amended and superseded*, 882 F.3d 826 (9th Cir. 2017); *see also Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), 868, 869-70, 874-75. Moreover, Plaintiffs are entitled to such bond hearings under the Constitution, as due process requires a bond hearing once detention becomes prolonged. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Diouf II*, 634 F.3d at 1086.

Nonetheless, in clear violation of the law, the government is detaining Plaintiffs without the bond hearings they are entitled to under controlling Ninth Circuit precedent. Plaintiffs suffer irreparable harm each day they are held in jail away from their families and communities. As a result, Plaintiffs seek immediate relief in the form of a preliminary injunction to stop the unlawful deprivation of their liberty.

## III.     LEGAL BACKGROUND

### A.     Statutory Detention Authority

Plaintiffs are being detained under Section 1231 of Title 8 of the United States Code, which authorizes immigration detention for noncitizens with an administratively final order of removal. The statute mandates detention during a 90-day period called "the removal period." *See* 8 U.S.C. § 1231(a)(2). Continued detention "beyond the removal period" is discretionary and is authorized pursuant to 8 U.S.C. § 1231(a)(6). The statute provides that individuals "may be detained beyond the removal period" where the immigrant "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6).

1    Plaintiffs are detained pursuant to § 1231(a)(6) while they pursue defenses to removal

2    that would allow them to remain in the United States. As detailed more fully below, Plaintiffs

3    fall into three categories: (1) those whose prior removal order has been reinstated under 8 U.S.C.

4    § 1231(a)(5), (2) those who have been issued an administrative removal order under 8 U.S.C.

5    § 1228(b), and (3) those who are seeking judicial review of the Board's denial of their motions to

6    reopen and have been issued judicial stays of removal.

7    **B.      Reinstatement of Removal Under 8 U.S.C. § 1231(a)(5)**

8    When the government determines that an individual who has previously been removed

9    has unlawfully reentered the United States, the removal order may be "reinstated from its

10   original date." 8 U.S.C. § 1231(a)(5). An individual subject to a reinstated removal order is

11   foreclosed from seeking relief from removal other than withholding of removal or protection

12   under the Convention Against Torture ("CAT"). *See id.*; *Andrade-Garcia v. Lynch*, 828 F.3d

13   829, 831 (9th Cir. 2016). Withholding of removal prohibits an individual's removal to a country

14   where their "life or freedom would be threatened . . . because of [their] race, religion, nationality,

15   membership in a particular social group or political opinion." 8 U.S.C. § 1231(b)(3)(A). CAT

16   protection is afforded to those who establish that "it is more likely than not that he or she would

17   be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

18   The regulations describe the process by which an individual subject to a reinstated

19   removal order may seek withholding of removal or CAT protection. If, during the course of the

20   reinstatement process, the individual expresses a fear of being harmed in the country of removal,

21   the Department of Homeland Security ("DHS") refers the individual to an asylum officer for an

22   interview where the officer determines whether they "ha[ve] a reasonable fear of persecution or

23   torture." 8 C.F.R. § 208.31(e). If the individual is determined to have a "reasonable fear" of

24   persecution, they are placed in "withholding-only" proceedings before an IJ, through which they

25   can apply for withholding of removal and protection under the CAT. *See* 8 C.F.R. § 208.31; 8

26   C.F.R. § 208.16.

27   In the event that an asylum officer determines that an individual does not have a

28   reasonable fear of persecution or torture, the individual is entitled to review of that decision

MOTION FOR PRELIMINARY INJUNCTION                                      3
No. 3:18-CV-01869-JSC

before an IJ. *See* 8 C.F.R. § 208.31. If the IJ concurs with the asylum officer's determination that the individual does not have a reasonable fear of persecution or torture, the individual is not permitted to appeal that decision to the BIA; however, the individual can file a petition for review with the circuit court of appeals. *See* 8 U.S.C. § 1252(a)(1); *Andrade-Garcia*, 828 F.3d at 831. On the other hand, if the IJ disagrees with and vacates the officer's negative determination, the individual may apply for withholding of removal or protection under the CAT in "withholding-only" proceedings before the IJ. 8 C.F.R. § 1208.31(g)(2).

"Withholding-only" proceedings operate just like removal proceedings under 8 U.S.C. § 1229a, INA § 240. As a result, the individual is entitled to the full panoply of regulatory, statutory, and constitutional rights, including an administrative appeal to the BIA. *See* 8 C.F.R. § 1208.31. Individuals are also entitled to seek judicial review of BIA decisions denying withholding of removal or CAT protection by filing a petition for review before the circuit court of appeals. *See* 8 U.S.C. § 1252(a)(1); *see also, e.g.*, *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017). The only meaningful difference between "withholding-only" proceedings conducted pursuant to 8 C.F.R. § 208.16, and removal proceedings conducted pursuant to 8 C.F.R. § 1240, is that in "withholding-only" proceedings, the IJ is limited to adjudicating claims for withholding of removal and protection under the CAT.

In addition to pursuing relief based on a fear of return to their home country, individuals with reinstated removal orders may also raise legal and constitutional challenges as to the propriety of their reinstated removal orders directly in the court of appeals. *See, e.g., Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013); *Ixcot v. Holder*, 646 F.3d 1202, 1203 (9th Cir. 2011). However, such challenges are not ripe for judicial review by the appellate court until any reasonable fear or "withholding-only" proceedings are complete before the agency. *See Ortiz-Alfaro v. Holder*, 694 F.3d 955 (9th Cir. 2012).

Under current Ninth Circuit law, all individuals with reinstated removal orders—whether they are challenging their reinstated removal order, are in "withholding-only" proceedings, or are seeking agency or judicial review of a decision by an IJ—are detained pursuant to § 1231(a)(6). *See Padilla-Ramirez*, 882 F.3d at 830-32. In *Padilla-Ramirez*, the Ninth Circuit held that

1   § 1231(a) authorizes detention for those with reinstated removal orders, even while

2   "withholding-only" proceedings remain pending before an IJ, because the reinstated removal

3   orders are administratively final. *Id.* at 831-32.

4        Individuals who have been, or will be, detained for more than six months following the

5   reinstatement of their removal orders, are necessarily being held beyond the 90-day removal

6   period described in § 1231(a)(2). They are therefore being detained under the discretionary

7   authority of § 1231(a)(6), which authorizes, but does not mandate, detention beyond the removal

8   period.

9        **C.    Administrative Removal under 8 U.S.C. § 1228(b)**

10       Plaintiffs also include individuals who have been issued administratively final removal

11   orders pursuant to 8 U.S.C. § 1228(b). Their immigration proceedings are analogous to those

12   with reinstatement orders.

13       The INA authorizes DHS to issue a final administrative order of removal to an individual

14   who has not been lawfully admitted for permanent residence and who has been convicted of an

15   alleged aggravated felony. *See* 8 U.S.C. § 1228(b). As with a reinstated removal order, the

16   removal order is administratively final upon its issuance by DHS, and may not be appealed to the

17   BIA. 8 U.S.C. § 1228(b)(3). Moreover, just like individuals with reinstated removal orders,

18   individuals with § 1228(b) removal orders are precluded from seeking relief from removal other

19   than withholding of removal or CAT protection. As with the reinstatement process, if an

20   individual who is subject to a § 1228(b) order expresses a fear of returning to the country of

21   removal during the course of the issuance of the removal order, the individual will be referred to

22   an asylum officer for a reasonable fear interview. 8 C.F.R. § 238.1(f)(3). The reasonable fear

23   process for those with § 1228(b) removal orders is identical to the process for those with

24   reinstated removal orders, *see id*; 8 C.F.R. §§ 208.31(e), 238.1(e), 1208.31(e), which includes the

25   right to seek agency and judicial review of reasonable fear determinations, and of applications

26   for withholding of removal and CAT protection. *See Barajas-Romero*, 846 F.3d at 351.

27   Individuals may also obtain judicial review of legal and constitutional challenges to the propriety

28

of their administrative removal orders directly at the circuit court of appeals. 8 U.S.C. §§ 1228(b)(3), 1252(a); *Gomez-Velazco v. Sessions*, 879 F.3d 989, 992 (9th Cir. 2018).

An individual subject to a final administrative removal order issued under 8 U.S.C. § 1228(b) and who has been detained for six months or more must be detained pursuant to 8 U.S.C. § 1231(a)(6) for the reasons set forth in *Padilla-Ramirez*, 882 F.3d at 831-82.

### D.    Denied Motions to Reopen with Stay of Removal

Plaintiffs also include individuals who are awaiting judicial review of their motion to reopen their removal proceedings before the immigration courts, *see* 8 U.S.C. § 1229a(c)(7), and who have been issued a stay of removal.

In *Diouf v. Mukasey*, 542 F.3d 1222, 1230 (9th Cir. 2008) (*Diouf I*), the Ninth Circuit held that individuals who are awaiting judicial review of the BIA's denial of a motion to reopen, and who have been issued a judicial stay of removal, are detained pursuant to § 1231(a)(6). The Ninth Circuit reaffirmed this holding in *Diouf II*, explaining that "[§] 1231(a)(6) encompasses [noncitizens] such as Diouf, whose collateral challenge to his removal order (a motion to reopen) is pending in the court of appeals, as well as to [noncitizens] who have exhausted all direct and collateral review of their removal orders, but who, for one reason or another, have not yet been removed from the United States." 634 F.3d at 1085.

Therefore, individuals who are detained at least six months while they are awaiting judicial review of a motions to reopen, with a judicial stay of removal in place, are also detained pursuant to § 1231(a)(6).

## IV.    STATEMENT OF FACTS

As described above, and explained below, Plaintiffs all share a common attribute: they have been (or will be) subjected to prolonged detention under § 1231(a)(6)—detention that exceeds 180 days—without a bond hearing at which the government bears the burden by clear and convincing evidence of justifying further detention on flight risk or danger grounds. Facts salient to their stories are presented here. Additional facts about Plaintiffs are set forth in the Motion for Class Certification.

**A.      Esteban Aleman Gonzalez**

Plaintiff Mr. Aleman Gonzalez is a native and citizen of Mexico. Ex. G (Decl. of Mr. Aleman Gonzalez), ¶ 2.[1] He entered the United States on April 14, 2000, and was expeditiously removed that same day. *Id*. He re-entered the United States shortly thereafter, and has resided here since 2000. *Id.* On August 18, 2017, Mr. Aleman Gonzalez was arrested at his home in Antioch, California. *Id*. at ¶ 6. He shares custody of his two U.S. citizen daughters, ages five and three, and is their primary source of financial support. *Id*. at ¶¶ 4, 16. He has been detained by DHS at the Contra Costa West County Detention Facility since the date of his arrest. *Id*. at ¶ 12.

DHS issued a notice reinstating his prior order of removal under 8 U.S.C. § 1231(a)(5). Mr. Aleman Gonzalez, however, expressed his fear of returning to Mexico and the execution of the reinstated order was suspended per the regulatory scheme set forth at 8 C.F.R. § 1208.31. On August 30, 2017, a DHS asylum officer found that Mr. Aleman Gonzalez has a reasonable fear of persecution or torture in Mexico by members of the Zeta drug cartel. Ex. G, ¶ 8. Pursuant to 8 C.F.R. §§ 208.31 and 208.16, Mr. Aleman Gonzalez's case was referred to the San Francisco Immigration Court for "withholding-only" proceedings.

Mr. Aleman Gonzalez applied for withholding of removal and relief under the CAT with the Immigration Court on November 13, 2017. Ex. G, ¶ 9. He is currently scheduled for an individual hearing on the merits of his application on July 9, 2018. *Id*. at ¶ 11.[2]

On February 18, 2018, after 187 days in detention, Mr. Aleman Gonzalez requested a bond hearing before an IJ in San Francisco. *Id*. at ¶ 13. On February 27, 2018, IJ Joseph Park ruled that he did not have jurisdiction to conduct a hearing and therefore refused to do so. *See* Ex. L (Order of IJ Park). On March 15, 2018, Mr. Aleman Gonzalez appealed that decision to the BIA where it remains pending. Ex. G, ¶ 13.

Mr. Aleman Gonzalez remains in custody at the West County Detention Facility, and has been detained for 237 days as of the time of filing this motion. *Id*. at ¶¶ 12, 13.

---

[1] All exhibits cited in this motion refer to the exhibits filed in support of Plaintiffs' Motion for Class Certification, ECF No. 21.

[2] His hearing was previously set for June 13, 2018, as set forth in the Complaint, but has been rescheduled.

1

2    **B.    Jose Eduardo Gutierrez Sanchez**

3        Plaintiff Mr. Gutierrez Sanchez is a native and citizen of Mexico. Ex. H (Decl. of Mr.

4    Gutierrez Sanchez), ¶ 2. He first entered the United States on May 19, 2009, and was

5    expeditiously removed on June 9, 2009. *Id*. Mr. Gutierrez Sanchez again tried to enter the United

6    States after he was attacked and beaten in Mexico, but was again removed. *Id*. He re-entered the

7    United States in approximately November 2015, and has resided here since then. *Id*.

8        Mr. Gutierrez Sanchez was arrested and detained by DHS on or about September 25,

9    2017. *Id*. at ¶ 5. Prior to his detention, he resided in San Lorenzo, California with his U.S citizen

10   wife and two young U.S. citizen daughters. *Id*. at ¶ 4. Mr. Gutierrez Sanchez was the sole source

11   of financial support for their household. *Id*.

12       DHS issued a notice reinstating his prior order of removal under 8 U.S.C. § 1231(a)(5).

13   Mr. Gutierrez Sanchez was given a reasonable fear interview with an asylum officer because he

14   expressed fear of being harmed in Mexico. *Id*. at ¶ 6. At his reasonable fear interview, Mr.

15   Gutierrez Sanchez expressed fear that, if returned to Mexico, he would be harmed as a bisexual

16   man. *Id*. at ¶¶ 3, 6. Mr. Gutierrez Sanchez already experienced past torture in Mexico by

17   organized crime on account of his sexual orientation. *Id*. at ¶ 3. The asylum officer found that he

18   had a reasonable fear of persecution or torture in Mexico, and he was placed in "withholding-

19   only" proceedings before the San Francisco Immigration Court. *See* 8 C.F.R. §§ 208.31 and

20   208.16.

21       Mr. Gutierrez Sanchez subsequently applied for withholding of removal and relief under

22   the CAT with the San Francisco Immigration Court on February 20, 2018. Ex. H, ¶ 7. Mr.

23   Gutierrez Sanchez is currently scheduled for an individual hearing on his application on April

24   19, 2018. *Id*.

25       On March 5, 2018, Mr. Gutierrez Sanchez filed a request with the San Francisco

26   Immigration Court that a bond hearing be held on or after March 24, 2018, his 180th day of

27   detention. *Id*. at ¶ 8. On March 21, 2018, IJ Alison E. Daw ruled that she did not have

28   jurisdiction to conduct a hearing and therefore refused to do so. *See* Ex. M (Order of IJ Daw). On

MOTION FOR PRELIMINARY INJUNCTION                                                    8
No. 3:18-CV-01869-JSC

1   March 26, 2018, Mr. Gutierrez Sanchez appealed that decision to the BIA, where the appeal

2   remains pending. Ex. H, ¶ 7.

3       Mr. Gutierrez Sanchez remains in custody at the West County Detention Facility, and has

4   been detained for 199 days as of the time of filing this motion. *Id.* at ¶ 4.

5       **C.   Putative Class Members**

6       Like Mr. Aleman Gonzalez and Mr. Gutierrez Sanchez, all Plaintiffs are individuals who

7   are detained by Defendants under § 1231(a)(6) for a prolonged period without any opportunity

8   for individualized bond hearings before an IJ.

9       The vast majority of Plaintiffs, like Mr. Aleman Gonzalez and Mr. Gutierrez Sanchez,

10  have reinstated removal orders. *See* 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8. Most Plaintiffs, like

11  Mr. Aleman Gonzalez and Mr. Gutierrez Sanchez, were not immediately removed from the

12  United States following the reinstatement because of findings made by asylum officers, or in

13  some cases by IJs reviewing findings made by asylum officers, that they possess a reasonable

14  fear of persecution or torture if removed from the United States. *See* 8 C.F.R. §§ 241.8(e),

15  208.31(e) & (g)(2). Others who were found by IJs not to possess a reasonable fear have

16  challenged that finding before a federal court of appeals and have been granted stays of removal

17  by the appellate court while their challenge to the reasonable fear determination is pending.

18  Some have challenged the propriety of the reinstated removal order itself via a petition for

19  review to a federal court of appeals and have received a stay of removal by the appellate court

20  pending that challenge.

21      Although the vast majority of Plaintiffs have reinstated removal orders, the proposed

22  class also consists of individuals who have been issued administratively final removal orders

23  pursuant to § 1228(b), as well as individuals who are awaiting judicial review of the BIA's

24  denial of a motion to reopen removal proceedings. *See supra.*

25      IJs in the San Francisco Immigration Court, as well as IJs throughout the jurisdiction of

26  the Ninth Circuit, have been denying bond hearing requests for persons detained under

27  § 1231(a)(6) who have been in detention for more than six months, claiming that they lack

28  jurisdiction to conduct the hearings. Such rulings are contrary to controlling law in this circuit

and must be remedied by this court on a class-wide basis, as individual habeas decisions in district courts in this judicial circuit have failed to stop IJs' unlawful practice. *See* Ex. A-F.

## V.   ARGUMENT

To obtain a preliminary injunction, Plaintiffs must demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Even if Plaintiffs raise only "serious questions" as to the merits of their claims, the court can grant relief if the balance of hardships tips "sharply" in Plaintiffs' favor, and the remaining equitable factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Here, both standards are satisfied as Plaintiffs are likely to succeed on the merits, likely to suffer irreparable harm, and the equitable factors tip sharply in their favor. As a result, this court should grant their request for a preliminary injunction.

### A.   Plaintiffs Are Likely to Succeed on the Merits

#### 1.   Binding Precedent Mandates that Plaintiffs Will Likely Succeed on the Merits of Their Claim that, by Statute, They Are Entitled to Bond Hearings

The Ninth Circuit has held that individuals detained pursuant to § 1231(a) for more than six months are entitled to a bond hearing before an IJ. *See Diouf II*, 634 F.3d at 1086, 1091. Defendants assert that detained individuals who have been placed in "withholding-only" proceedings, or are otherwise challenging final administrative removal orders not on direct judicial review before an appellate court, are not entitled to bond hearings, even after they have been held in detention for six months. Defendants' position finds no support in the Ninth Circuit's jurisprudence on prolonged detention. Defendants' continued defiance of controlling law in *Diouf II* has forced noncitizens to file individual habeas actions to receive the bond hearings to which they are unquestionably entitled. To date, every District Court to have considered an individual habeas action filed by a proposed class member has ruled in Plaintiffs' favor, and has ordered the government to provide bond hearings. *See infra*, Section V.A.1.b. As a

result, Plaintiffs are likely to prevail on the merits of their claim that they must be provided a bond hearing.

> a)   **Controlling Case Law Mandates that Plaintiffs, as Detainees Under 8 U.S.C. § 1231(a)(6), be Afforded Bond Hearings Once Their Detention Reaches Six Months.**

Binding case law from the Ninth Circuit squarely establishes that Plaintiffs, as individuals detained under § 1231(a)(6), are entitled to individualized bond hearings before an IJ after six months of detention, *i.e.*, after their detention becomes prolonged. *See Diouf II*, 634 F.3d at 1092. Defendants are violating controlling, clearly established law by denying them bond hearings.

In *Zadvydas*, which formed the foundation for the Ninth Circuit's decision in *Diouf II*, the Supreme Court construed § 1231(a)(6) to avoid the "serious constitutional problem" posed by indefinite detention of noncitizens with final orders of removal whom the government could not remove due to repatriation issues with their countries of origin. 533 U.S. at 690. The Court construed § 1231(a)(6) to "contain an implicit 'reasonable time' limitation." *Id.* at 682. The Court held that the "reasonable time limitation" for detention under § 1231(a)(6) was six months. *Id.* at 701. Section 1231(a)(6) was susceptible to a reading that imposed an implicit time limitation because the statute does not mandate detention, but rather makes it discretionary: the statute provides that immigration officials "may" detain individuals beyond the removal period. *Id.* at 697. Moreover, the statute is silent as to the length of the detention it authorizes, unlike other relevant portions of the INA which have clear time limits. *See id*; *see also Jennings*, 138 S. Ct. at 843. "Indeed, if Congress had meant to authorize long-term detention," the Court held, "it certainly could have spoken in clearer terms." *Zadvydas,* 533 U.S. at 697.

In *Diouf II*, the Ninth Circuit considered the case of a noncitizen who had been detained under § 1231(a)(6) for more than 180 days while raising a collateral challenge to his removal case. While the petitioner in *Diouf II* was not subject to "indefinite" detention due to the impossibility of removal, the Ninth Circuit nonetheless found that his prolonged detention in excess of 180 days raised serious constitutional concerns, as once "detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are

MOTION FOR PRELIMINARY INJUNCTION                                        11
No. 3:18-CV-01869-JSC

profound." *Diouf II*, 634 F.3d at 1091-92. Relying on *Zadvydas*, the Ninth Circuit held that noncitizens who have been detained for 180 days under § 1231(a)(6) are "entitled to a bond hearing before an immigration judge" at which they are to be "released from detention unless the government establishes that the [noncitizen] poses a risk of flight or a danger to the community." *Id.* at 1081. *Diouf II* thus applied *Zadvydas*'s conclusion that § 1231(a)(6) is ambiguous and susceptible to a limiting construction to avoid the constitutional issues posed by prolonged, but not necessarily indefinite, detention. *Id.* at 1086, 1087 n.8.

   *Diouf II*'s holding was recently reinforced by the Supreme Court in *Jennings*. In *Jennings*, the Supreme Court rejected the application of the constitutional avoidance doctrine with respect to two other detention statutes, 8 U.S.C. §§ 1225 and 1226, which had been interpreted by the Ninth Circuit to likewise require prolonged detention bond hearings. *See Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015); *Jennings*, 138 U.S. at 865-66.[3] In so doing, the Supreme Court reaffirmed its prior holding in *Zadvydas* that § 1231(a)(6) *is* amenable to the canon of constitutional avoidance, and specifically that § 1231(a)(6) can be construed to limit detention to a presumptively reasonable period of six months. The Court buoyed *Diouf II*'s reasoning, and made even clearer that Defendants are violating Plaintiffs' statutory rights by denying them prolonged detention bond hearings.

   The Court gave several reasons why the statutes at issue in *Jennings* could not be interpreted to contain an implicit time limitation, whereas § 1231(a)(6) can. The Court noted the "many ways in which the provision in question in *Zadvydas*, § 1231(a)(6), differs materially from those at issue here." *Id.* at 843-44. First, the statutes interpreted in *Jennings* explicitly authorize detention for a fixed period of time: in the case of § 1225, until the end of asylum or removal proceedings for applicants for admission to the United States, and in the case of § 1226, until the conclusion of removal proceedings for those already inside the United States. "By contrast, Congress left the permissible length of detention under § 1231(a)(6) unclear. *Id.* at 844.

---

[3] The Ninth Circuit's opinion in *Rodriguez v. Robbins* did not address detention under any provision of § 1231, as the court held that the District Court had improperly certified a § 1231(a) subclass. *See* 804 F.3d at 1085-86.

MOTION FOR PRELIMINARY INJUNCTION            12
No. 3:18-CV-01869-JSC

Second, "§ 1231(a)(6) is ambiguous," because its statutory phrase "*may* be detained" suggests discretion, but not unlimited discretion, to detain. *Id.* at 843. Third, § 1231(a)(6) contains no "specific provision authorizing release," unlike 1225 and § 1226. *Id.* at 844; *see also id.* at 846. Throughout the opinion in *Jennings*, the Court repeatedly underscored that "a series of textual signals distinguishes the provisions at issue in this case from *Zadvydas*'s interpretation of § 1231(a)(6)." *Id.* at 844; *see also id.* at 846-47, 850 ("As we have explained, the key statutory provision in *Zadvydas* said that the [noncitizens] in question 'may,' not 'shall,' be detained, and that provision also failed to specify how long detention was to last.").

In *Diouf II*, the Ninth Circuit unequivocally held that to address the "serious constitutional concerns" raised by "prolonged detention under § 1231(a)(6) without adequate procedural protections . . . we apply the canon of constitutional avoidance and construe § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for [noncitizens] facing prolonged detention under that provision." *Diouf II,* 634 F.3d at 1086. As *Jennings* reaffirmed that § 1231(a)(6) is amenable to construction that temporally limits detention under that statute pursuant to the canon of constitutional avoidance, it is clear that *Diouf II* continues to require that Plaintiffs receive prolonged detention bond hearings at six months.

### b)   District Courts Have Uniformly Rejected Defendants' Unlawful Practice of Denying Bond Hearings to Plaintiffs.

District courts throughout the Ninth Circuit have consistently and resoundingly rejected Defendants' practice of denying Plaintiffs bond hearings.

Due to Defendants' failure to follow the law, dozens of individuals detained pursuant to § 1231(a)(6) for at least six months have been forced to file individual habeas corpus petitions to vindicate their right to a bond hearing before an IJ. Each district court that has ruled on these individual habeas petitions has rejected the government's strained argument that *Diouf II* does not apply to individuals with reinstated removal orders or with administrative removal orders

MOTION FOR PRELIMINARY INJUNCTION                                     13
No. 3:18-CV-01869-JSC

under 8 U.S.C. § 1228(b), and has ordered the government to provide the petitioners with a bond

hearing before an IJ.[4]

---

[4] *See, e.g., Ramos v. Sessions*, No. 18-CV-00413-JST, 2018 WL 905922, at *3 (N.D. Cal. Feb. 15, 2018); *Martinez-Lopez v. Sessions,* No. 17-CV-2473-CAB, 2018 WL 490748, at *3 (S.D. Cal. Jan. 19, 2018); *Villalta v. Sessions*, No. 17-CV-05390-LHK, 2017 WL 4355182, at *5-*7 (N.D. Cal. Oct. 2, 2017) ("*Diouf II* and *Padilla-Ramirez* clearly demonstrate that Petitioner is entitled to a bond hearing"); *Ramon-Matul v. Sessions*, No. CV-17-02865-PHX-DGC, 2017 WL 6884314, at *3 (D. Ariz. Sept. 22, 2017) ("Respondents' efforts to distinguish the circumstances of *Diouf II* are unavailing . . . the clear language of *Diouf II*, which was echoed in *Padilla-Ramirez*, 862 F.3d at 884, extinguishes any doubt that the government is required to provide Petitioner with a bond hearing before an immigration judge."); *Palma-Platero v. Sessions*, No. CV-1701484-PHX-DGC, 2017 WL 3838678, at *3 (D. Ariz. Sept. 1, 2017); *Rios-Troncoso v. Sessions*, No. CV-1701492-PHX-DGC, 2017 WL 3838686, at *3 (D. Ariz. Sept. 1, 2017), appeal dismissed, No. 17-17230, 2018 WL 624975 (9th Cir. Jan. 30, 2018) (same); *Contreras-Reyes v. Sessions*, CV17-01831-PHX-JJT (ESW) (D. Ariz. July 27, 2017); *Bahena v. Aitken*, No. 117-CV-00145-JLT, 2017 WL 2797802, at *3 (E.D. Cal. June 28, 2017) (*Diouf II* requires bond hearing following 8 U.S.C. § 1228(b) removal order); *Fuentes-Barnett v. Sessions*, No. CV 17-00858-PHX-DGC (JZB), Doc. 24 (D. Ariz. June 16, 2017); *Alvarado-Callejas v. Sessions*, CV17-01007-PHX-DGC, (DMF) (D. Ariz. June 6, 2017); *Velarde-Maldonado v. Sessions*, No. CV- 17-01018-PHX-JJT (MHB), Doc. 16 (D. Ariz. June 1, 2017); *Herrera v. United States Attorney Gen.*, No. CV-16-03931-PHX-DJH, 2017 WL 2963569, at *3 (D. Ariz. May 11, 2017) ("This Court follows several other courts in the circuit finding that *Diouf II* compels a bond hearing for [noncitizens] in withholding proceedings whose detention has been prolonged"), *report and recommendation adopted sub nom. Ana Silvia Cortes Herrera v. United States Attorney Gen.,* No. CV-16-03931-PHX-DJH, 2017 WL 2957798 (D. Ariz. July 11, 2017); *Urias-Alvarenga v. Sessions*, No. CV 17-01005-PHX-JJT (JFM), Doc. 17 (D. Ariz. May 8, 2017); *Borjas-Calix v. Sessions*, No. CV-16-685-TUC-DCB, 2017 WL 1491629, at *3 (D. Ariz. Apr. 26, 2017); *Rivas-Moreira v. Lynch*, No. CV-16-04518-PHX-DJH (BSB), Doc. 17 (D. Ariz. Mar. 2, 2017); *Gomez-Vasquez v. Lynch*, No. CV-17-00269-PHX-JJT (JFM), Doc. 11 (D. Ariz. Feb. 21, 2017); *Mendez-Cruz v. Lynch*, No. CV-16-04416-PHX-GMS (DMF), Doc. 18 (D. Ariz. Feb. 17, 2017); *Guardado-Quevara v. Lynch*, No. CV-16-00800-PHX-PGR, 2016 WL 4136547, at *4-*5 (D. Ariz. June 27, 2016), *report and recommendation adopted*, No. CV-1600800, 2016 WL 4074113 (D. Ariz. Aug. 1, 2016); *Gonzalez v. Asher*, No. C15-1778-MJP-BAT, 2016 WL 871073, at *4 (W.D. Wash. Feb. 16, 2016), *report and recommendation adopted*, No. C15-1778, 2016 WL 865351 (W.D. Wash. Mar. 7, 2016) (finding petitioner entitled to bond hearing under *Diouf II* because he "has been detained by ICE for more than six months and his detention is likely to continue until his withholding-only proceedings are concluded"); *Quintero v. Asher*, No. C14-958-MJP, 2015 WL 144298, at *6 (W.D. Wash. Jan. 12, 2015); *Acevedo-Rojas v. Clark*, No. C14-1323-JLR, 2014 WL 6908540, at *6 (W.D. Wash. Dec. 8, 2014); *Alvarado v. Clark*, No. C14-1322-JCC, 2014 WL 6901766, at *2 (W.D. Wash. Dec. 5, 2014); *Sanchez-Bautista v. Clark,* No. C14-1324-JLR-JPD, 2014 WL 7467022, at *3 (W.D. Wash. Dec. 3, 2014); *Giron-Castro v. Asher*, No. C14-0867-JLR, 2014 WL 8397147, at *3 (W.D. Wash. Oct. 2, 2014); *Mendoza v. Asher*, No. C14-0811-JCC-JPD, 2014 WL 8397145, at *2 (W.D. Wash. Sept. 16, 2014) ("*Diouf II* does not distinguish between categories of

In addition, although the above-cited cases were issued prior to the Supreme Court's decision in *Jennings*, at least four district courts within the Ninth Circuit have now confirmed, post-*Jennings*, that those held in prolonged detention under § 1231(a)(6) are entitled to a bond hearing because, "given the Supreme Court's explicit carve-out, *Diouf* remains good law and is binding." *Ramos v. Sessions*, No. 18-CV-00413-JST, 2018 WL 1317276, at *3 (N.D. Cal. Mar. 13, 2018). *See also Cortez v. Sessions*, No. 18-CV-01014-DMR, 2018 WL 1510187, at *8 (N.D. Cal. Mar. 27, 2018) ("*Jennings* left in place the application of the canon of constitutional avoidance to section 1231(a)(6), the same provision at issue in *Diouf II* . . . *Diouf II* remains good law which this court is bound to follow."); *Borjas-Calix v. Sessions*, No. CV16-00685-TUC-DCB, 2018 WL 1428154 (D. Ariz. Mar. 22, 2018); *Baños v. Asher*, No. C16-1454-JLR, 2018 WL 1617706, at *1 (W.D. Wash. Apr. 4, 2018); *Higareda v. Sessions*, No. CV-18-00491-PHX-SPL (DKD), Doc. 20 (D. Ariz. Apr. 5, 2018). Indeed, this court is bound by circuit court law unless the circuit decision is "clearly irreconcilable" with an intervening higher authority. *U.S. v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017) (citing *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)). "The clearly irreconcilable requirement is a high standard." *Id.* (internal quotation marks omitted). "So long as the court can apply our prior precedent without running afoul of the intervening authority, it must do so." *Id.* (internal quotation marks omitted).

Plaintiffs are unaware of any District Court decision that rules in favor of Defendants.

### 2.    Plaintiffs are Likely to Succeed on the Merits of their Claim that, as a Matter of Due Process, They Are Entitled to Bond Hearings.

The Constitution also mandates bond hearings for Plaintiffs because prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment of the United States Constitution. As such, Plaintiffs are likely to prevail on the merits of their claim that the Constitution requires they be provided with bond hearings after six months in detention.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

---

[noncitizens] whose detention is governed by § 1231(a)(6), and instead applies to *every* [noncitizen] facing prolonged detention under the statute.").

*Zadvydas*, 533 U.S. at 690. These due process protections "appl[y] to all 'persons' within the United States, including [noncitizens]." *Id.* at 693. Even where detention is permissible under a statute, due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 690.

Although the constitutional issue has not squarely been decided by the Ninth Circuit, the court has repeatedly expressed deep skepticism as to the constitutionality of holding noncitizens in prolonged immigration detention without a bond hearing. In *Diouf II*, for example, the Ninth Circuit considered the Due Process balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to conclude that an in-person bond hearing before an IJ is a "basic safeguard for noncitizens facing prolonged detention under § 1231(a)(6)." 634 F.3d at 1092. *See also Casas-Castrillon v. Dept. of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), 951-52; *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005). The court rejected the argument that an internal custody review conducted by DHS, and not a neutral arbiter, was a sufficient procedural safeguard. *Diouf II*, 634 F.3d at 1091. The *Diouf II* court noted that once immigration "detention crosses the six-month threshold and release or removal is not imminent," the private interests at stake are "profound." *Id.* at 1091-92. Moreover, "the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decision maker is substantial." *Id.* at 1092. This is why the Third Circuit Court of Appeals has already directly held that prolonged immigration detention violates the Due Process Clause. *See Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011) (lengthy detention of noncitizen was "unconstitutionally unreasonable and, therefore, a violation of the Due Process Clause"); *cf. Demore v. Kim*, 538 U.S. 510, 528-29 (2003) (upholding constitutionality of "brief" immigration detention, which the Court characterized as "roughly a month and a half in the vast majority of cases . . . and about five months in the minority of cases.").

In addition, in *Jennings*, the Supreme Court expressly declined to reach the merits of claims that prolonged immigration detention violates the Due Process Clause, and remanded to the Ninth Circuit to consider the issue in the first instance. *See Jennings,* 138 S. Ct. at 851.

1   Moreover, Judge Breyer, in his dissent, noted that "[t]he relevant constitutional language,

2   purposes, history, traditions, context and case law, taken together, make it likely that, where

3   confinement of the noncitizens before us is prolonged (presumptively longer than six months),

4   bail proceedings are constitutionally required." *Jennings*, 138 S. Ct. at 861-69, 882 (Breyer, J.,

5   dissenting).

6       Thus, due process prohibits prolonged civil confinement of Plaintiffs without a bond

7   hearing before a neutral decision maker.

8                         **3.    Procedural Protections at Bond Hearings**

9       At prolonged detention bond hearings, the individual is entitled to release unless the

10   government shows, by "clear and convincing evidence," that the individual is a flight risk or a

11   danger to the community. *See Diouf II*, 634 F.3d at 1090-92; *Singh v. Holder*, 638 F.3d 1196,

12   1203-04 (9th Cir. 2011). As recently held in *Ramos*, 2018 WL 1317276, at *4, the clear and

13   convincing evidence standard applies to prolonged detention bond hearings for those held under

14   § 1231(a)(6), including those in "withholding-only" proceedings.

15       The established procedural protections at prolonged detention bond hearings are

16   mandated by the Constitution. In *Diouf II*, the Ninth Circuit applied a constitutional *Mathews*

17   balancing test to determine that the government bears the burden in a prolonged detention

18   hearing. 634 F.3d at 1090-92. And in *Singh*, the Ninth Circuit held that, at a prolonged detention

19   hearing, "given the substantial liberty at stake," the applicable standard of proof for the

20   government is that it "must prove by clear and convincing evidence that a[] [noncitizen] is a

21   flight risk or a danger to the community to justify denial of bond." *Singh*, 638 F.3d at 1203

22   (citing *Addington v. Texas*, 441 U.S. 418 (1979); *Cooper v. Oklahoma*, 517 U.S. 348 (1996);

23   *Foucha v. Louisiana*, 504 U.S. 71 (1992); *Santosky v. Kramer*, 455 U.S. 745 (1982)). The court

24   explained that due process requires this heightened burden in the proceedings "[b]ecause it is

25   improper to ask the individual to share equally with society the risk of error when the possible

26   injury to the individual—deprivation of liberty—is so significant." *Singh*, 638 F.3d at 1203-04.

27

28

MOTION FOR PRELIMINARY INJUNCTION                                          17
No. 3:18-CV-01869-JSC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.    Plaintiffs Are Not Required to Exhaust Administrative Remedies

Plaintiffs are not required to exhaust their administrative remedies by appealing their bond orders to the BIA before pursuing their claims before this court because their claims present purely legal issues, because no purpose is served by requiring an administrative appeal, and because requiring Plaintiffs to exhaust at the BIA would impose irreparable harm in the form of additional detention.

Because there is no statutorily-mandated exhaustion requirement for Plaintiffs' claims, exhaustion is prudential. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Prudential exhaustion requirements may be waived in the court's discretion. *Id.* Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). And even where "the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement 'if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, [or] irreparable injury will result.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

In this case, all three *Puga* factors clearly weigh in favor of waiving exhaustion. First, "a record of administrative appeal is not germane to the purely legal question" of whether noncitizens detained under § 1231(a)(6) are entitled to a bond hearing once their detention is prolonged. *See Singh*, 638 F.3d at 1203 n.3. Because this court will decide the legal questions at issue in this case de novo, an administrative appellate record is not necessary. *See Hernandez*, 872 F.3d at 989.[5]

---

[5] In addition, the BIA does not have authority to rule on Plaintiffs' constitutional claim. *See Wang v. Reno*, 81 F.3d 808, 815-16 (9th Cir. 1996) (explaining that "the inability of the INS to adjudicate the constitutional claim completely undermines most, if not all, of the purposes underlying exhaustion").

MOTION FOR PRELIMINARY INJUNCTION                                         18
No. 3:18-CV-01869-JSC

Second, "relaxation of the requirement in this case will not encourage future habeas petitioners to attempt to bypass the administrative scheme," because, once Plaintiffs' legal claims are resolved by this court, they "should cease to arise." *Singh*, 638 F.3d at 1203 n.3. Third, administrative review at the BIA would not preclude the need for judicial review. Despite being confronted by this same legal issue myriad times, over the eight years since *Diouf II* was issued, the BIA has failed to issue a published opinion providing guidance to IJs who are repeatedly not following the law. And in the absence of binding guidance, IJs are continuing to find no jurisdiction to hold bond hearings even after they, themselves, have consistently been overruled by district courts.[6] The erratic, ad hoc decision-making of the BIA on the issue of Plaintiffs' entitlement to bond hearings demonstrates that administrative review is decidedly unlikely "to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga*, 488, F.3d at 815; *see Martinez-Lopez*, 2018 WL 490748, at *3-*4 (excusing exhaustion because whether (1) *Diouf II* mandates a bond hearing is a purely legal issue, and (2) the high number of cases in which the BIA has upheld the IJ's lack of jurisdiction renders the exercise of agency appeal a futile endeavor). Moreover, prudential exhaustion is particularly unwarranted for a class action where Plaintiffs do not seek review of a single administrative action, but rather challenge Defendants' class-wide practices on common legal grounds. *See Hernandez*, 872 F.3d at 988; *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 746 (9th Cir. 1991).

Finally, prudential exhaustion is not required because Plaintiffs would suffer irreparable harm. *See Hernandez*, 872 F.3d at 988; *Laing*, 370 F.3d at 1000-01. The BIA regularly takes four to six months or longer to adjudicate bond appeals. *See, e.g.*, *Cortez*, 2018 WL 1510187, at *3 (waiving exhaustion requirement and noting that the government did not dispute that BIA bond appeals "may take four months or longer to adjudicate"); *Villalta*, 2017 WL 4355182 at *3 (same); Ex. L (BIA bond appeal pending over seven months); Ex. M (BIA bond appeal pending

---

[6] *See* Mark Greenblatt and Maren Machles, *Immigration judges defy a higher court, trapping hundreds behind bars*, KSHB (Nov. 20, 2017), *available at* https://www.kshb.com/longform/immigration-judges-defy-a-higher-court (last accessed Apr. 11, 2018).

MOTION FOR PRELIMINARY INJUNCTION                                        19
No. 3:18-CV-01869-JSC

over nine months). Each day that Plaintiffs remain detained they suffer irreparable harm in the form of the unlawful deprivation of their liberty, incarceration in prison-like conditions, and difficulties accessing legal assistance and preparing their immigration cases while detained. *See* Ex. G, ¶¶ 12, 14-17; Ex. H, ¶¶ 9-11; *Cortez*, 2018 WL 1510187, at *3 (waiving exhaustion on irreparable harm grounds); *Villalta*, 2017 WL 4355182, at *3 (same). Plaintiffs should not be required to spend additional months in detention solely to allow the BIA to consider their legal claims, when the BIA cannot provide effective relief. *See Laing*, 370 F.3d at 1000. For the aforementioned reasons, Plaintiffs are not required to exhaust their claims before the agency.

*   *   *

The Ninth Circuit decisions in *Diouf II* and *Padilla-Ramirez*, supported by language in the Supreme Court's recent decision in *Jennings,* hold that all individuals detained pursuant to § 1231(a)(6) in the Ninth Circuit are entitled to, at minimum, a bond hearing at six months. Every district court to have considered Defendants' arguments to the contrary have rejected them. Accordingly, Plaintiffs are highly likely to succeed on the merits of their claim that they are entitled to bond hearings after six months of detention.

## B.   Plaintiffs Will Suffer Irreparable Harm from Their Continued Detention in the Absence of Preliminary Injunctive Relief

Plaintiffs face irreparable harm absent a preliminary injunction because they are held in prolonged detention and are being unlawfully denied bond hearings. Although the Constitution, the INA, and binding Ninth Circuit case law require that Plaintiffs be provided with a hearing where an IJ can conduct an individualized determination as to whether their continued detention is necessary, Defendants are nonetheless unlawfully subjecting Plaintiffs to prolonged detention without those rights.

Plaintiffs suffer irreparable harm from the continued deprivation of their liberty as "each additional day that [Plaintiffs are] detained without a bond hearing [] cause[s] [them] harm that cannot be repaired." *See Villalta,* 2017 WL 4355182, at *3 (internal quotation marks and citation omitted). Detainees in ICE custody are held in "prison-like conditions." *Preap v. Johnson*, 831 F.3d 1193, 1195 (9th Cir. 2016).  As the Supreme Court has explained, "[t]he time spent in jail

awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness." *Barker v. Wingo*, 407 U.S. 514, 532-33 (1972); *accord Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S.*, 743 F.2d 1365, 1369 (9th Cir. 1984). The Ninth Circuit has recognized in "concrete terms the irreparable harms imposed on anyone subject to immigration detention" including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez*, 872 F.3d at 995. The government itself has documented alarmingly poor conditions in ICE detention centers. *See, e.g.*, DHS, Office of Inspector General ("OIG"), DHS OIG Inspector Cites Concerns with Detainee Treatment and Care at ICE Detention Facilities (2017) (reporting instances of invasive procedures and substandard care; mistreatment, such as indiscriminate strip searches; long waits for medical care and hygiene products; expired, moldy and spoiled food; and detainees being held in administrative segregation for extended periods without documented, periodic reviews required to justify continued segregation).[7]

Mr. Aleman Gonzalez is suffering emotional hardship on a daily basis in detention due to his forced separation from his U.S. citizen daughters, who are five and two years old. *See* Ex. G, ¶¶ 12, 15. His detention has prevented him from seeing or speaking with either of his daughters, and he is at risk of losing custody of them due to a state custody proceeding scheduled while he is in immigration custody. *See id*. at ¶¶ 15, 17. Immigration detention has forced Mr. Gutierrez Sanchez's U.S. citizen wife to become a single mother to their two young children. *See* Ex. H, ¶ 9, 10.

Continued detention also interferes with Plaintiffs' ability to adequately prepare their immigration cases. Plaintiffs are often unable to obtain critical evidentiary support necessary to effectively present their cases for withholding of removal and protection under the CAT. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1690 (2013) (remarking that "during removal proceedings noncitizens are not guaranteed legal representation and are often subject to mandatory detention

---

[7] Available at https://www.oig.dhs.gov/sites/default/files/assets/2017-12/OIG-18-32-Dec17.pdf (last accessed Apr. 11, 2018).

1    . . . where they have little ability to collect evidence"). Their detention makes it far less likely

2    that they will be able to retain counsel, which in turn results in significantly lower grants of relief

3    from deportation. *See, e.g.*, Ingrid Eagly & Steven Shafer, *Special Report: Access to Counsel in*

4    *Immigration Court*, Am. Imm. Council (Sept. 2016) [8] (documenting that only 14 percent of

5    detained immigrants acquired legal counsel, compared with two-thirds of non-detained

6    immigrants, and that immigrants with attorneys fare better at every stage of the immigration

7    court process).[9]

8        Thus, a preliminary injunction is necessary to prevent Plaintiffs from suffering

9    irreparable harm as a result of their unlawful prolonged detention.

10   **C.    The Balance of Hardships Weighs Heavily in Plaintiffs' Favor, and an**
          **Injunction Is in the Public Interest.**

11   

12       For similar reasons, the balance of hardships strongly favors Plaintiffs. Defendants

13   cannot suffer harm from an injunction that prevents it from engaging in an unlawful practice. *See*

14   *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it

15   is harmed in any legally cognizable sense by being enjoined from constitutional violations.").

16   Therefore, Defendants cannot allege harm arising from a preliminary injunction ordering that

17   they provide bond hearings required by existing Ninth Circuit precedent.

18       Further, any burden imposed by requiring individual bond hearings for Plaintiffs is

19   outweighed by the substantial harm endured by Plaintiffs who are being unlawfully detained,

20   especially when that detention is prolonged. *See Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir.

21   1983) ("Society's interest lies on the side of affording fair procedures to all persons, even though

22   the expenditure of governmental funds is required."). This is especially so when that detention

23   impacts Plaintiffs' ability to present defenses that ultimately go to the issue of whether they face

24   harm in their countries of removal. *Cf. Oshodi v. Holder*, 729 F.3d 883, 894 (9th Cir. 2013) (en

25   _____

26   [8] Available at https://www.americanimmigrationcouncil.org/research/access-counsel-immigration-court (last accessed Apr. 11, 2018).

27   [9] Moreover, although Plaintiffs possess a statutory right to bond hearings, they also assert above that bond hearings are required by the Constitution. And "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

28

banc) (noting that for asylum and withholding of removal applicants, "the private interest could
hardly be greater" because "[i]f the court errs, the consequences for the applicant could be severe
persecution, torture or even death"); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987)
("Deportation is always a harsh measure; it is all the more replete with danger when the
[individual] makes a claim that he or she will be subject to death or persecution if forced to
return to his or her home country.").

Finally, an injunction is in the public interest. First and most importantly, "it would not
be equitable or in the public's interest to allow [a party] . . . to violate the requirements of federal
law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v.
Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d
1006, 1029 (9th Cir. 2013)). If an injunction is not entered, Defendants would effectively be
granted permission to continue detaining Plaintiffs in violation of controlling case law. Like all
other individuals, Defendants are not free to simply to ignore the law. "On the contrary, the
public interest and the balance of the equities favor 'prevent[ing] the violation of a party's
constitutional rights.'" *Ariz. Dream Act Coal.*, 757 F.3d at 1069 (quoting *Melendres*, 695 F.3d at
1002); *see also Hernandez*, 872 F.3d at 996 ("The public interest benefits from an injunction that
ensures that individuals are not deprived of their liberty and held in immigration detention
because of bonds established by a likely unconstitutional process."); *cf. Preminger v. Principi*,
422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a
constitutional right has been violated, because all citizens have a stake in upholding the
Constitution.").

Moreover, an injunction would be in the public interest due to the "indirect hardship to
[Plaintiffs'] friends and family members." *Golden Gate Rest. Ass'n v. City & Cty. of San
Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008); *see also Leiva-Perez v. Holder*, 640 F.3d 962,
969-70 (9th Cir. 2011). As the Ninth Circuit has recognized, unnecessary detention places
"burdens on family" such as a detainees' children's need to "receive counseling because of the
trauma of their government-compelled separation from their [parents]." *Hernandez*, 872 F.3d at
996. Mr. Gutierrez Sanchez's immigration detention has forced his U.S. citizen wife, Stephany,

to go on public assistance because she cannot support herself and their two U.S. citizen children without his income, which had been his family's primary source of income. *See* Ex. H at ¶ 9. The family's landlord recently notified Stephany that the family's rent will be increased. *Id.* Because the government cash assistance Stephany is receiving is not enough to meet their increased expenses, Mr. Gutierrez Sanchez is worried his immigration detention will cause his family to become homeless. *Id.* Mr. Aleman Gonzalez's brother and his family have already been displaced from the home they shared due to Mr. Aleman Gonzalez's detention, as they could not afford their rent without Mr. Aleman Gonzalez's income. *See* Ex. G. at ¶ 18.

Ensuring that immigrant detainees have access to bond hearings they are entitled to is also in the public interest due to the cost of immigration detention, particularly where that detention is contrary to law. As the Ninth Circuit noted in 2017, "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million." *Hernandez*, 872 F.3d at 996. "[R]educed detention costs can free up resources to more effectively process claims in Immigration Court." *Id.* Thus, in this case "the general public's interest in the efficient allocation of the government's fiscal resources favors granting the injunction." *Id.* And, as the Ninth Circuit has held, even if the financial implications were not clear: "Faced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *See id.* (quoting *Lopez*, 713 F.2d at 1437).

Therefore, the public interest overwhelmingly favors entering a preliminary injunction.

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a class-wide preliminary injunction and require that all IJs within the Ninth Circuit conduct individualized bond hearings at six months of detention for class members at which the individual is entitled to be released unless the government establishes, by clear and convincing evidence, that the individual is a flight risk or a danger to the community.[10]

---

[10] This court may provide class-wide preliminary injunctive relief upon granting Plaintiffs' pending motion for class certification, including on a provisional basis. *See, e.g.*, *Barahona-*

1    Dated: April 12, 2018                    Respectfully submitted,

2                                    By: s/Amalia Wille[11]_____

3                                        Amalia Wille
                                         Judah Lakin
4                                        Marc Van Der Hout
                                         VAN DER HOUT, BRIGAGLIANO &
5                                        NIGHTINGALE LLP

6
                                         Alison Pennington
7                                        Lisa Knox
                                         Julia Rabinovich
8                                        Jesse Newmark
                                         CENTRO LEGAL DE LA RAZA
9
                                         Matthew H. Green
10                                       LAW OFFICES OF MATTHEW H. GREEN

11                                       Michael Kaufman
                                         AMERICAN CIVIL LIBERTIES UNION
12                                       FOUNDATION OF SOUTHERN CALIFORNIA

13                                       Vasudha Talla
                                         Julia Mass
14                                       American CIVIL LIBERTIES UNION
                                         FOUNDATION OF NORTHERN CALIFORNIA
15
                                         Bardis Vakili
16                                       AMERICAN CIVIL LIBERTIES UNION
                                         SAN DIEGO AND IMPERIAL COUNTIES
17
                                         *Attorneys for Plaintiffs-Petitioners and the*
18                                       *Proposed Class*

19

20

21

22

23

24

25
     _____
26   *Gomez v. Reno*, 167 F.3d 1228, 1233 (9th Cir. 1999); *Orantes- Hernandez v. Thornburgh*, 919
     F.2d 549, 555 (9th Cir. 1990); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or
27   denies class certification may be altered or amended before final judgment.").
     [11] Per Civil L.R. 5-1(i), I attest that I obtained concurrence in the filing of this documents from
28   each of the other signatories.

     MOTION FOR PRELIMINARY INJUNCTION                                        25
     No. 3:18-CV-01869-JSC