CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
ELIANIS PEREZ
Assistant Director
MONIQUE PEOPLES
Senior Litigation Counsel
MARY L. LARAKERS
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419; (202) 305-7000 (fax)
mary.l.larakers@usdoj.gov
MATTHEW SEAMON
Trial Attorney
JULIAN KURZ
Trial Attorney
CARA ALSTERBERG
Trial Attorney
THEO NICKERSON
Trial Attorney

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ESTEBAN ALEMAN GONZALEZ and JOSE EDUARDO GUTIERREZ SANCHEZ,<br><br>    Plaintiffs,<br><br>    v.<br><br>JEFFERSON B. SESSIONS, *et al.*,<br><br>    Defendants. | No. 3:18-CV-1869-JSC<br><br>**RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: May 31, 2018<br>Time: 9:00 a.m.<br>Place: 15th Floor, Courtroom F<br>Before: Hon. Jacqueline Scott Corley |

# **TABLE OF CONTENTS**

Facts ........................................................................................................................................1

    A. Esteban Aleman Gonzalez ................................................................................... 1

    B. Jose Eduardo Gutierrez Sanchez ......................................................................... 2

Plaintiffs' Claims .................................................................................................................. 3

Preliminary Injunction Standard .......................................................................................... 3

Argument and Authority ...................................................................................................... 3

    A. Plaintiffs' Claims Lack Merit .............................................................................. 3

        1. Count One: Plaintiffs' Detention Is Lawful Under the INA ................................. 3

            a. Section 1231(a) Authorizes ICE to Detain Plaintiffs ................................. 4

            b. Plaintiffs Are Not Entitled to Bond Hearings ........................................... 5

        2. Count Two Lacks Merit ........................................................................ 7

        3. Count Three: Supreme Court Authority Forecloses Plaintiffs' Due Process Claim ................................................................................................. 7

    B. The Other Preliminary Injunction Factors Turn on the Merits of Plaintiffs' Claims. ........ 8

Conclusion ........................................................................................................................... 9

# TABLE OF AUTHORITES

### Cases

*Bahena v. Aitken,*
  No. 1:17-CV-145, 2017 WL 2797802 (E.D. Cal. June 28, 2017) .......................................................... 8

*Borjas-Calix v. Sessions*,
  No. 4:16-CV-685, 2018 WL 1428154 (D. Ariz. Mar. 22, 2018) .......................................................... 7

*Casas-Castrillon v. DHS*,
  535 F.3d 942 (9th Cir. 2008) ........................................................................................................ 5, 6

*Castellar v. Nielsen*,
  No. 3:17-CV-491, 2018 WL 786742 n.4 (S.D. Cal. Feb. 8, 2018) ..................................................... 7

*Clark v. Martinez*,
  543 U.S. 371 (2005) ...................................................................................................................... 5, 8

*Diouf v. Napolitano,*
  634 F.3d 1081 (9th Cir. 2011) ...................................................................................................... 5, 6

*DISH Network Corp. v. F.C.C.*,
  653 F.3d 771 (9th Cir. 2011) ............................................................................................................ 8

*Jennings v. Rodriguez,*
  138 S. Ct. 830 (2018) .................................................................................................................... 5, 6

*Lopez v. Brewer*,
  680 F.3d 1068 (9th Cir. 2012) ....................................................................................................... 3, 9

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ............................................................................................................................ 3

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) ..................................................................................................... 5, 6, 7

*New Comm Wireless Servs., Inc. v. SprintCom, Inc.*,
  287 F.3d 1 (1st Cir. 2002) ................................................................................................................. 8

*Padilla-Ramirez v. Bible*,
  882 F.3d 826 (9th Cir. 2017) ............................................................................................................ 4

*Ramos v. Sessions*,
  No. 3:18-CV-413, 2018 WL 1317276 (N.D. Cal. Mar. 13, 2018) ..................................................... 6

*Rodriguez v. Robbins*,
  804 F.3d 1060 (9th Cir. 2015) .......................................................................................................... 6

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .................................................................................................................. 3

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) ..................................................................................................... 4, *passim*

**Federal Statutes**

5 U.S.C. § 701 .............................................................................................................................. 7

5 U.S.C. § 706 .............................................................................................................................. 3

6 U.S.C. § 251 .............................................................................................................................. 4

6 U.S.C. § 557 .............................................................................................................................. 4

8 U.S.C. § 1182 ............................................................................................................................ 4

8 U.S.C. § 1182(a)(6)(C)(i) .......................................................................................................... 1

8 U.S.C. § 1182(a)(7)(A)(i)(I) ...................................................................................................... 2

8 U.S.C. § 1231(a)(1)(A) ............................................................................................................. 4

8 U.S.C. § 1231(a)(2) ................................................................................................................... 4

8 U.S.C. § 1231(a)(5) ............................................................................................................... 1, 2

8 U.S.C. § 1231(a)(6) ......................................................................................................... 4, *passim*

**Federal Regulations**

8 C.F.R. § 208.31(e) ................................................................................................................ 1, 2

8 C.F.R. § 241.8(e) .................................................................................................................. 1, 2

The Court should deny preliminary relief. Plaintiffs' claims fail on the merits because the Immigration and Nationality Act ("INA") authorizes their detention; they are not entitled to bond hearings; and Supreme Court authority forecloses their due process claim.

## Facts

**A.    Esteban Aleman Gonzalez**

Plaintiff Esteban Aleman Gonzalez is a native and citizen of Mexico. Compl. ¶ 11. In April 2000, he applied for admission to the United States. Notice and Order of Expedited Removal (Apr. 14, 2000), Ex. A. When he did so, he presented an entry document that belonged to another person. *Id.* An immigration officer found that Aleman Gonzalez was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) because he had sought to procure admission by fraud or by willfully misrepresenting a material fact. *Id.* Immigration officers issued an Expedited Removal Order and then removed Aleman Gonzalez. *Id.*

On an unknown date, Aleman Gonzalez unlawfully reentered the United States. Notice of Intent/Decision to Reinstate Prior Order (Aug. 18, 2017), Ex. B. In August 2017, immigration officers arrested him and determined that he was "removable as an alien who ha[d] illegally reentered the United States after having been previously removed." *Id.* (citing 8 U.S.C. § 1231(a)(5)). Aleman Gonzalez declined to contest the finding that he was removable. *Id.* An immigration officer reinstated Aleman Gonzalez's April 2000 removal order. *Id.*

While in custody, Aleman Gonzalez expressed a fear that he would persecuted or tortured if ICE removed him to Mexico. *See* Notice of Referral to Immigration Judge (Aug. 30, 2017) ¶ 6, Ex. C. An asylum officer interviewed Aleman Gonzalez, determined that he reasonably feared persecution or torture, and then referred him to an immigration judge for "withholding-only" proceedings. *Id.*; *see* 8 C.F.R. §§ 208.31(e), 241.8(e).

In withholding-only proceedings, Aleman Gonzalez moved for a bond hearing. *See* Memorandum Decision of the Immigration Judge (Mar. 23, 2018), Ex. D. An immigration judge denied the motion for lack of jurisdiction. *Id.* The immigration judge has scheduled a July 9, 2018 hearing on the merits of Aleman Gonzalez's withholding-of-removal claim. Notice of Withholding-Only Hearing (Mar. 28, 2018), Ex. E.

On February 26, 2018, an ICE officer reviewed Aleman Gonzalez's custody status.  Decision to Continue Detention (Feb. 26, 2018), Ex. F.  The officer determined that Aleman Gonzalez will remain in ICE custody "[p]ending a ruling on [his withholding-of-removal] claim" or until he demonstrates that his "removal is unlikely." *Id.*

**B.     Jose Eduardo Gutierrez Sanchez**

Plaintiff Jose Eduardo Gutierrez Sanchez is a native and citizen of Mexico.  Compl. ¶ 12.  In May 2009, he unlawfully entered the United States.  Notice and Order of Expedited Removal (May 19, 2009), Ex. G.  Shortly thereafter, immigration officers arrested him and charged him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  *Id.*  Immigration officers issued an Expedited Removal Order and then removed Gutierrez Sanchez.  *Id.*

On an unknown date, Gutierrez Sanchez unlawfully reentered the United States.  Notice of Intent/Decision to Reinstate Prior Order (Sept. 26, 2017), Ex. H.  On September 26, 2017, immigration officers arrested him and determined that he was "removable as an alien who ha[d] illegally reentered the United States after having been previously removed."  *Id.* (citing 8 U.S.C. § 1231(a)(5)).  Gutierrez Sanchez declined to contest the finding that he was removable.  *Id.*  An immigration officer reinstated Gutierrez Sanchez's May 2009 removal order.  *Id.*

While in custody, Gutierrez Sanchez expressed a fear that he would persecuted or tortured if ICE removed him to Mexico.  *See* Notice of Referral to Immigration Judge (Oct. 3, 2017) ¶ 6, Ex. I.  An asylum officer interviewed him, determined that he reasonably feared persecution or torture, and then referred him to an immigration judge for "withholding-only" proceedings.  *Id.*; *see* 8 C.F.R. §§ 208.31(e), 241.8(e).

In withholding-only proceedings, Gutierrez Sanchez moved for a bond hearing.  *See* Order of the Immigration Judge (Apr. 4, 2018), Ex. J.  The immigration judge denied the motion for lack of jurisdiction.  *Id.*  The judge has scheduled a June 18, 2018 hearing on the merits of Gutierrez Sanchez's withholding-of-removal claim.  Notice of Hearing (Apr. 19, 2018), Ex. K.

On December 19, 2017, an ICE officer reviewed Gutierrez Sanchez's custody status.  Decision to Continue Detention (Dec. 19, 2017), Ex. L.  In a written decision, the officer relied on Gutierrez

Sanchez's criminal history to conclude that he "would be a danger and a flight risk if released." *Id.* The officer accordingly declined to release Gutierrez Sanchez.

### **Plaintiffs' Claims**

Plaintiffs assert three causes of action. First, they claim that "in the absence of . . . bond hearings," their detention violates the INA. Compl. ¶ 63. Second, they claim that in detaining them without bond hearings, Defendants have acted unlawfully and unlawfully withheld agency action, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *Id.* ¶¶ 65–69. Third, Plaintiffs claim that their detention violates the Due Process Clause. *Id.* ¶ 71–72. Based on these claims, Plaintiffs seek declaratory and injunctive relief. *Id.* ¶ 75–77.

### **Preliminary Injunction Standard**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). To obtain preliminary relief, a plaintiff must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In resolving a preliminary injunction motion, a court may not accept the movant's allegations as true, and may consider affidavits and other evidence. *See* 11A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2949 (3d. ed. 2014).

### **Argument and Authority**

The Court should deny preliminary relief. Plaintiffs' claims fail on the merits because the INA authorizes their detention; they are not entitled to bond hearings; and Supreme Court authority forecloses their due process claim.

**A.    Plaintiffs' Claims Lack Merit.**

    **1.    Count One: Plaintiffs' Detention Is Lawful Under the INA.**

Plaintiffs claim that "in the absence of . . . bond hearings," their detention violates the INA. Compl. ¶ 63. But the INA authorizes the Government to detain them and does not require the Government to afford them bond hearings.

### a. Section 1231(a) Authorizes ICE to Detain Plaintiffs.

Section 1231(a) authorizes ICE to detain Plaintiffs. It provides that "when an alien is ordered removed, the [Secretary of Homeland Security][1] shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). During the 90-day "removal period," the Secretary "shall detain the alien." *Id.* § 1231(a)(2). Once the removal period ends, the Secretary "may" continue to detain certain aliens, including ones who are inadmissible under 8 U.S.C. § 1182. *Id.* § 1231(a)(6).

In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) does not authorize the Government to detain an alien indefinitely. 533 U.S. 678, 688–702 (2001). The Court detected ambiguity in the statutory phrase "may be detained," and accordingly applied the canon of constitutional avoidance to limit the length of post-removal-period detention. *Id.* at 689. Specifically, the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* The Court additionally held that six months is a presumptively reasonable period and that, after six months, § 1231(a)(6) continues to authorize detention "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

Plaintiffs' removal periods began on August 18 and September 26, 2017, the dates on which their reinstated removal orders became administratively final. *See Padilla-Ramirez v. Bible*, 882 F.3d 826, 830–32 (9th Cir. 2017). Their removal periods ended 90 days later, on November 16 (Aleman Gonzalez) and December 25 (Gutierrez Sanchez). During the removal periods, 8 U.S.C. § 1231(a)(2) required ICE to detain Plaintiffs. Since the removal periods ended, § 1231(a)(6) has authorized ICE to detain Plaintiffs because (1) they are inadmissible under 8 U.S.C. § 1182, and (2) a court has not determined that their removals are not reasonably foreseeable.[2] *Zadvydas*, 533 U.S. at 701. Plaintiffs are lawfully detained under § 1231(a)(6).

//

---

[1] The statute references the Attorney General, not the Secretary of Homeland Security. However, Congress has transferred responsibility for immigration-enforcement functions from the Attorney General to the Secretary. 6 U.S.C. § 251. Pursuant to 6 U.S.C. § 557, section 1231's references to the Attorney General "shall be deemed to refer to the Secretary."

[2] Plaintiffs' removals are reasonably foreseeable. *See infra*, Section A.3.

### b. Plaintiffs Are Not Entitled to Bond Hearings.

Plaintiffs are not entitled to bond hearings under the INA. In *Diouf v. Napolitano*, the Ninth Circuit held that "prolonged detention under § 1231(a)(6), without adequate procedural protections, would raise 'serious constitutional concerns.'" 634 F.3d 1081, 1086 (9th Cir. 2011) (quoting *Casas-Castrillon v. DHS*, 535 F.3d 942, 950 (9th Cir. 2008)). "To address those concerns," the court "appl[ied] the canon of constitutional avoidance and construe[d] § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention under that provision." *Id.*

The Court should reject *Diouf* "as having been effectively overruled" by "clearly irreconcilable" Supreme Court authority. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). In *Jennings v. Rodriguez*, the Supreme Court held that the Ninth Circuit misapplied the canon of constitutional avoidance when it concluded that 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) afford detained aliens the right to periodic bond hearings. 138 S. Ct. 830, 842, 846–47 (2018). The Court explained that merely "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases." *Id.* at 843. Rather, the canon of constitutional avoidance "permits a court to 'choos[e] [only] between competing *plausible* interpretations of a statutory text.'" *Id.* (quoting *Clark v. Martinez*, 543 U.S. 371, 381 (2005)).

Sections 1225(b), 1226(a), and 1226(c) do not implicate the canon of constitutional avoidance because, as the Supreme Court held, they cannot plausibly be interpreted to require periodic bond hearings. "[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings;" § 1226(c) "imposes an affirmative *prohibition* on releasing detained aliens," except under an express exception; and "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition" of a bond-hearing requirement. *Id.* at 842, 847.

Like those statutes, § 1231(a)(6) does not say anything about bond hearings. Thus, when the *Diouf* court construed § 1231(a)(6) to require periodic bond hearings, it did not plausibly interpret the statutory text. Instead of analyzing the statutory text, the *Diouf* court simply spotted a constitutional issue and "rewr[o]te [the] statute" to "address [constitutional] concerns." *Id.* at 843; *Diouf*, 634 F.3d at 1085–86. As *Jennings* clarified, "[t]hat is not how the canon of constitutional avoidance works." 138 S. Ct. at 843.

1     *Diouf* is "clearly irreconcilable" with *Jennings*. That conclusion becomes even clearer when one considers the following: (1) *Jennings* reversed the Ninth Circuit's judgment in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), which, as to § 1226(a) detainees, explicitly applied the Ninth Circuit's prior holding in *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008); and (2) in *Diouf*, the Ninth Circuit "extended the procedural protections established in *Casas* to individuals detained under § 1231(a)(6)." *See Rodriguez*, 804 F.3d at 1068–69. Because *Jennings* reversed a judgment that explicitly applied the holding in *Casas*, and because *Diouf* explicitly "extended" *Casas*, *Jennings* and *Diouf* are clearly irreconcilable. The Court "should consider [itself] bound by the intervening higher authority." *Miller*, 335 F.3d at 900.

    In a string of post-*Jennings* decisions, district courts in the Ninth Circuit have mistakenly held that *Diouf* "remains good law." *E.g.*, *Ramos v. Sessions*, No. 3:18-CV-413, 2018 WL 1317276, at \*3 (N.D. Cal. Mar. 13, 2018). Those decisions emphasize that *Jennings* "expressly contrast[ed] . . . sections 1225 and 1226 with . . . section 1231(a)(6)." *Id.* Although *Jennings* indeed distinguished §§ 1225(b)(1) and (b)(2) from § 1231(a)(6), it did not do so with respect to the relevant issue — whether § 1231(a)(6) can plausibly be construed to require periodic bond hearings.

    *Jennings* distinguished §§ 1225(b)(1) and (b)(2) from § 1231(a)(6) with respect to whether those statutes can plausibly be interpreted to limit the permissible length of detention. 138 S. Ct. at 843–44. As *Jennings* noted, §§ 1225(b)(1) and (b)(2) unambiguously mandate that aliens within their scope "shall" be detained, whereas § 1231(a)(6) ambiguously provides that post-removal-order aliens "may be detained." *Id.* at 844. Thus, whereas §§ 1225(b)(1) and (b)(2) cannot plausibly be construed to limit the permissible length of detention, "Congress left the *permissible length of detention* under § 1231(a)(6) unclear." *Id.* (emphasis added).

    The fact that *Jennings* distinguished §§ 1225(b)(1) and (b)(2) from § 1231(a)(6) on the permissible-length-of-detention issue does not detract from the fact that *Jennings* and *Diouf* are clearly irreconcilable on the issue of bond hearings. Under *Jennings*'s reasoning, § 1231(a)(6) cannot plausibly be construed to require periodic bond hearings. *See id.* at 842. Because *Diouf* held to the contrary, it and *Jennings* are clearly irreconcilable. The Court "should consider [itself] bound by the intervening

higher authority." *Miller*, 335 F.3d at 900. Plaintiffs are not entitled to bond hearings and are lawfully detained pursuant to § 1231(a)(6). Count One lacks merit.

### 2. Count Two Lacks Merit.

Plaintiffs' APA claim lacks merit. Plaintiffs contend that in detaining them for more than six months without bond hearings, Defendants have acted unlawfully and "unlawfully withheld" agency action. Compl. ¶¶ 65–69 (relying on 5 U.S.C. § 701). However, neither the INA nor the Due Process Clause entitles Plaintiffs to receive bond hearings. *See supra* Section A.1; *infra* Section A.3. Accordingly, Defendants have not acted unlawfully or unlawfully withheld agency action.

When the merits of an APA claim turn on the merits of a substantive claim, as here, a court need not separately consider the APA claim. *E.g.*, *Castellar v. Nielsen*, No. 3:17-CV-491, 2018 WL 786742, at *8 n.4 (S.D. Cal. Feb. 8, 2018); *Borjas-Calix v. Sessions*, No. 4:16-CV-685, 2018 WL 1428154, at *4 (D. Ariz. Mar. 22, 2018). With respect to Count Two, the Court need only state that because neither the INA nor the Due Process Clause entitles Plaintiffs to receive bond hearings, Defendants have not acted unlawfully or unlawfully withheld agency action. Count Two fails on the merits.

### 3. Count Three: Supreme Court Authority Forecloses Plaintiffs' Due Process Claim.

Plaintiffs claim that the Due Process Clause "requires an adequate hearing before a neutral decision maker to determine whether prolonged immigration detention is justified." Compl. ¶ 72. But Supreme Court authority forecloses their claim. In *Zadvydas v. Davis*, the Supreme Court established the framework under which courts must resolve due process challenges to § 1231(a)(6) detention. 533 U.S. 678 (2001). In resolving such a challenge, a court may not reach the due process issue, but instead must construe § 1231(a)(6) to limit the permissible length of detention to "a period reasonably necessary to secure removal" from the United States. *Id.* at 699. Under *Zadvydas*'s construction of § 1231(a)(6), post-removal-order detention does not even "raise a serious constitutional problem," let alone violate the Due Process Clause, until (1) the length of an alien's detention exceeds the presumptively reasonable six-month period, and (2) the alien demonstrates that he is not significantly likely to be removed in the reasonably foreseeable future. *Id.* at 690, 701.

Courts must interpret § 1231(a)(6) in accordance with *Zadvydas* (*i.e.*, in a manner that does not raise a due process problem), irrespective of the "presence or absence of constitutional concerns in [an]

individual case." *Clark v. Martinez*, 543 U.S. 371, 382 (2005).  A contrary approach would render § 1231(a)(6) "a chameleon, its meaning subject to change." *Id.*  Because a single statutory text cannot rightly be given "different meanings in different cases," courts must apply *Zadvydas*' construction of § 1231(a)(6) "in all cases." *Id.* at 383, 386.

Under *Zadvydas*'s construction of § 1231(a)(6), Plaintiffs' detention does not raise a serious constitutional problem, let alone violate the Due Process Clause, because Plaintiffs have not shown that they are not significantly likely to be removed in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701.  Plaintiffs cannot make such a showing given that their withholding-of-removal applications pose the sole obstacle to their removals.[3]  Under such circumstances, an alien's removal is reasonably foreseeable. *Bahena v. Aitken*, No. 1:17-CV-145, 2017 WL 2797802, at *3 (E.D. Cal. June 28, 2017). Because Plaintiffs will likely be removed in the reasonably foreseeable future, their detention does not present constitutional concerns.  Count Three fails on the merits.

**B.   The Other Preliminary Injunction Factors Turn on the Merits of Plaintiffs' Claims.**

When a plaintiff fails to establish that he is likely to succeed on the merits, "the remaining [preliminary injunction] factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002); *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776–77 (9th Cir. 2011).  As explained above, Plaintiffs' claims lack merit.  Plaintiffs thus are not entitled to preliminary relief regardless of the other preliminary injunction factors.

If the Court considers the other factors, the key point is that "the public interest favors applying federal law correctly." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011).  In detaining Plaintiffs without bond hearings, Defendants have correctly applied federal law.  Plaintiffs thus cannot meet their burden to show that preliminary relief is in the public interest. *See id.* (citing *Frankl v. HTH Corp.*, 650 F.3d 1334, 1365 (9th Cir. 2011)).  The Court should deny Plaintiffs' motion.

//

---

[3] ICE regularly removes aliens to Mexico, Plaintiffs' country of origin. *See* ICE, Fiscal Year 2016 ICE Enforcement and Removal Operations Report 16 (Appendix D), https://www.ice.gov/sites/default/files/documents/Report/2016/removal-stats-2016.pdf (last visited Apr. 30, 2018).

## Conclusion

Plaintiffs fail to establish that they are clearly entitled to the "extraordinary and drastic remedy" that they seek. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). The Court should deny preliminary relief.

Dated: May 3, 2018   Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Ligation

ELIANIS PEREZ
Assistant Director

MONIQUE PEOPLES
Senior Litigation Counsel

*/s/ Mary L. Larakers*
MARY L. LARAKERS
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419; (202) 305-7000 (fax)
mary.l.larakers@usdoj.gov

MATTHEW SEAMON
Trial Attorney

JULIAN KURZ
Trial Attorney

CARA ALSTERBERG
Trial Attorney

THEO NICKERSON
Trial Attorney

*Counsel for Defendants*