CHAD. A READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
COLIN A. KISOR
Deputy Director
ELIANIS N. PEREZ
Assistant Director
MONIQUE T. PEOPLES
Senior Litigation Counsel
CARA E. ALSTERBERG
MATTHEW P. SEAMON
JULIAN KURZ
MARY L. LARAKERS
THEO NICKERSON
Trial Attorneys
Office of Immigration Litigation
Civil Division, United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC  20044
Telephone:  (202) 532-4667
Facsimile:  (202) 305-7000
E-mail:  Cara.E.Alsterberg@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

ESTEBAN ALEMAN GONZALEZ and JOSE
EDUARDO GUTIERREZ SANCHEZ,

     Plaintiffs,

     v.

JEFFERSON B. SESSIONS, *et al.*,

     Defendants.

No. 3:18-CV-1869-JSC

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

# TABLE OF CONTENTS

I.    LEGAL BACKGROUND ................................................................2

    A.  THE LEGAL STANDARD FOR REINSTATEMENT, THE RESONABLE FEAR
       DETERMINATION PROCESS, AND WITHOLDING-ONLY PROCEEDINGS......2

    B.  SUPREME COURT AND NINTH CIRCUIT LAW ON BOND HEARINGS ............5

    C.  CLASS CERTIFICATION REQUIRMENTS .............................................6

II.   FACTUAL BACKGOUND................................................................7

    A.  Esteban Aleman Gonzalez ................................................................7

    B.  Jose Eduardo Gutierrez Sanchez.......................................................8

III.  ARGUMENT ...............................................................................9

    A.  The Putative Class Fails to Satisfy the Commonality Requirement of Rule 23(a)(2)
       and Typicality Requirement of 23(a)(3). ............................................11

         1.  Plaintiffs Have Failed to Meet the Commonality Requirement
            of Rule 23(a)(2).........................................................................13

         2.  Plaintiffs Have Failed to Meet the Typicality
            Requirement of Rule 23(a)(3)........................................................16

    B.  The Named Plaintiffs Will Not Fairly and Adequately Protect Class Interests Pursuant
       to Rule 23(a)(4)...........................................................................19

    C.  The Court Lacks Jurisdiction to Order Bond for the Putative Class Members on Due
       Process Grounds............................................................................20

IV.   CONCLUSION............................................................................21

CERTIFICATE OF SERVICE

i

1

### **TABLE OF AUTHORTIES**

2

**Cases**

3

*Amchem Prods., Inc. v. Windsor,*
4
   521 U.S. 591 (1997)........................................................................................................19

5
*Califano v. Yamasaki,*
   442 U.S. 682 (1979)..........................................................................................................6
6

*Casas-Castrillon v. DHS,*
7
   535 F.3d 942 (9th Cir. 2008) ...........................................................................................5

8
*Clark v. Martinez,*
   543 U.S. 371 (2005)........................................................................................................14
9

*Comcast Corp. v. Behrend,*
10
   569 U.S. 27 (2013)............................................................................................................6

11
*Crawford v. Honig,*
   37 F.3d 485 (9th Cir. 1995) ...........................................................................................19
12

*Diouf v. Napolitano,*
13
   634 F.3d 1081 (9th Cir. 2011) ......................................................................................5, 6

14
*Ellis v. Costco Wholesale Corp.,*
   657 F.3d ...........................................................................................................................19
15

*Franklin v. Barry,*
16
   909 F. Supp. 21 (D.D.C. 1995) ........................................................................................7

17
*Gen. Tel. Co. v. Falcon,*
   457 U.S. 147 (1982)..........................................................................................................7
18

*General Tel. Co. v. EEOC,*
19
   446 U.S. 318 (1980)........................................................................................................10

20
*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .......................................................................................19
21

*Hartman v. Duffey,*
22
   19 F.3d 1459 (D.C. Cir. 1994) .........................................................................................7

23
*Hernandez v. Ashcroft,*
   345 F.3d 824 (9th Cir. 2003) ...........................................................................................3
24

*In re Google AdWords Litigation,*
25
   No. 5:08– CV–3369 EJD, 2012 WL 28068 (N.D. Cal. Jan. 5, 2012)............................11

26

27

28

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    202 F.R.D. 12 (D.D.C. 2001)..................................................................................12

*Jama v. ICE*,
    543 U.S. 335 (2005)..............................................................................................3

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) ................................................................................ 1, ***passim***

*Kas v. Financial General Bankshares, Inc.*,
    105 F.R.D. 453 (D.D.C. 1984)..............................................................................12

*Lanza v. Ashcroft*,
    389 F.3d 917 (9th Cir. 2004) ...........................................................................4, 15

*Little v. Washington Metro. Area Transit Auth.*,
    No. CV 14-1289 (RMC), 2017 WL 1403122 (D.D.C. Apr. 18, 2017)....................12

*Matter of I-S- & C-S-*,
    24 I. & N. Dec. 432 (BIA 2008) .............................................................................4

*McCarthy v. Kleindienst*,
    741 F.2d 1406 (D.C. Cir. 1984)..............................................................................7

*McReynolds v. Sodexho Marriott Services, Inc.*,
    208 F.R.D. 428 (D.D.C. 2002)..............................................................................19

*Miller*,
    335 F.3d ...............................................................................................................6

*Padilla-Ramirez v. Bible*,
    882 F.3d 826 (9th Cir. 2017) ........................................................................10, 13

*Ramos v. Sessions*,
    No. 3:18-CV-413, 2018 WL 1317276 (N.D. Cal. Mar. 13, 2018) ............................5

*Reno v. Am.- Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)..............................................................................................20

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .............................................................................20

*Rodriguez v. Robbins*,
    804 F.3d 1060 (9th Cir. 2015) ...............................................................................5

*Siles v. ILGWU*,
    783 F.2d 923 (9th Cir. 1986) ...............................................................................10

*Taylor v. D.C. Water & Sewer Auth.*,
    241 F.R.D. 33 (D.D.C. 2007)................................................................................19

iii

*Wal–Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................11, ***passim***

*Zadvydas v. Davis*,
    533 U.S. 678 (2001)............................................................6, ***passim***

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ...................................................7

## **FEDERAL STATUES**

8 U.S.C. § 1182.................................................................................13

8 U.S.C § 1228(b)............................................................................10

8 U.S.C. §1229a(c)(7)......................................................................10

8 U.S.C. § 1231(a)(1)(A)..................................................................13

8 U.S.C. § 1231(a)(5).............................................................1, 4, 8, 9

8 U.S.C. § 1231(a)(6)..........................................................1, 5, 10, 21

8 U.S.C. § 1231(b)(2)(E)...............................................................4, 15

8 U.S.C. § 1231(b)(3)......................................................................3, 4

8 U.S.C. § 1231(b)(3)(b)......................................................................3

8 U.S.C. § 1231(b)(5)...........................................................................4

8 U.S.C. § 1252(f)(1)....................................................1, 11, 20, 21

## **FEDERAL REGULATIONS**

8 C.F.R. § 208.17(a)............................................................................3

8 C.F.R. § 208.31(a)............................................................................3

8 C.F.R. § 208.31(b)............................................................................3

8 C.F.R. § 208.31(e)............................................................................3

8 C.F.R. § 208.31(f)............................................................................3

8 C.F.R. § 208.31(g)(1)..................................................................3, 15

8 C.F.R. § 208.31(g)(2)........................................................................4

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8 C.F.R. § 1208.16(c)...............................................................................................3

8 C.F.R. § 1208.16(f)....................................................................................4, 15, 16

8 C.F.R. § 1208.2(c)(3)(i)..........................................................................................4

## **FEDERAL RULES OF CIVIL PROCEUDRE**

Fed. R. Civ. P. 23.................................................................................................1, 9

Fed. R. Civ. P. 23(a) ..................................................................................................6

Fed. R. Civ. P. 23(a)(2)............................................................................................11

Fed. R. Civ. P. 23(a)(3)............................................................................................11

Fed. R. Civ. P. 23(a)(4)............................................................................................19

Fed. R. Civ. P. 23(b)(2)......................................................................................11, 12

## **PUBLIC LAW**

Pub. L. No. 105-227...................................................................................................3

Pub. L. No. 107-296 § 471.........................................................................................2

v

1        This case involves Plaintiffs' attempt to challenge both their permissible detention and denial

2   of bond hearings pursuant to 8 U.S.C. § 1231(a)(6).  This Court should deny Plaintiffs' Motion for

3   Class Certification because Plaintiffs' fail to meet their burden by demonstrating both the

4   commonality and typicality requirements under Fed. R. Civ. P. 23.  Under Plaintiffs' definition, their

5   sweeping proposed class encompasses a broad range of dissimilarly situated individuals whose claims

6   are not common, whose injuries are not typical, and who have different factual bases for their claims.

7   ECF 21 at 10; Compl. ¶ 30.  Further, the members of the proposed class would be impossible to

8   discern because Plaintiffs do not, and cannot, demonstrate who will be a part of the proposed class in

9   the future.  Thus, even if Plaintiffs were to prevail in this action, it would be unclear as to which class

10  members would be entitled to relief.  The named Plaintiffs are also inadequate representatives of the

11  class proposed in the Motion because of the factual differences that distinguish Plaintiffs' claims.

12  Additionally, Plaintiffs cannot satisfy Rule 23(b)(2) because this Court lacks jurisdiction to grant relief

13  on Plaintiffs' constitutional claims on a classwide basis pursuant to 8 U.S.C. § 1252(f)(1).  *See*

14  *generally Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018).  When a court lacks jurisdiction to grant

15  classwide injunctive relief, it may not certify a class pursuant to Rule 23(b)(2) (even if the court holds

16  jurisdiction to grant classwide declaratory relief).  *Id.*

17       Ultimately, this lawsuit is a poor class action vehicle.  Certification will do nothing more than

18  undermine the judicial efficacy concerns the class action device is meant to facilitate.  Congress made

19  clear that for an individual subject to a reinstated order of removal, detention authority lies under § 1231.

20  Therefore, the Court should deny Plaintiffs' motion to certify a class in its entirety.

## I.     LEGAL BACKROUND

## A. THE LEGAL STANDARD FOR REINSTATEMENT, THE REASONABLE FEAR DETERMINATION PROCESS, AND WITHHOLDING-ONLY PROCEEDINGS

24       Under 8 U.S.C. § 1231(a)(5), the United States Department of Homeland Security ("DHS") may

25  reinstate a prior order of removal for an alien it finds "reentered the United States illegally after having been

1    removed or having departed voluntarily, under an order of removal."[1]  *Id.*  When DHS reinstates a removal

2    order, the "prior order of removal is reinstated from its original date and is not subject to being reopened or

3    reviewed."  *Id.*

4            If the alien subject to a reinstated order of removal expresses fear of persecution or torture upon

5    return to his home country, the immigration officer refers the alien to U.S. Citizenship and Immigration

6    Services ("USCIS") for an interview by an asylum officer to determine whether the alien establishes a

7    "reasonable fear" of return. 8 C.F.R. § 208.31(b).  This initiates what is referred to as the reasonable fear

8    determination process. *See* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478,

9    8479 (Feb. 19, 1999) ("[T]his screening process will also allow for the fair and expeditious resolution of

10   such claims without unduly disrupting the streamlined removal processes applicable to these aliens[.]").

11   USCIS has exclusive jurisdiction to make a reasonable fear determination.  8 C.F.R. § 208.31(a).  If the

12   asylum officer determines that the alien has not established a reasonable fear, the alien may request review

13   of that determination by an Immigration Judge ("IJ").  8 C.F.R. § 208.31(f).  If the IJ concurs with the

14   determination that no reasonable fear of persecution or torture exists, the case is returned to DHS for

15   execution of the reinstated order of removal, and no administrative appeal is available.  8 C.F.R.

16   § 208.31(g)(1).  If, on the other hand, the asylum officer determines that the alien has established a

17   reasonable fear of persecution or torture, the alien is referred to the IJ for consideration of withholding

18   of removal only.[2]  8 C.F.R. § 208.31(e).

19   [1] Although the relevant statutory sections refer to the Attorney General, the Homeland of Security Act
20   of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law
     enforcement functions from the Department of Justice ("DOJ") to the DHS, while the DOJ's Executive
21   Office of Immigration Review ("EOIR") retained its role in administering immigration courts and the
     Board.  *Jama v. ICE*, 543 U.S. 335, 338 n.1 (2005); *Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th
22   Cir. 2003).

23   [2] The alien may apply for withholding of removal under 8 U.S.C. § 1231(b)(3) or under the regulations
     promulgated under § 2242(b) of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"),
24   Pub. L. No. 105-227, 112 Stat. 2681, which implement the United States' obligations under the
     Convention Against Torture ("CAT"). 8 C.F.R. § 1208.16(c).  An alien who is barred from withholding
25

26

28

1    Likewise, if an alien requests review of an asylum officer's determination that the alien does not

2    have a reasonable fear of persecution or torture and the IJ finds that the alien does have a reasonable

3    fear, the alien may apply for withholding of removal before the immigration court. 8 C.F.R. §

4    208.31(g)(2).    The subsequent proceedings are commonly referred to as "withholding-only

5    proceedings," because the jurisdiction of the IJ is limited to consideration of withholding of removal. 8

6    C.F.R. § 1208.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings . . . shall be limited

7    to a determination of whether the alien is eligible for withholding or deferral of removal."). Indeed,

8    during withholding-only proceedings, "all parties are prohibited from raising or considering any other

9    issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and

10   eligibility for any other form of relief." *Id*.

11   Withholding of removal is country-specific relief from physical removal; thus, even if an alien

12   ultimately succeeds on his withholding claim, he could potentially be removed to an alternate country.

13   8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004)

14   (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but

15   does not prohibit removal to a non-risk country"). A grant of withholding of removal by the IJ, therefore,

16   does nothing to disturb the existence or finality of a final order of removal. 8 U.S.C. § 1231(b)(5); *see*

17   *also Matter of I-S- & C-S-*, 24 I. & N. Dec. 432, 433 (BIA 2008). Additionally, in withholding-only

18   proceedings, an alien who is granted protection from removal to a specific country is ineligible to apply

19   for any other form of relief under the INA, including asylum and adjustment of status. 8 U.S.C. §

20   1231(a)(5) (providing that an alien subject to reinstatement "is not eligible and may not apply for any relief

21   under [the INA]"); *see also Lanza*, 389 F.3d at 933 (stating that a grant of withholding is not a basis for

22   adjustment to lawful permanent resident status and only prohibits removal to the country of risk).

23   Consequently, the alien remains subject to a final order of removal, and DHS is simply restricted from

24
25   of removal under 8 U.S.C. § 1231(b)(3)(b) may apply for deferral of removal under the CAT. 8 C.F.R.
     § 208.17(a).

26
27

28

1  removing the alien to the designated country of removal at that time.  8 U.S.C. § 1231(b)(3); *see also Matter*

2  *of I-S-*, 24 I. & N. Dec. at 434 ("We note in this regard that a grant of withholding of removal . . . does not

3  afford the respondents any permanent right to remain in the United States.").

4  **B.  SUPREME COURT AND NINTH CIRCUIT LAW ON BOND HEARINGS**

5          In *Diouf v. Napolitano*, the Ninth Circuit held that "prolonged detention under § 1231(a)(6),

6  without adequate procedural protections, would raise 'serious constitutional concerns.'" 634 F.3d 1081,

7  1086 (9th Cir. 2011) (quoting *Casas-Castrillon v. DHS*, 535 F.3d 942, 950 (9th Cir. 2008)). "To address

8  those concerns," the court "appl[ied] the canon of constitutional avoidance and construe[d] § 1231(a)(6)

9  as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged

10 detention under that provision." *Id.* As Defendants argue in their Response to Plaintiffs' Motion for

11 Preliminary Injunction, *Diouf* is clearly irreconcilable with the Supreme Court's recent decision in

12 *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). *See generally* Resp. to Mot. for Prelim. Inj., ECF 27.

13         *Jennings* reversed the Ninth Circuit's judgment in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir.

14 2015), which, as to § 1226(a) detainees, explicitly applied the Ninth Circuit's prior holding in *Casas-*

15 *Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008). In *Diouf*, the Ninth Circuit "extended the procedural

16 protections established in *Casas* to individuals detained under § 1231(a)(6)." *See Rodriguez*, 804 F.3d

17 at 1068–69. Because *Jennings* reversed a judgment that explicitly applied the holding in *Casas*, and

18 because *Diouf* explicitly "extended" *Casas*, *Jennings* and *Diouf* are clearly irreconcilable.[3] Although

19 *Jennings* indeed distinguished §§ 1225(b)(1) and (b)(2) from § 1231(a)(6), it did not do so with respect

20 to the relevant issue — whether § 1231(a)(6) can plausibly be construed to require periodic bond

21 hearings.[4]

22 [3] In a string of post-*Jennings* decisions, district courts in the Ninth Circuit have mistakenly held that
23 *Diouf* "remains good law." *E.g.*, *Ramos v. Sessions*, No. 3:18-CV-413, 2018 WL 1317276, at *3 (N.D.
   Cal. Mar. 13, 2018). Those decisions emphasize that *Jennings* "expressly contrast[ed] . . . sections 1225
24 and 1226 with . . . section 1231(a)(6)." *Id.*
   [4] 8 U.S.C. § 1231(a)(6) delineates the scenarios where an inadmissible or criminal alien may be detained
25 beyond the removal period.

26
27

28

*Jennings* also distinguished §§ 1225(b)(1) and (b)(2) from § 1231(a)(6) with respect to whether those statutes can plausibly be interpreted to limit the permissible length of detention. 138 S. Ct. at 843–44. As *Jennings* noted, §§ 1225(b)(1) and (b)(2) unambiguously mandate that aliens within their scope "shall" be detained, whereas § 1231(a)(6) ambiguously provides that post-removal-order aliens "may be detained." *Id.* at 844. Thus, whereas §§ 1225(b)(1) and (b)(2) cannot plausibly be construed to limit the permissible length of detention, "Congress left the *permissible length of detention* under § 1231(a)(6) unclear." *Id.* (emphasis added).

The fact that *Jennings* distinguished §§ 1225(b)(1) and (b)(2) from § 1231(a)(6) on the permissible-length-of-detention issue does not diminish the fact that *Jennings* and *Diouf* are clearly irreconcilable on the issue of bond hearings. Under *Jennings*'s reasoning, § 1231(a)(6) cannot plausibly be construed to require periodic bond hearings. *See id.* at 842 (finding that the Ninth Circuit misapplied the canon of constitutional avoidance and impermissibly read into the statutes a continuing obligation for bond hearings). Because *Diouf* held to the contrary, it is clearly irreconcilable with *Jennings*. The Court "should consider [itself] bound by the intervening higher authority." *Miller*, 335 F.3d at 900; *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (providing a mechanism for review of custody determinations and holding that § 1231(a)(6) continues to authorize detention "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.").

## C. CLASS CERTIFICATION REQUIREMENTS

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To fall within the exception, Plaintiffs "must affirmatively demonstrate [their] compliance" with Rule 23 of the Federal Rules of Civil Procedure. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A party seeking certification of a proposed class bears the burden to demonstrate that the required elements set forth in Rule 23(a) exist, including that: (1) there are sufficiently numerous parties ("numerosity"); (2) there are questions of law or fact

common to the class ("commonality");  (3) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class ("typicality");  and (4) the named plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation").  *See* Fed. R. Civ. P. 23(a).  In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3).  *See Hartman v. Duffey*, 19 F.3d 1459, 1468 (D.C. Cir. 1994);  *Franklin v. Barry*, 909 F. Supp. 21, 30 (D.D.C. 1995);  *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

The proponents of a class action have the burden of proof as to each of Rule 23's requirements.  *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984).  The Supreme Court has held that "actual, not presumed, conformance with Rule 23(a) [is] indispensable."  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).  If a court is not fully satisfied, the class cannot be certified.  *Id.*  "While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23."  *Zinser*, 253 F.3d at 1186.  When reviewing a motion for class certification, it "'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *Wal–Mart Stores, Inc.*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 160-161).

## II.    FACTUAL BACKGROUND

### A. Esteban Aleman Gonzalez

Plaintiff Esteban Aleman Gonzalez is a native and citizen of Mexico.  Compl. ¶ 11.  In April 2000, he applied for admission to the United States.  Notice and Order of Expedited Removal (Apr. 14, 2000), ECF 27, Ex. A.  In doing so, he presented an entry document that belonged to another person.  *Id.*  An immigration officer found that Aleman Gonzalez was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) because he had sought to procure admission by fraud or by willfully misrepresenting

1  a material fact. *Id.* Immigration officers issued an Expedited Removal Order and then removed Aleman

2  Gonzalez. *Id.*

3  On an unknown date, Aleman Gonzalez unlawfully reentered the United States. Notice of

4  Intent/Decision to Reinstate Prior Order (Aug. 18, 2017), ECF 27, Ex. B. In August 2017, immigration

5  officers arrested him and determined that he was "removable as an alien who ha[d] illegally reentered

6  the United States after having been previously removed." *Id.* (citing 8 U.S.C. § 1231(a)(5)). Aleman

7  Gonzalez declined to contest the finding that he was removable. *Id.* An immigration officer reinstated

8  Aleman Gonzalez's April 2000 removal order. *Id.*

9  While in custody, Aleman Gonzalez expressed a fear that he would persecuted or tortured if ICE

10 removed him to Mexico. *See* Notice of Referral to Immigration Judge (Aug. 30, 2017) ¶ 6, ECF 27, Ex.

11 C. An asylum officer interviewed Aleman Gonzalez, determined that he reasonably feared persecution

12 or torture, and then referred him to an immigration judge for "withholding-only" proceedings. *Id.*; *see*

13 8 C.F.R. §§ 208.31(e), 241.8(e).

14 In withholding-only proceedings, Aleman Gonzalez moved for a bond hearing. *See*

15 Memorandum Decision of the Immigration Judge (Mar. 23, 2018), ECF 27, Ex. D. An immigration

16 judge denied the motion for lack of jurisdiction. *Id.* The immigration judge has scheduled a July 9,

17 2018 hearing on the merits of Aleman Gonzalez's withholding-of-removal claim. Notice of

18 Withholding-Only Hearing (Mar. 28, 2018), ECF 27, Ex. E.

19 On February 26, 2018, an ICE officer reviewed Aleman Gonzalez's custody status. Decision to

20 Continue Detention (Feb. 26, 2018), ECF 27, Ex. F. The officer determined that Aleman Gonzalez

21 should remain in custody "pending disposition of [his] Withholding Only proceedings." *Id.* ICE will

22 review Aleman Gonzalez's custody status again on August 26, 2018. *Id.*

23 **B. Jose Eduardo Gutierrez Sanchez**

24 Plaintiff Jose Eduardo Gutierrez Sanchez is a native and citizen of Mexico. Compl. ¶ 12. In

25 May 2009, he unlawfully entered the United States. Notice and Order of Expedited Removal (May 19,

26
27

28

2009), ECF 27, Ex. G. Shortly thereafter, immigration officers arrested him and charged him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.* Immigration officers issued an Expedited Removal Order and then removed Gutierrez Sanchez. *Id.*

On an unknown date, Gutierrez Sanchez unlawfully reentered the United States. Notice of Intent/Decision to Reinstate Prior Order (Sept. 26, 2017), ECF 27, Ex. H. On September 26, 2017, immigration officers arrested him and determined that he was "removable as an alien who ha[d] illegally reentered the United States after having been previously removed." *Id.* (citing 8 U.S.C. § 1231(a)(5)). Gutierrez Sanchez declined to contest the finding that he was removable. *Id.* An immigration officer Gutierrez Sanchez's May 2009 removal order. *Id.*

While in custody, Gutierrez Sanchez expressed a fear that he would persecuted or tortured if ICE removed him to Mexico. *See* Notice of Referral to Immigration Judge (Oct. 3, 2017) ¶ 6, ECF 27, Ex. I. An asylum officer interviewed him, determined that he reasonably feared persecution or torture, and then referred him to an immigration judge for "withholding-only" proceedings. *Id.*; *see* 8 C.F.R. §§ 208.31(e), 241.8(e).

In withholding-only proceedings, Gutierrez Sanchez moved for a bond hearing. *See* Order of the Immigration Judge (Apr. 4, 2018), ECF 27, Ex. J. The immigration judge denied the motion for lack of jurisdiction. *Id.* The judge has scheduled a June 18, 2018 hearing on the merits of Gutierrez Sanchez's withholding-of-removal claim. Notice of Withholding-Only Hearing (April 19, 2018), ECF 27, Ex. K.

On December 19, 2017, an ICE officer reviewed Gutierrez Sanchez's custody status. Decision to Continue Detention (Dec. 19, 2017), ECF 27, Ex. L. The officer determined that Gutierrez Sanchez should remain in custody "pending disposition of [his] Withholding Only proceedings." *Id.* ICE will review Gutierrez Sanchez's custody status again on June 19, 2018. *Id.*

### III.   ARGUMENT

This Court should deny Plaintiffs' Motion for Class Certification because Plaintiffs' fail to meet their burden by showing the existence of the commonality and typicality requirements under Fed. R. Civ. P. 23.  Under Plaintiffs' definition, their sweeping proposed class encompasses a broad range of dissimilarly situated individuals whose claims are not common, whose injuries are not typical, and who have different factual bases for their claims.  Plaintiffs' proposed class definition states:

> All individuals who are detained pursuant to 8 U.S.C. § 1231(a)(6) in the Ninth Circuit by, or pursuant to the authority of, the U.S. Immigration and Customs Enforcement, and who have reached or will reach six months in detention, and have been or will be denied a prolonged detention bond hearing before an Immigration Judge.

ECF 21 at 10.[5]  Thus, Plaintiffs' proposed class encompasses individuals: (1) detained pursuant to Section 1231(a)(6) who have been issued administrative final removal orders pursuant to 8 U.S.C § 1228(b); (2) who are awaiting judicial review of the Board's denial of a motion to reopen removal proceedings, *see* 8 U.S.C. §1229a(c)(7); and (3) who have been issued a judicial stay of removal under *Padilla-Ramirez*, 882 F.3d 881, 882 (9th Cir. 2017), amended and superseded, 882 F.3d 826, 830-32 (9th Cir. 2018) (individuals with pending petitions for review in withholding-only proceedings with stays).[6]

---

[5] Plaintiffs' note in their proposed class definition that the certified classes in the Central District of California and Western District of Washington are excluded from the putative class proposed in this case.  ECF 21 at 10, n.3.

[6] To the extent that Plaintiffs' proposed class meets the requirements for numerosity, this is solely due to the fact that Plaintiffs' proposed class definition is overbroad.  Plaintiffs fail to meet their burden to show numerosity because bare allegations and vague declaratory evidence are insufficient. *Siles v. ILGWU*, 783 F.2d 923, 930 (9th Cir. 1986) (holding plaintiff failed to satisfy numerosity because, despite presenting evidence that thousands of employees were covered by the benefit plan at issue, she did not provide specific facts as to how many were actually harmed by the application of the benefit plan); *accord General Tel. Co. v. EEOC*, 446 U.S. 318 (1980) (numerosity is determined by examining the specific facts and circumstances of each case).

Further, the members of the proposed class would be impossible to discern because Plaintiffs do not, and cannot, demonstrate who will be a part of the proposed class in the future. Thus, even if Plaintiffs were to prevail in this action, it would be unclear as to which class members would be entitled to relief. The named Plaintiffs are also inadequate representatives of the class proposed in the Motion because of the factual differences that distinguish Plaintiffs' claims. Finally, Plaintiffs cannot satisfy Rule 23(b)(2) because this Court lacks jurisdiction to grant relief on Plaintiffs' constitutional claims on a classwide basis pursuant to 8 U.S.C. § 1252(f)(1). Therefore, the Court should deny Plaintiffs' motion to certify a class.

## A. The Putative Class Fails to Satisfy the Commonality Requirement of Rule 23(a)(2) and Typicality Requirement of 23(a)(3).

Plaintiffs do not establish commonality and typicality in their proposed class definition, where the putative class is broadly drawn and brings within its ambit differing factual circumstances and differing legal claims. Fed. R. Civ. P. 23(a)(2), (3). To obtain class certification, Plaintiffs must demonstrate that the proposed class members are entitled to common relief. *See* Fed. R. Civ. P. 23(a)(2), (b)(2). To establish commonality, the Supreme Court has repeatedly held that "[i]t is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.,* 564 U.S. at 350 (citation omitted). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (citation omitted).

This requirement is likewise present in Rule 23(b)(2), which requires that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." For certification under Rule 23(b)(2), Plaintiffs must show that "declaratory relief is available to the class as a whole" and that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*, 564 U.S. at 360. Therefore, Plaintiffs

have the burden of demonstrating that the factual differences in the class are unlikely to bear on the individual's entitlement to relief. *See In re Google AdWords Litigation*, No. 5:08– CV–3369 EJD, 2012 WL 28068 *15-16 (N.D. Cal. Jan. 5, 2012) ("The question of which advertisers among the hundreds of thousands of proposed class members are even entitled to restitution would require individual inquiries."). If the factual differences have the likelihood of changing the outcome of the legal issue, then class certification may not be appropriate.

The typicality requirement of Rule 23(a)(3) ensures that the interests of the named representative align with the interests of the class.[7] As long as the claims "resemble or exhibit the essential characteristics of those of the representatives," Rule 23(a)(3) will be satisfied. *Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453, 461 (D.D.C. 1984). The typicality requirement is not met, however, if the proposed class representatives are subject to unique defenses. *Id*. At bottom, the typicality requirement is used to ascertain "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented." *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001) (citations omitted).

Rule 23(a)'s commonality and typicality requirements occasionally merge: "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart, Inc.*,

---

[7] The typicality requirement is likewise present in Rule 23(b)(2). Under Rule 23(b)(2), Plaintiffs must demonstrate that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). For certification under Rule 23(b)(2), Plaintiffs must show that "declaratory relief is appropriate respecting the class as a whole" and that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*, 564 U.S. at 360. Therefore, Plaintiffs have the burden of demonstrating that the factual differences within the class are unlikely to bear on an individual's entitlement to relief.

131 S. Ct. at 2551 n.5 (quoting *Falcon*, 457 U.S. at 157-58, n. 13); *see also Little v. Washington Metro. Area Transit Auth.,* No. CV 14-1289 (RMC), 2017 WL 1403122, at *17 (D.D.C. Apr. 18, 2017).

### 1. Plaintiffs Have Failed to Meet the Commonality Requirement of Rule 23(a)(2).

In their Motion for Class Certification, Plaintiffs' proposed class lacks commonality because the proffered class definition encompasses a broad range of individuals with different factual bases for their claims, including diverse groups of aliens whose legal and factual interests differ considerably from each other and from those of the proposed class representatives.

Section 1231(a) authorizes ICE to detain aliens who, like the named Plaintiffs, are in withholding-only proceedings. *Padilla-Ramirez v. Bible*, 882 F.3d 826, 832 (9th Cir. 2017). It provides that "when an alien is ordered removed, the [Secretary of Homeland Security] shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). During the 90-day "removal period," the Secretary "shall detain the alien." *Id.* § 1231(a)(2). Once the removal period ends, the Secretary "*may*" continue to detain certain aliens, including ones who are inadmissible under 8 U.S.C. § 1182. *Id.* § 1231(a)(6) (emphasis added).

Plaintiffs concede that § 1231(a)(6) authorizes the detention of their putative class. Compl. ¶ 29. They claim that their detention without a bond hearing violates the INA, the APA, and the Due Process Clause of the U.S. Constitution. Compl. ¶¶ 61-72. However, Plaintiffs' proposed class does not present common legal and factual issues on this question. In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) does not authorize the Government to detain an alien indefinitely. 533 U.S. 678, 688–702 (2001). The Court detected ambiguity in the statutory phrase "may be detained," and accordingly applied the canon of constitutional avoidance to limit the length of post-removal-period detention. *Id.* at 689. Specifically, the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* The Court additionally held that six months is a presumptively reasonable period and that, after six months, § 1231(a)(6) continues to authorize detention "until it has

1  been determined that there is no significant likelihood of removal in the reasonably foreseeable future."

2  *Id.* at 701.

3      Plaintiffs claim that the continued detention and denial of bond hearings for the named Plaintiffs

4  and proposed class members violates the Due Process Clause. Compl. ¶¶ 70-72. However, this legal

5  claim requires an *individualized* and *fact-specific* analysis that cannot be conducted on a classwide basis.

6  In *Zadvydas*, the Supreme Court established the framework under which courts must resolve due process

7  challenges to § 1231(a)(6) detention. 533 U.S. 678 (2001). In resolving such a challenge, a court may

8  not reach the due process issue, but instead must construe § 1231(a)(6) to limit the length of permissible

9  detention to "a period reasonably necessary to secure removal" from the United States. *Id.* at 699. Under

10  *Zadvydas*'s construction of § 1231(a)(6), post-removal-order detention does not even "raise a serious

11  constitutional problem," let alone violate the Due Process Clause, until (1) the length of an alien's

12  detention exceeds the presumptively reasonable six-month period, and (2) the alien demonstrates that

13  he is not significantly likely to be removed in the reasonably foreseeable future. *Id.* at 690, 701.

14      Courts must interpret § 1231(a)(6) in accordance with *Zadvydas* (*i.e.*, in a manner that does not

15  violate the Due Process Clause), irrespective of the "presence or absence of constitutional concerns in

16  [an] individual case." *Clark v. Martinez*, 543 U.S. 371, 382 (2005). A contrary approach would render

17  § 1231(a)(6) "a chameleon, its meaning subject to change." *Id.* Because the same statutory text cannot

18  properly be given "different meanings in different cases," courts must uniformly apply *Zadvydas*'

19  construction of § 1231(a)(6) "in all cases." *Id.* at 383, 386.

20      Thus, under *Zadvydas*'s construction of § 1231(a)(6), the detention of named Plaintiffs and their

21  putative class does not raise a serious constitutional problem, let alone violate the Due Process Clause,

22  unless they can show that they are not significantly likely to be removed in the reasonably foreseeable

23  future. *Zadvydas*, 533 U.S. at 701. This is a detail-specific analysis that necessarily requires a factual

24  assessment of, among other things, the likelihood that individuals will prevail on their requests for relief

25  from removal and, for those in withholding-only proceedings, whether there are alternative countries to

26

27

28

which they could be removed.  8 C.F.R. §1208.16(f).  Under this analysis, Plaintiffs' proposed class is impermissibly broad because it is impossible to accurately assess whether putative class members are likely to be removed in the reasonably foreseeable future on a classwide basis.  Plaintiffs' proposed class falsely assumes that there is not a significant likelihood of removal in the reasonably foreseeable future.

Plaintiffs' putative class is overly broad because the class includes different groups of individuals who have widely divergent likelihoods of removal in the reasonably foreseeable future.  Even among the subset of class members who—like the named Plaintiffs—are in withholding-only proceedings, these aliens face different likelihoods of removal based on the relative merits of their underlying claims for withholding or deferral of removal.  The merits of such claims necessarily depends on various factors, including the strength of their claim to fear of persecution or torture, conditions in the country of removal, and whether the United States regularly removes individuals to their country of origin.  It is impossible to assess all of these factors on a classwide basis, making it impossible to assess whether these individuals are significantly likely to be removed in the reasonably foreseeable future.

Moreover, the proposed class lacks commonality because it includes not just individuals who have been deemed to have a "reasonable fear" of return to their home country, but also individuals whom an asylum officer determined did not to have a "reasonable fear" of return.  For those individuals who receive a negative "reasonable fear" determination, the likelihood of removal in the foreseeable future is necessarily greater than it is for individuals who have already met their initial burden to demonstrate a reasonable fear of removal.  This is because individuals who receive a negative reasonable fear determination, though they may seek review of that determination by an immigration judge, will be immediately removed to their country of origin if the judge concurs with the asylum officer's determination.  8 C.F.R. § 208.31(g)(1) (stating that "[n]o appeal shall lie from the immigration judge's decision").  Moreover, withholding of removal is country-specific relief from physical removal.  8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f).  Therefore, even individuals who receive a positive reasonable fear determination, are placed in withholding-only proceedings, and ultimately succeed on their

withholding claim could still potentially be removed to an alternate country. *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country"). For many— though certainly not all— aliens in Plaintiffs' putative class, there may be third countries to whom these individuals may be removed, irrespective of the outcome of their applications for relief in withholding-only proceedings. *See* 8 C.F.R. § 1208.16(f).

Furthermore, as Plaintiffs concede, their putative class is not limited to the already broad and diverse group of detained individuals with reinstated removal orders who are in withholding-only proceedings. Their proposed class includes not only individuals with reinstated removal orders who are detained pursuant to § 1231(a)(6), but also individuals "who have been issued administratively final removal orders pursuant to 8 U.S.C. § 1228(b), as well as individuals who are awaiting judicial review of the BIA's denial of a motion to reopen removal proceedings, *see* 8 U.S.C. § 1229a(c)(7), and who have been issued a judicial stay of removal." Compl. ¶ 30. These groups of individuals, although detained under the same section as aliens with reinstated removal orders, § 1231(a)(6), are not similarly situated to individuals in withholding-only proceedings. They present substantively different legal claims challenging their final removal orders, are potentially seeking different forms of relief in their removal proceedings beyond the narrow relief available in withholding-only proceedings, and therefore may be considerably more or less likely to be removed in the reasonably foreseeable future. For these reasons, these members of Plaintiffs' proposed class present substantively different constitutional claims with respect to their ongoing detention.

### 2. Plaintiffs Have Failed to Meet the Typicality Requirement of Rule 23(a)(3).

Plaintiffs' proposed class lacks commonality for the same reasons it lacks typicality: the proffered class definition includes groups of aliens whose legal and factual interests differ from those of the proposed class representatives. Plaintiffs' sweeping proposed class encompasses a broad range of individuals with different factual bases for their claims to relief from removal, different likelihoods of

removal in the reasonably foreseeable future, and, therefore, substantively different constitutional claims challenging the propriety of their continued detention without a bond hearing. The Complaint states that the proposed class consists mostly of individuals who "were previously removed from the United States and have since returned because they feared persecution or torture in their home country" and have been referred for withholding-only proceedings. Compl. ¶ 2. Yet, Plaintiffs move this Court to certify a class that includes potentially hundreds of individuals who, unlike both of the named Plaintiffs, are not in withholding-only proceedings. *See* ECF 21 at 2. Most notably, the proposed class broadly includes individuals "who have been issued administratively final removal orders pursuant to 8 U.S.C. § 1228(b), as well as individuals who are awaiting judicial review of the BIA's denial of a motion to reopen removal proceedings, *see* 8 U.S.C. § 1229a(c)(7), and who have been issued a judicial stay of removal." Compl. ¶ 30. Nonetheless, Plaintiffs insist that "variations in the nature of class members' underlying proceedings [. . .] are irrelevant, because they are all deprived of their liberty under the same statute[.]" ECF 21 at 13.

Contrary to Plaintiffs' assertions, the factual variations in individual cases are exactly why typicality cannot be established in this case. As discussed with respect to commonality, *supra*, due process challenges to ongoing § 1231(a)(6) detention must be resolved under the framework laid out in *Zadvydas v. Davis*. 533 U.S. 678. In resolving such challenges, a court may not reach the due process issue, but instead must construe § 1231(a)(6) to limit the length of permissible detention to "a period reasonably necessary to secure removal" from the United States. *Id*. at 699. Under this construction of § 1231(a)(6), post-removal-order detention does not even "raise a serious constitutional problem," let alone violate the Due Process Clause, unless the alien demonstrates that he is not significantly likely to be removed in the reasonably foreseeable future. *Id*. at 690, 701. This requires an individualized and fact-specific analysis, and therefore, contrary to Plaintiffs' assertions, the "variations in the nature of class members' underlying proceedings," ECF 21 at 13, significantly impact the merits of their constitutional claims.

Both named Plaintiffs in this case are natives and citizens of Mexico who were previously removed from the United States, subsequently illegally reentered in clear and flagrant violation of United States law, and have been placed in withholding-only proceedings to pursue the limited relief available to them in that setting. Additionally, other putative class members may have received negative reasonable fear assessments and therefore are even less likely to ultimately prevail on their claims for relief from removal. Moreover, while the United States regularly removes individuals to Mexico,[8] other class members may be from countries to which the Government rarely removes individuals. Furthermore, other putative class members may never have been previously removed from the United States and may be pursuing completely different forms of relief that are statutorily unavailable to individuals in withholding-only proceedings. All of these factors significantly impact the likelihood that individuals detained under § 1231(a)(6) will be removed in the reasonably foreseeable future.

Therefore, the two named Plaintiffs' claims are not typical of these individuals, who otherwise might be swept into the broad and nebulous class definition. The difficulty in determining whether there is a common legal question or answer to which these types of individuals would be subject is compounded by the fact that Plaintiffs' overbroad class definition does not, indeed cannot, define the numerous reasons that individuals find themselves detained pursuant to § 1231(a)(6). There is no common answer that could drive the resolution of the separate and distinct claims in this scenario. *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Some putative class members may have strong constitutional claims challenging their detention pursuant to the analysis under *Zadvydas*, but others may not. Ultimately, Plaintiffs simply cannot satisfy their burden to show that *every* putative class member's claims will be reasonably coextensive with those of the named Plaintiffs in a way that establishes typicality for the purposes of Rule 23(a)(3). Accordingly, the Court should deny Plaintiffs' motion for class certification.

---

[8] In Fiscal Year 2016, ICE removed 149,821 individuals to Mexico. *See* ICE, Fiscal Year 2016 ICE Enforcement and Removal Operations Report 16, https://www.ice.gov/sites/default/files/documents/Report/2016/removal-stats-2016.pdf (last visited May 1, 2018).

**B.  The Named Plaintiffs Will Not Fairly and Adequately Protect Class Interests Pursuant to Rule 23(a)(4).**

Pursuant to Rule 23(a)(4), the named Plaintiffs must fairly and adequately protect the interests of other members of the class.  Fed. R. Civ. P. 23(a)(4).  To determine whether named Plaintiffs will adequately represent a class, courts must resolve two questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 45 (D.D.C. 2007) (citing *McReynolds v. Sodexho Marriott Services, Inc.*, 208 F.R.D. 428, 446 (D.D.C. 2002); *Ellis*, 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  Adequate representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."  *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1995).  Ultimately, the adequacy requirement "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997), and often "merge[s] . . . with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Id.* at 626 n.20.

Here, the named Plaintiffs are inadequate representatives for the same reasons they fail to satisfy typicality and commonality.  First, as both named Plaintiffs await determination on their withholding claims, it is undetermined whether named Plaintiffs would even be adequate to represent each other.  Articulating the standards that govern Rule 23(a)(4), the Supreme Court explained that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Amchem Prods.*, 521 U.S. at 625-26.  If Sanchez or Aleman Gonzalez receive differing results from their applications for withholding of removal and relief under CAT, the likelihood of their removal differs.  Compl. ¶¶ 41, 49.

As detailed above, the named Plaintiffs do not possess either the same interests or injuries as the putative class.  For example, the named Plaintiffs cannot represent the interests of potential putative class members who have already been denied or granted withholding-only relief.  In addition, both named Plaintiffs are detained as they have re-entered the United States illegally.   ECF 27, Ex. B, Ex. H.  Therefore, the named Plaintiffs cannot represent the interests of putative class members who do not have reinstated removal orders, but are detained pursuant to § 1231(a)(6).   Ultimately, the factual circumstances surrounding the named Plaintiffs are distinct from the other class members they would represent.

Additionally, there is no claim in Plaintiffs' Complaint or discussion in Plaintiffs' Motion for Class Certification asking this Court to create subclasses, or indicating which named Plaintiffs could represent the interests of a particular subclass.  *See generally* ECF 21.  Because it fails to define subclasses or otherwise specify which plaintiffs may be capable of representing individuals with distinct legal issues within Plaintiffs' broadly defined putative class, this Court should deny Plaintiffs' motion to certify the proposed class in its entirety.

### C.  The Court Lacks Jurisdiction to Order Bond for the Putative Class Members on Due Process Grounds.

Finally, Plaintiffs cannot satisfy Rule 23(b)(2) because this Court does not have jurisdiction to grant relief on Plaintiffs' constitutional claims on a classwide basis.  Federal law provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–1232] other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated."  8 U.S.C. § 1252(f)(1). The statute "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221– 1231."  *Reno v. Am.- Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999).

In *Rodriguez v. Hayes*, the Ninth Circuit held that § 1252(f)(1) did not affect its jurisdiction over certain statutory claims because the claims did not "seek to enjoin the operation of the immigration

1   detention statutes, but to enjoin conduct . . . not authorized by the statutes." 591 F.3d 1105, 1120 (9th

2   Cir. 2010).   In reference to this holding, the Supreme Court stated that the Ninth Circuit's reasoning

3   "does not seem to apply to an order granting relief on constitutional grounds." *Jennings*, 138 S. Ct. at

4   851.   Indeed, § 1252(f)(1) squarely prohibits district courts from ordering bond hearings for a class of

5   aliens on constitutional grounds.

6        ICE is currently detaining the putative class members under the authority of 8 U.S.C.

7   § 1231(a)(6).  *See supra* Section A.   Thus, if the Court ordered the Government to conduct bond hearings

8   or to release the putative class members, it would "enjoin or restrain the operation of [§ 1231]." 8 U.S.C.

9   § 1252(f)(1).   Section 1252(f)(1) clearly prohibits the Court from doing so on constitutional grounds.

10  Accordingly, if the Court determines that the putative class members' detention violates the Due Process

11  Clause, it must consider each putative class member's individual circumstances and grant relief, if at all,

12  on an individual basis.   The Court lacks jurisdiction, on the other hand, to grant *classwide* injunctive

13  relief on due process grounds.

14       When a court lacks jurisdiction to grant classwide injunctive relief, it may not certify a class

15  pursuant to Rule 23(b)(2), even if the court holds jurisdiction to grant classwide *declaratory* relief.

16  *Jennings*, 138 S. Ct. at 851. Rule 23(b)(2) certification is thus proper "only when a single injunction or

17  declaratory judgment would provide relief to each member of the class." *Id.* at 852.   As the Supreme

18  Court recently reiterated, a Rule 23(b)(2) class action litigated on common facts is not an appropriate

19  way to resolve due process claims. *Id.* at 852 ("[D]ue process is flexible, we have stressed repeatedly,

20  and it calls for such procedural protections as the particular situation demands." (internal quotation

21  marks omitted)).   Accordingly, the Plaintiffs cannot satisfy Rule 23(b)(2) and the Court should deny

22  Plaintiffs' motion to certify the proposed class.

23              **IV.   CONCLUSION**

24       This Court should deny Plaintiffs' Motion for Class Certification because the proposed class

25  definition encompasses a broad range of dissimilarly situated individuals whose claims are not common,

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                21 / 24
3:18-CV-1869-JSC

27

28

whose injuries are not typical, and who have different factual bases for their claims. Further, the membership of the proposed class would be impossible to discern because Plaintiffs do not consider the fact that their ultimate removal or release from custody unquestionably turns on individual circumstances. Thus, even if Plaintiffs prevail in this action, it would be unclear which members of the class are entitled to relief. Further, the named Plaintiffs are inadequate representatives of the class proposed in the Motion, and the Motion does not propose any subclasses or indicate which named Plaintiff could represent a proposed subclass.

Dated: May 3, 2018                           Respectfully Submitted

                                        CHAD A. READLER
                                        Acting Assistant Attorney General
                                        Civil Division

                                        WILLIAM C. PEACHEY
                                        Director
                                        Office of Immigration Litigation

                                        COLIN A. KISOR
                                        Deputy Director

                                        ELIANIS N. PEREZ
                                        Assistant Director

                                        MONIQUE T. PEOPLES
                                        Senior Litigation Counsel

                                        JULIAN KURZ
                                        MARY L. LARAKERS
                                        THEO NICKERSON
                                        MATTHEW P. SEAMON
                                        Trial Attorneys

                                        */s/ Cara E. Alsterberg*
                                        CARA E. ALSTERBERG
                                        Trial Attorney
                                        U.S. Department of Justice, Civil Division
                                        Office of Immigration Litigation –

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          22 / 24
3:18-CV-1869-JSC

District Court Section
P.O. Box 868, Washington, DC 20044
Telephone: 202-532-4667
Facsimile: 202-305-7000
Cara.E.Alsterberg@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**
Case No. 3:18-cv-11910

I HEREBY CERTIFY that on May 3, 2018, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing via e-mail to the following:

Matthew H. Green, AZ SBN 020827*
Law Offices of Matthew H. Green
130 West Cushing Street
Tucson, AZ 85701
matt@arizonaimmigration.net

Vasudha Talla, CA SBN 316219
Julia Mass, CA SBN 189649
American Civil Liberties Union
Foundation of Northern California
39 Drumm Street
San Francisco, CA 94111
jmass@aclunc.org
vtalla@aclunc.org

Michael Kaufman, CA SBN 254575
American Civil Liberties Union
Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
mkaufman@aclusocal.org

Bardis Vakili, CA SBN 247783
American Civil Liberties Union Foundation
of San Diego and Imperial Counties
P.O. Box 87131
San Diego, CA 92138-7131
bvakili@aclusandiego.org

ATTORNEYS FOR PLAINTIFFS

*/s/ Cara E. Alsterberg*
CARA E. ALSTERBERG
Trial Attorney
United States Department of Justice

ATTORNEY FOR DEFENDANTS

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION         24 / 24
3:18-CV-1869-JSC