Marc Van Der Hout, CA SBN 80778
Judah Lakin, CA SBN 307740
Amalia Wille, CA SBN 293342
Van Der Hout, Brigagliano & Nightingale LLP
180 Sutter Street, Suite 500
San Francisco, CA 94104
Tel: (415) 981-3000
Fax: (415) 981-3003
ndca@vblaw.com

Alison Pennington, CA SBN 231861
Lisa Knox, CA SBN 279406
Julia Rabinovich, CA SBN 290730
Jesse Newmark, CA SBN 247488
Centro Legal de la Raza
3400 E 12th Street
Oakland, CA 94601
Tel: (510) 679-1608
Fax: (510) 427-9164
apennington@centrolegal.org

*Attorneys for Plaintiffs-Petitioners and the Proposed Class*
*(Additional Counsel listed on following page)*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Esteban ALEMAN GONZALEZ,<br>Jose Eduardo GUTIERREZ SANCHEZ,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>Jefferson B. SESSIONS, Attorney General, Department of Justice; Kirstjen NIELSEN, Secretary, Department of Homeland Security; James McHENRY, Director, Executive Office for Immigration Review, Department of Justice; MaryBeth KELLER, Chief Immigration Judge, Executive Office for Immigration Review, Department of Justice; Erik BONNER, Acting Field Office Director for the San Francisco Field Office of Immigrations and Customs Enforcement, Department of Homeland Security; David C. LIVINGSTON, Sheriff, Contra Costa County; Kristi BUTTERFIELD, Facility Commander, West County Detention Facility; Contra Costa County<br><br>Defendants. | Case No. 3:18-CV-01869-JSC<br><br>REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION<br><br><br>Date: May 31, 2018<br>Time: 9:00 a.m.<br>Place: 15th Floor, Courtroom F<br>Before: Hon. Jacqueline Scott Corley |

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
No. 3:18-CV-01869-JSC

Matthew H. Green, AZ SBN 020827*
Law Offices of Matthew H. Green
130 West Cushing Street
Tucson, AZ 85701
Tel: (520) 882-8852
Fax: (520) 882-8843
matt@arizonaimmigration.net

Vasudha Talla, CA SBN 316219
Julia Mass, CA SBN 189649
American Civil Liberties Union
Foundation of Northern California
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437
jmass@aclunc.org
vtalla@aclunc.org

Michael Kaufman, CA SBN 254575
American Civil Liberties Union
Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
Tel: (213) 977-5232
Fax: (213) 977-5297
mkaufman@aclusocal.org

Bardis Vakili, CA SBN 247783
American Civil Liberties Union Foundation
of San Diego and Imperial Counties
P.O. Box 87131
San Diego, CA 92138-7131
Tel: (619) 232-2121
Fax: (619) 232-0036
bvakili@aclusandiego.org

*Attorneys for Plaintiffs-Petitioners and the Proposed Class*

* admitted *pro hac vice*

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.... 1

      A.      *Diouf II* is Binding on this Court, and Therefore Plaintiffs are Likely to Succeed on Their Claim that the Statute Mandates Bond Hearings. *Diouf II* Remains Good Law Following *Jennings*, as Every Court to Have Considered the Issue has Held. ........... 1

      B.      Plaintiffs are Likely to Succeed on Their Claim that They are Entitled to Bond Hearings as a Constitutional Matter ............................................................................ 4

      C.      Plaintiffs are Entitled to Bond Hearings at Which the Government Bears the Burden of Establishing Danger to the Community or Flight Risk .......................................... 8

III.    DEFENDANTS DO NOT CONTEST THAT PLAINTIFFS HAVE MET THE OTHER *WINTER* FACTORS, SO A PRELIMINARY INJUNCTION SHOULD ISSUE ......................... 8

IV.     CONCLUSION ............................................................................................................... 9

1

## Cases

2

*Addington v. Texas*,
  441 U.S. 418 (1979) ............................................................................................. 8

3

*Banos v. Asher*,
  2018 WL 1617706 (W.D. Wash. Apr. 4, 2018) .................................................... 2

4

*Borjas-Calix v. Sessions*,
  No. CV-16-00685-TUC-DCB, 2018 WL 1428154 (D. Ariz. Mar. 22, 2018) ......... 2

5

*Casas-Castrillon v. DHS*,
  535 F.3d 942 (9th Cir. 2008) ................................................................................ 4

6

*Cooper v. Oklahoma*,
  517 U.S. 348 (1996) ............................................................................................. 8

7

*Diouf v. Napolitano* ("*Diouf II*"),
  634 F.3d 1081 (9th Cir. 2011) ..................................................................... *passim*

8

*Diop v. v. ICE/Homeland Sec.*,
  656 F.32 221, 233 (3d Cir. 2011) ......................................................................... 7

9

*Foucha v. Louisiana*,
  504 U.S. 71 (1992) ............................................................................................... 8

10

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ................................................................................ 1, 2, 3, 4

11

*Kansas v. Hendricks*,
  521 U.S. 346 (1997) ............................................................................................. 8

12

*Lair v. Bullock*,
  697 F.3d 1200 (9th Cir. 2012) .............................................................................. 3

13

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ............................................................................................. 6

14

*Mercado-Guillen v. Nielsen*,
  2018 WL 1876916 (N.D. Cal. Apr. 19, 2018) ............................................... 3, 5, 7

15

*Prieto-Romero*,
  534 F.3d ........................................................................................................... 5, 6

16

*Ramos v. Sessions*,
  293 F. Supp. 3d 1021 (N.D. Cal. 2018) ............................................................... 2

17

*Rodriguez v. Robbins*  ("*Rodriguez III*"),
  804 F.3d 1060 (9th Cir. 2015) .............................................................................. 4

18

*Santosky v. Kramer*,
  455 U.S. 745 (1982) ............................................................................................. 8

19

*Sied v. Nielsen*,
  2018 WL 1876907 (N.D. Cal. Apr. 19, 2018) ............................................... 3, 5, 7

20

*Singh v. Holder*,
  638 F.3d 1196 (9th Cir. 2011) .............................................................................. 8

21

*Small v. Avanti Health Sys., LLC*,
  661 F.3d 1180 (9th Cir. 2011) .............................................................................. 8

22

*Tijani v. Willis*,
  430 F.3d 1241 (9th Cir. 2005) .............................................................................. 7

23

*Trinidad v. Sessions*,
  No. 3:17-CV-06877-JD, 2018 WL 2010618 (N.D. Cal. Apr. 30, 2018) ........... 4, 5, 7

24

25

26

27

28

*U.S. v. Robertson*,
  875 F.3d 1281 (9th Cir. 2017) ................................................................................. 3

*United States v. Salerno*,
  481 U.S. 739 (1992) ................................................................................................. 8

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ..................................................................................................... 8

*Zadvydas*,
  533 U.S. .................................................................................................................... 5

## **Statutes**

8 U.S.C. § 1225(b) ................................................................................................ 2,3,4

8 U.S.C. § 1226(a), (c) ......................................................................................... 2,3,4

8 U.S.C. § 1231(a)(6) ........................................................................................... *passim*

## I.   INTRODUCTION

Plaintiffs-Petitioners Esteban Aleman Gonzalez ("Mr. Aleman Gonzalez") and Jose Eduardo Gutierrez Sanchez ("Mr. Gutierrez Sanchez") along with all putative class members (collectively, "Plaintiffs") are being detained in clear violation of the law. Neither the Immigration and Nationality Act nor the Constitution authorizes Plaintiffs' prolonged detention without a bond hearing before an Immigration Judge ("IJ"). To the contrary, both mandate that Plaintiffs receive a bond hearing before an IJ after 180 days in detention, at which point the government must justify their continued detention on danger or flight risk grounds by clear and convincing evidence. *See Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081 (9th Cir. 2011).

Nonetheless, Defendants continue to detain Plaintiffs based on a blatant misreading of the law. In their opposition to Plaintiffs' motion for a preliminary injunction, Defendants offer little in the way of any substantive defense of their actions. They misread the effect of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) which, contrary to the Defendants' arguments, strengthens *Diouf II*'s interpretation of 8 U.S.C. § 1231(a)(6) and therefore Plaintiffs' statutory claims. With respect to Plaintiffs' constitutional claim, Defendants fundamentally misunderstand the governing legal standard by conflating Plaintiffs' claim for a bond hearing in cases of prolonged detention with *Zadvydas*' prohibition on indefinite detention. Because Defendants' arguments are meritless, this court should grant Plaintiffs' motion for a preliminary injunction.

## II.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

### A.   *Diouf II* is Binding on this Court, and Therefore Plaintiffs are Likely to Succeed on Their Claim that the Statute Mandates Bond Hearings. *Diouf II* Remains Good Law Following *Jennings*, as Every Court to Have Considered the Issue has Held.

Defendants advance a single argument as to why Plaintiffs are not entitled to bond hearings as a statutory matter: in their view, the Supreme Court's decision in *Jennings* overruled *Diouf II*'s holding that individuals detained under § 1231(a)(6) for six months are entitled to a bond hearing before an IJ. *See* Def's Opp., ECF No. 27, at 3-7. In other words, Defendants concede that if *Diouf II* is still good law, Plaintiffs are entitled to the bond hearings they seek as a statutory matter. Defendants' arguments that *Jennings* overruled *Diouf II* are unavailing, and thus

1  this court should conclude that Plaintiffs are likely to succeed on the merits of their claim that

2  § 1231(a)(6) must be interpreted as requiring bond hearings.

3  Defendants urge this court to "reject *Diouf* [*II*] as having been effectively overruled"

4  because, as the government argues, it is "clearly irreconcilable" with *Jennings*. Def's Opp., ECF

5  No. 27, at 5 (internal quotation marks and citations omitted). This is incorrect. As six district

6  courts have now unanimously held, *Jennings* did <u>not</u> overrule *Diouf II*.

7  Contrary to the Government's arguments, *Jennings* actually supports *Diouf II*'s

8  interpretation of § 1231(a)(6). *See Jennings*, 138 U.S. at 843-44, 846-47, 850. In ordering that

9  bond hearings be provided to a class of individuals within the Western District of Washington

10  who are in withholding-only proceedings and subject to prolonged detention, the district court in

11  *Banos v. Asher* succinctly explained

12          In *Jennings*, the Supreme Court reversed the Ninth Circuit's
13          holding, pursuant to the canon of constitutional avoidance,
        regarding §§ 1225(b)(1), 1225(b)(2), and 1226(c). In so concluding,
14          *Jennings* explicitly contrasted §§ 1225 and 1226—the statutes at
        issue in that case—with § 1231(a)(6)—the statute at issue in *Diouf*
15          *II*. *See* 138 S. Ct. at 843-44. For instance, the Supreme Court
        recognized that §§ 1225 and 1226 utilize the mandatory language
16          "shall," whereas § 1231(a)(6) utilizes the discretionary language
        "may"; the "may" language in § 1231(a)(6) suggests ambiguity that
17          leaves space for constitutional avoidance. *Jennings*, 138 S. Ct. at
        843.

18          Thus, *Jennings* concerns statutes—§§ 1225 and 1226—that were
19          not at issue in *Diouf II* and are not at issue here. *See Jennings*, 138
        S.Ct. at 843; *Diouf II*, 634 F.3d at 1086. In fact, *Jennings* expressly
20          distinguished § 1231(a)(6), the statute at issue here. *See Jennings*,
        138 S.Ct. at 843-44.

21  No. C16-1454JLR, 2018 WL 1617706, at *1–2 (W.D. Wash. Apr. 4, 2018). The court in *Banos*,

22  therefore, concluded "that *Diouf II* remains binding law." *Id. Accord Ramos v. Sessions*, 293 F.

23  Supp. 3d 1021, 1027 (N.D. Cal. 2018) (holding that after *Jennings*, "*Diouf* [*II*] remains good law

24  and is binding on this Court."); *Borjas-Calix v. Sessions*, No. CV-16-00685-TUC-DCB, 2018

25  WL 1428154, at *6 (D. Ariz. Mar. 22, 2018) (explaining that "Plaintiff was detained

26  under § 1231(a)(6) not § 1225, et seq. *Jennings* was specifically directed to § 1225, et

27

28

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION                2
No. 3:18-CV-01869-JSC

seq. *Diouf* remains good law and is binding on this Court"); *Higareda v. Sessions*, No. CV-18-00491-PHX-SPL (DKD), Doc. 20 (D. Ariz. Apr. 5, 2008).

Since Plaintiffs filed their motion for a preliminary injunction, two additional district courts have squarely held that *Diouf II* remains good law after *Jennings*. In *Sied v. Nielsen*, the court affirmed that "*Jennings*' holding regarding §§ 1225(b), 1226(a), and 1226(c) does not alter or overrule *Diouf*'s holding that the government must provide bond hearings to aliens detained under [§] 1231(a)(6)." No. 17-CV-06785-LB, 2018 WL 1876907, at *5 (N.D. Cal. Apr. 19, 2018). Likewise, in *Mercado-Guillen v. Nielsen*, the court emphasized that "[t]he *Jennings* Court specifically noted the difference between the language in [§] 1231(a)(6) and the language in [§§] 1225(b) and 1226(c)," and therefore left *Diouf II* in place. No. 18-CV-00727-HSG, 2018 WL 1876916, at *3 (N.D. Cal. Apr. 19, 2018). Plaintiffs are aware of no court that has agreed with the government's assertion that *Jennings* abrogated *Diouf II*. This court should follow the sound reasoning of the six other district courts, as well as the arguments presented by Plaintiffs in their motion for a preliminary injunction, that *Jennings* not only does not overrule *Diouf II*, but rather reinforces its holding.

Neither of Defendants' arguments as to why *Diouf II* is no longer controlling meet the extremely high burden of demonstrating that *Diouf II* is "clearly irreconcilable" with *Jennings*. *See U.S. v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017); *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012). Defendants' primary argument is that because *Jennings* held that §§ 1225(b) and 1226(c) cannot be read to authorize bond hearings, than neither does § 1231(a)(6). Def's Opp., ECF No. 27, at 5. To demonstrate this, the government attempts to show similarities between the text of those statutes, and the statute at issue here, § 1231(a)(6). *Id.* But the government's arguments are unavailing in light of the Supreme Court's analysis in *Jennings* that the language of § 1231(a)(6) allows for the application of the canon of constitutional avoidance while the language of §§ 1225(b) and 1226 does not. The Court found that three different features—the lack of mention of a specific period of time, the use of the word "may," and the lack of a release provision—all permit a construction of § 1231(a)(6) that imposes a six-month time limitation. *See Jennings*, 138 S. Ct. at 843-44 (noting the "many ways in which" § 1231(a)(6) "differs

materially" from §§ 1225(b) and 1226(c)); *see also* Mot'n for Preliminary Injunction, ECF No. 22, at 12-13, 15.

Second, Defendants argue that *Diouf II* is "clearly irreconcilable" with *Jennings* because *Diouf II* "extended the procedural protections established" in *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008) ("*Casas*"), which the government contends was abrogated by *Jennings*. Def's Opp., ECF No. 27, at 6 (quoting *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) ("*Rodriguez III*")).  Here again, the Government misreads the governing case law. *Diouf II*'s statement that it "extended" the procedural protections from *Casas* is descriptive—that is, the Ninth Circuit ordered the same relief for Mr. Diouf as it did for Mr. Casas—and is not affected by *Jennings*' legal analysis. As Plaintiffs have previously explained, *Diouf II* involves the interpretation of § 1231(a)(6). *Casas*, on the other hand, involves the interpretation of §§ 1226(c) and 1226(a). As a result, whether *Casas* is overruled with respect to its interpretation of those statutes,[1] is simply not relevant to the issue before this court. *Diouf II* remains good law, regardless of *Jennings*' impact on *Casas*.

*   *   *

Once this court rejects Defendants' flawed argument that *Diouf II* is no longer good law, there is no question that the statute, as interpreted by binding case law, requires Defendants to provide Plaintiffs with bond hearings. Because *Diouf II*'s "holding applies foursquare" to Plaintiffs, "there is no doubt [they are] entitled to a bond hearing." *Trinidad v. Sessions*, No. 3:17-CV-06877-JD, 2018 WL 2010618, at *2 (N.D. Cal. Apr. 30, 2018).

### B.  Plaintiffs are Likely to Succeed on Their Claim that They are Entitled to Bond Hearings as a Constitutional Matter

Defendants' argument that "Supreme Court authority forecloses Plaintiffs' Due Process Claim" is based on a fundamental misunderstanding of the nature of Plaintiffs' constitutional claim. *See* Def's Opp., ECF No. 27, at 7. Defendants conflate the concepts of *prolonged* and

---

[1] While this court need not reach the issue to conclude that Plaintiffs are entitled to relief under *Diouf II*, Defendants are wrong that *Jennings* overruled *Casas*. *Jennings* supports *Casas*' interpretation that § 1226(c) governs only during administrative proceedings. *See Jennings*, 138 S. Ct. at 844, 846.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION                    4
No. 3:18-CV-01869-JSC

1   *indefinite* detention, and erroneously assert that *Zadvydas*' framework for analyzing when

2   *indefinite* detention may be unconstitutional governs Plaintiffs' claims challenging their

3   *prolonged* detention under § 1231(a)(6) without a bond hearing. Governing law establishes two

4   independent constraints on detention under § 1231(a)(6): *Zadvydas* prohibits *indefinite* detention

5   if an individual's removal is not "reasonably foreseeable" after six months of post-final order

6   detention; and, as recognized in *Diouf II*, due process prohibits *prolonged* detention without a

7   hearing on whether an individual's detention is justified on danger or flight risk grounds. As

8   several district courts have recently held: "*Diouf* and *Zadvydas* do not conflict because they

9   address parallel, co-existing entitlements." *Trinidad*, 2018 WL 2010618, at *2; *see also Sied*,

10  2018 WL 1876907, at *7; *Mercado-Guillen,* 2018 WL 1876916, at *3.

11       Defendants incorrectly assert that *Zadvydas* provides the only framework for asserting a

12  due process challenge to detention under § 1231(a)(6). *See* Def's Opp., ECF No. 27, at 7.

13  *Zadvydas* provides *one* due process constraint on detention under § 1231(a)(6): that the statute

14  "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 682; *id*. at 691 ("[t]he civil

15  confinement here at issue is not limited, but potentially permanent"). However, it does not

16  provide the *only* constraint. The *Zadvydas* framework applies where a noncitizen's legal claims

17  against deportation have been exhausted, and there is no legal impediment to removal other than

18  that the government cannot, practically speaking, remove the individual. By way of example, this

19  occurs when the country of removal will not accept them, or because their removal is barred by

20  our own laws. *Id.* When making a claim under *Zadvydas*, a habeas petitioner is required to show

21  that his "removal is no longer reasonably foreseeable"—that is, that his detention is indefinite,

22  and that he is "stuck in a removable-but-unremovable limbo." *Id*. at 699; *Prieto-Romero*, 534

23  F.3d at 1063. Once a § 1231(a)(6) detainee has made such a showing, he is entitled to the remedy

24  of *outright release*. *Zadvydas*, 533 U.S. at 699-700, 701. *See also Prieto-Romero*, 534 F.3d 1062

25  (a petitioner who makes a *Zadvydas* showing that there is "no significant likelihood of removal

26  in the reasonably foreseeable future" is "entitled to release").

27       Plaintiffs' due process claim is of another ilk. Plaintiffs assert that the Due Process

28  Clause prohibits prolonged detention—i.e., six months or more— under § 1231(a)(6) without a

bond hearing at which a neutral arbiter can make an individualized determination as to the detainee's danger and flight risk. *See* Mot'n for Preliminary Injunction, ECF No. 22, at 16-17. Unlike a *Zadvydas* claimant, Plaintiffs' due process claim to a bond hearing does not require a showing that the detainee is "unremovable" and therefore entitled to release, but only that detention has been prolonged and therefore impermissible without a bond hearing. The purpose of such a bond hearing is to require the government to demonstrate to a neutral adjudicator that its purported reasons for detaining the individual are, in fact, valid. As a result, unlike a *Zadvydas* claimant, the remedy to which they are entitled is not outright release, but rather, a bond hearing. *See Diouf II*, 634 F.3d at 1092.

This critical distinction is on full display in the *Diouf* line of cases, which remain good law in the Ninth Circuit. In *Diouf I*, Mr. Diouf challenged his detention under *Zadvydas* as indefinite, but the Ninth Circuit rejected that argument and held that Mr. Diouf, who had been detained for several years while he pursued various legal claims, was not subject to indefinite detention because he failed to demonstrate that there was "no significant likelihood of removal in the reasonably foreseeable future." 542 F.3d at 1233. Nearly three years later, in *Diouf II*, Mr. Diouf brought a separate challenge to his detention, and this time the Ninth Circuit held that his "prolonged detention" without a bond hearing raised serious due process concerns, even though he was not entitled to release under *Zadvydas*. *See Diouf II*, 634 F.3d at 1091-92; *see also Prieto-Romero*, 534 F.3d at 1063-64 (distinguishing between indefinite detention and prolonged detention for purposes of analyzing the legality of immigration detention).

In order to reach its conclusion that Mr. Diouf was entitled to a bond hearing based on his prolonged detention, the Ninth Circuit conducted a due process analysis to conclude that prolonged detention without a bond hearing raises serious constitutional concerns, underscoring that immigrants' "liberty interest applies not only to indefinite detention, but also to prolonged detention." *Diouf II*, 634 F.3d at 1087 n.8. The court applied the *Mathews v. Eldridge*, 424 U.S. 319 (1976) balancing test to conclude that bond hearings must be provided as a "basic safeguard for noncitizens facing prolonged detention under § 1231(a)(6)." *Diouf II*, 634 F.3d at 1091-92.

The government's straw man argument that Plaintiffs show that their removal is not "reasonably foreseeable" confuses settled precedent. Several district courts have agreed and rejected the government's manufactured conflict between the constitutional framework of *Diouf* and *Zadvydas*. In *Trinidad*, for example, the district court held that the government was "wrong for several reasons" when it insisted that, in order for an individual in prolonged detention to obtain a bond hearing, he must meet *Zadvydas*' "reasonably foreseeable" standard. 2018 WL 2010618, at *2. The court pointed out that the government's argument that *Diouf II* ran afoul of *Zadvydas* was illogical, and that a district court "is in no position to ignore circuit authority issued after a Supreme Court decision," especially since *Diouf II* relies extensively on *Zadvydas*' reasoning. *Id.* Moreover, the court underscored that *Diouf II* and *Zadvydas* constitute two independent and parallel constraints on § 1231(a)(6) detention: while "*Zadvydas* establishes [an individual's] right to seek release from civil detention that has become indefinite . . . [i]n complementary fashion, *Diouf* establishes [an individual's] right to a bond hearing when he or she is subject to *prolonged* detention exceeding 180 days." *Id.* (internal quotation marks omitted) (emphasis in original). *See also Sied*, 2018 WL 1876907, at *7 ("*Diouf* rejected the government's argument that aliens are entitled to relief only if their detention is "indefinite."); *Mercado-Guillen*, 2018 WL 1876916, at *3 (explaining that *Zadvydas* and *Diouf II* involve independent inquiries).

All Plaintiffs are required to show in order to prevail on their due process claim is that they have been detained for six months or more without a bond hearing before an IJ. *See Diouf II*, 634 F.3d at 1091-92; *see also* Mot'n for Preliminary Injunction, ECF No. 22, at 15-17. The government's attempt to frame Plaintiffs' claim as a challenge against indefinite detention, instead of prolonged detention, should be dismissed out of hand. Plaintiffs are likely to succeed on the merits of their claim that the Constitution requires they be provided with bond hearings after six months in detention, because once detention is prolonged, an individual's profound liberty interest requires a hearing before a neutral arbiter. *See Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005); *Diop v. ICE/Homeland Sec.*, 656 F.32 221, 233 (3d Cir. 2011) (finding lengthy detention of noncitizen was "unconstitutionally unreasonable and, therefore, a violation

of the Due Process Clause"); *see also United States v. Salerno*, 481 U.S. 739, 750 (1992) (upholding civil pretrial detention of individuals charged with crimes only upon individualized findings of dangerousness or flight risk at custody hearings); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (requiring individualized findings of mental illness and dangerousness for civil commitment); *Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) (upholding civil commitment of sex offenders after jury trial on lack of volitional control and dangerousness).

### C.  Plaintiffs are Entitled to Bond Hearings at Which the Government Bears the Burden of Establishing Danger to the Community or Flight Risk

As Plaintiffs explained in their motion for a preliminary injunction, and Defendants have not disputed,[2] regardless of whether the statute or the Constitution require a bond hearing, due process requires that the government must justify continued detention by clear and convincing evidence. *See Diouf II*, 634 F.3d at 1090-92; *Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011). Relying on a myriad of constitutional decisions, the Ninth Circuit explained in *Singh*, that "given the substantial liberty at stake," the standard of proof for the government is that it "must prove by clear and convincing evidence that a[] [noncitizen] is a flight risk or danger to the community to justify denial of bond." *Singh*, 638 F.3d at 1203 (citing *Addington v. Texas*, 441 U.S. 418 (1979); *Cooper v. Oklahoma*, 517 U.S. 348 (1996); *Foucha v. Louisiana*, 504 U.S. 71 (1992); *Santosky v. Kramer*, 455 U.S. 745 (1982)).

### III.  DEFENDANTS DO NOT CONTEST THAT PLAINTIFFS HAVE MET THE OTHER *WINTER* FACTORS, SO A PRELIMINARY INJUNCTION SHOULD ISSUE

Defendants do not contest that Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief or that the balance of equities tips in Plaintiffs' favor. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The only other *Winter* factor that Defendants contest is whether an injunction is in the public interest. While Defendants argue that "the public interest favors applying federal law correctly," Def's Opp., ECF No. 27, at 8 (quoting *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011), Plaintiffs are seeking an

---

[2]  As Defendants have not contested Plaintiffs' arguments with respect to this issue, it has waived the opportunity to do so.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION                    8
No. 3:18-CV-01869-JSC

injunction to effectuate that and enjoin the government's illegal actions. Accordingly, this court should grant Plaintiffs' motion for a preliminary injunction.

## IV.   CONCLUSION

For the above reasons, and the reasons set forth in Plaintiffs' preliminary injunction motion, this court should grant Plaintiff's a class-wide preliminary injunction requiring all Immigration Judges within the Ninth Circuit to conduct individualized bond hearings at six months of detention for class members, at which the individual is entitled to be released unless the government establishes, by clear and convincing evidence, that the individual is a flight risk or a danger to the community.

Dated: May 17, 2018                    Respectfully submitted,

By: s/Judah Lakin
Judah Lakin
Amalia Wille
Marc Van Der Hout
VAN DER HOUT, BRIGAGLIANO &
NIGHTINGALE LLP

Alison Pennington
Lisa Knox
Julia Rabinovich
Jesse Newmark
CENTRO LEGAL DE LA RAZA

Matthew H. Green
LAW OFFICES OF MATTHEW H. GREEN

Michael Kaufman
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA

Vasudha Talla
Julia Mass
American CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA

Bardis Vakili
AMERICAN CIVIL LIBERTIES UNION
SAN DIEGO AND IMPERIAL COUNTIES

*Attorneys for Plaintiffs-Petitioners and the*
*Proposed Class*

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION                    9
No. 3:18-CV-01869-JSC