United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN ALEMAN GONZALEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JEFFERSON B. SESSIONS, et al., <br><br> Defendants. | Case No. 18-cv-01869-JSC <br><br> **ORDER RE PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION AND PRELIMINARY INJUNCTION** <br><br> Re: Dkt. Nos. 21, 22 |

In *Diouf v. Napolitano*, 634 F.3d 1081, 1082 (9th Cir. 2011) ("*Diouf II*"), the Ninth Circuit held that an individual facing prolonged detention under 8 U.S.C. section 1231(a)(6) "is entitled to release on bond unless the government establishes that he is a flight risk or a danger to the community." The government has detained plaintiffs Esteban Aleman Gonzalez and Jose Eduardo Gutierrez Sanchez pursuant to 8 U.S.C. § 1231(a)(6) for more than six months without an individualized bond hearing. Accordingly, they filed this suit on behalf of themselves and a putative class seeking declaratory and injunctive relief. Now pending before the Court are Plaintiffs' motions for class certification and preliminary injunction. (Dkt. Nos. 21 and 22.)[1] Plaintiffs seek certification of a class of essentially all present and future section 1231(a)(6) detainees in the Ninth Circuit and a preliminary injunction enjoining the government from detaining plaintiffs and the class for more than 180 days without providing them with a bond hearing before an immigration judge at which the government has the burden of justifying detention. The dispositive issue is whether *Diouf II* is clearly irreconcilable with the United States

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1 Supreme Court's recent decision in *Jennings*. As the Court concludes that it is not, it certifies the
2 class and enjoins the government from failing to provide a bond hearing to 1231(a)(6) detainees
3 after 180 days in detention.

## IMMIGRATION FRAMEWORK

The Immigration and Nationality Act ("INA") authorizes the detention of noncitizens awaiting removal from the United States. Different sections of the INA govern different phases of detention. It authorizes "the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)" and "aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 138 S. Ct. 830, 838 (2018).

If the proceedings result in an order of removal, the Attorney General is required to remove the noncitizen from the United States within a period of 90 days, known as the "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). Detention during the 90 day removal period is mandatory. *See id*. § 1231(a)(2). If the noncitizen is not removed during the removal period, continued detention is authorized beyond the removal period in the discretion of the Attorney General. *Id*. § 1231(a)(6). Section 1231(a)(6) encompasses noncitizens "whose collateral challenge to his removal order (a motion to reopen) is pending in the court of appeals, as well as to aliens who have exhausted all direct and collateral review of their removal orders but who, for one reason or another, have not yet been removed from the United States." *Diouf II*, 634 F.3d at 1085.

"An alien who expresses a fear of returning to the country designated in the reinstated order of removal ... must be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture." *Andrade v. Sessions*, 828 F.3d 826, 832 (9th Cir. 2016) (quoting 8 C.F.R. § 241.8(e)). "If the officer decides that the alien does have a reasonable fear of persecution or torture, the case is referred to an immigration judge ("IJ") for full consideration of the request for withholding of removal only." *Ayala v. Sessions*, 855 F.3d 1012, 1015 (9th Cir. 2017); 8 C.F.R. § 208.31(e)). "If, however, the asylum officer decides that the alien has not established a reasonable fear of persecution or torture, then the alien is entitled to appeal that determination to an IJ." *Id*. at 1015-1016; 8 C.F.R. § 208.31(g).

"On appeal, if the IJ affirms the officer's negative fear determination, the case is returned to the Service for removal, and the alien is not entitled to appeal further to the BIA." *Id*. at 1016. The noncitizen may, however, petition the Ninth Circuit for review of a negative reasonable fear determination. *Id*.

**FACTUAL BACKGROUND**

**A. Esteban Aleman Gonzalez**

Plaintiff Esteban Aleman Gonzalez is a citizen of Mexico who applied for admission to the United States in April 2000. (Dkt. No. 27-1.) During this process Mr. Gonzalez presented an entry document that belonged to another person. (*Id*.) An immigration officer found that Mr. Gonzalez was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) because he sought to procure admission "by fraud or by willfully misrepresenting a material fact." (*Id*.) Mr. Gonzalez was removed under an expedited removal order. (*Id*.) Sometime thereafter, Mr. Gonzalez unlawfully reentered the United States. (Dkt. No. 27-2.) In August 2017, immigration officers arrested him and determined that he was "removable as an alien who ha[d] illegally reentered the United States after having been previously removed." (*Id*.) (citing 8 U.S.C. § 1231(a)(5)). Mr. Gonzalez did not contest the finding that he was removable and his removal order was reinstated on August 18, 2017. (*Id*.)

While in custody Mr. Gonzalez expressed a fear that he would persecuted or tortured if he was removed him to Mexico. (Dkt. No. 27-3 ¶ 6). An asylum officer interviewed Mr. Gonzalez, determined that he "has a reasonable fear persecution or torture," and then referred him to an immigration judge for "withholding-only" proceedings. (*Id*.) Thereafter, Mr. Gonzalez moved for a bond hearing. (Dkt. No. 27-4). An immigration judge denied the motion for lack of jurisdiction and scheduled a July 9, 2018 hearing on the merits of Mr. Gonzalez's withholding-of-removal claim. (Dkt. Nos. 27-4, 27-5.) On February 26, 2018, an ICE officer reviewed Mr. Gonzalez's custody status and determined that he will remain in ICE custody "[p]ending a ruling on [his withholding-of-removal] claim" or until he demonstrates that his "removal is unlikely." (Dkt. No. 27-6.)

//

### B. Jose Eduardo Gutierrez Sanchez

Plaintiff Jose Eduardo Gutierrez Sanchez is a citizen of Mexico who unlawfully entered the United States in May 2009. (Dkt. No. 27-7.) Shortly thereafter, Mr. Sanchez was arrested and charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (*Id*.) An expedited removal order issued and Mr. Sanchez was removed. (*Id*.) At a later date, Mr. Sanchez unlawfully reentered the United States. (Dkt. No. 27-8.) On September 26, 2017, Mr. Sanchez was arrested and immigration officials determined that he was "removable as an alien who ha[d] illegally reentered the United States after having been previously removed" under 8 U.S.C. § 1231(a)(5). (*Id*.) Mr. Sanchez did not contest he was removable and his May 2009 removal order was reinstated. (*Id*.)

While in custody, Mr. Sanchez also expressed a fear that he would persecuted or tortured if removed to Mexico. (Dkt. No. 27-9 ¶ 6). An asylum officer interviewed him, determined that he reasonably feared persecution or torture, and referred him to an immigration judge for "withholding-only" proceedings. (*Id*.; *see* 8 C.F.R. §§ 208.31(e), 241.8(e).) In withholding-only proceedings, Mr. Sanchez moved for a bond hearing which was denied for lack of jurisdiction. (Dkt. No. 27-10.)

The IJ has scheduled a June 18, 2018 hearing on the merits of Mr. Sanchez's withholding-of-removal claim. (Dkt. No. 27-11.) On December 19, 2017, an ICE officer reviewed Mr. Sanchez's custody status. (Dkt. No. 31-1.) The officer relied on Mr. Sanchez's criminal history, including "arrests for possession of marijuana, obstruct/resist public officer, battery spouse, robbery: second degree," and Mr. Sanchez's "multiple illegal entries" to conclude that Mr. Sanchez "would be a danger and a flight risk if released." (*Id*.)

### THE CLASS CERTIFICATION MOTION

Plaintiffs ask the Court to certify as a class "all individuals who are detained pursuant to 8 U.S.C. § 1231(a)(6) in the Ninth Circuit by, or pursuant to the authority of, the U.S. Immigration and Customs Enforcement ("ICE"), and who have reached or will reach six months in detention, and have been or will be denied a prolonged detention bond hearing before an Immigration Judge

("'IJ'").<sup>2</sup>

## I. Legal Standard

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). To succeed on their motion for class certification, Plaintiffs must satisfy the threshold requirements of Federal Rule of Civil Procedure 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). Rule 23(a) provides that a case is appropriate for certification as a class action if:

    (1) the class is so numerous that joinder of all members is impracticable;

    (2) there are questions of law or fact common to the class;

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "[A] party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)," but "also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast v. Behrend*, 569 U.S. 27, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (internal quotation marks, citations, and emphasis omitted).

Plaintiffs contends that the putative class satisfies Rule 23(b)(2), which requires that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." For certification under Rule 23(b)(2), Plaintiffs must show that "declaratory relief is available to the class as a whole" and that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

---

<sup>2</sup> Both the Central District of California and the Western District of Washington have certified classes of detainees under section 1231(a)(6). Plaintiffs' proposed class definition excludes those individuals that fall within those certified classes. (Dkt. No. 21 at 10 n.3.)

5

Plaintiffs seek certification of a 23(b)(2) class as to their statutory and due process claims. As they note, however, in *Jennings* the Supreme Court remanded the case to the Ninth Circuit to address whether Rule 23 authorized class certification of the due process claims. 138 S.Ct. at 832. The Ninth Circuit has recently asked the parties in that case for supplemental briefing on the question. In light of this uncertainty, and given that addressing the due process claim is not necessary to resolution of Plaintiffs' motions, the Court denies without prejudice Plaintiffs' motion to certify their due process claim. Instead, the Court will analyze the motion solely as to the statutory claim.

**II. Analysis**

**A. Plaintiffs Have Satisfied Rule 23(a)**

The Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(A).

i. <u>Numerosity</u>

A putative class satisfies the numerosity requirement "if the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticability is not impossibility, and instead refers only to the "difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). "While there is no fixed number that satisfies the numerosity requirement, as a general matter, as class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 526 (N.D. Cal. Nov. 27, 2012).

Plaintiffs estimate that the class currently contains at least 43 proposed members, 18 in California and 25 in Arizona, but likely many more. (Dkt. No. 21-1 at 10 ¶¶ 6-9, 18 ¶ 5, 24 ¶¶ 5-6,

29 ¶ 6, 35 ¶¶ 6,7.)[3] These numbers make it impractical to bring all class members before the Court on an individual basis. Further, Plaintiffs estimate this number will grow each day as the government places additional individuals in custody who will later reach six months of detention under § 1231(a)(6). Accordingly, Plaintiffs have established that the class is sufficiently numerous.

        ii.        Commonality

"[C]ommonality requires that the class members' claims depend on a common contention such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza*, 666 F.3d at 588-89 (quoting *Dukes*, 131 S.Ct. at 2551). "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted). To that end, the commonality requirement can be satisfied "by even a single question." *Trahan v. U.S. Bank Nat'l Ass'n*, No. C 09-03111 JSW, 2015 WL 74139, at *5 (N.D. Cal. Jan. 6, 2015). It is not necessary that "[a]ll questions of fact and law ... be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The Ninth Circuit has found "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*. "[T]he commonality requirements asks us to look only for some shared legal issue or a common core of facts." *Id*. Ultimately, commonality "requires the plaintiff to demonstrate the class members have suffered the same injury." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quoting *Dukes*, 131 S.Ct. at 2551).

Plaintiffs satisfy the commonality requirement because they share a common legal question: whether detention beyond six months without an individualized bond hearing violates § 1231(a)(6) as interpreted by the Ninth Circuit in *Diouf*. "This question will be posed by the detention of every member of the class and their entitlement to a bond hearing will largely be

---

[3] Plaintiffs represent this number is at least 60, not 43, however after a review of Plaintiffs' declarations the Court counts only 43 individuals that are represented by Plaintiffs' counsel or are being detained under section 1231(a)(6) upon Plaintiffs' counsel's belief.

determined by its answer." *See Rodriguez v. Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010) (finding commonality after petitioner raised the common question of whether detention of the putative class members "is authorized by statute, and, in the alternative, that if their detention is authorized it violates the Fifth Amendment's guarantee of due process.")

The Government's arguments to the contrary are unpersuasive. They assert "Plaintiffs' proposed class lacks commonality because the proffered class definition encompasses a broad range of individuals with different factual bases for their claims, including diverse groups of aliens whose legal and factual interests differ considerably from each other and from those of the proposed class representatives." (Dkt. No. 28 at 18: 4-7.) The Government is right that "members of the proposed class do not share every fact in common or completely identical legal issues"; however, "[t]his is not required by Rule 23(a)(1)." *Rodriguez*, 591 F.3d at 1122. Instead, "the commonality requirement asks us to look only for some shared legal issue or a common core of facts" and the proposed members have met that here: there is a shared legal question of whether continued detention after six months without a bond hearing is permissible under § 1231(a)(6). *See id*. If the Court ultimately rules in favor of Plaintiffs the relief will be the same - each class member will be entitled to a bond hearing regardless of individual circumstances. This is sufficient to meet the commonality requirement.

The Government further argues "under *Zadvydas*'s construction of § 1231(a)(6), the detention of named Plaintiffs and their putative class does not raise a serious constitutional problem, let alone violate the Due Process Clause, unless they can show that they are not significantly likely to be removed in the reasonably foreseeable future." *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). The Government contends "this is a detail-specific analysis that necessarily requires a factual assessment of, among other things, the likelihood that individuals will prevail on their requests for relief from removal and, for those in withholding-only proceedings, whether there are alternative countries to which they could be removed." (Dkt. No. 28 at 19:23-20:1.) However, this argument goes to the merits of Plaintiffs' claim, not whether the commonality requirement is met. It is the Government's contention that Plaintiffs and the absent class members have to show they are not likely to be removed in the reasonably foreseeable

8

future. Plaintiffs, on the other hand, assert that under section 1231(a)(6) as interpreted by the Ninth Circuit in *Diouf II*, each Plaintiff and putative class member is entitled to a bond hearing after six months regardless of whether they are likely to be removed in the reasonable foreseeable future. Whether a Plaintiff has or has not been deemed to have a reasonable fear of return, whether there are third-party countries where Plaintiffs can be removed, or whether certain Plaintiffs may be considerably more or less likely to be removed in the reasonably foreseeable future has no bearing on the common statutory question of whether under section 1231(a)(6) Plaintiffs are entitled to a bond hearing.

Finally, the Government emphasizes that Plaintiffs' proposed class includes "not only individuals with reinstated removal orders who are detained pursuant to § 1231(a)(6), but also individuals 'who have been issued administratively final removal orders pursuant to 8 U.S.C. § 1228(b), as well as individuals who are awaiting judicial review of the BIA's denial of a motion to reopen removal proceedings, see 8 U.S.C. § 1229a(c)(7), and who have been issued a judicial stay of removal.'" (Dkt. Nos. 28 at 21:9-13; 1 ¶ 30.) It argues that these Plaintiffs, although detained under the same section as immigrants with reinstated removal orders, "are not similarly situated to individuals in withholding-only proceedings" because they present "substantively different legal claims challenging their final removal orders, are potentially seeking different forms of relief in their removal proceedings beyond the narrow relief available in withholding-only proceedings, and therefore may be considerably more or less likely to be removed in the reasonably foreseeable future." However, whether the immigrant was ordered removed under 8 U.S.C. § 1228(b) after committing an aggravated felony, is seeking review of their motion to reopen removal proceedings under 8 U.S.C. § 1229a(c)(7), or has been issued a judicial stay of removal, all proposed class members are detained under the same statute: § 1231(a)(6). And under this common statute Plaintiffs raise a legal question that applies to all proposed class members regardless of the underlying reason for their removal.

Accordingly, commonality is satisfied.

### iii. Typicality

Rule 23(a)(3) also requires that "the [legal] claims or defenses of the representative parties

9

[be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality refers to the nature of the claim or defense of the class representative and not on facts surrounding the claim or defense." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 510 (N.D. Cal. Mar. 21, 2007) (citing *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon*, 688 F.3d at 1030 (internal quotation marks and citation omitted). The typicality requirement ensures that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Like the commonality requirement, the typicality requirement is "permissive" and requires only that the representative's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Plaintiffs have established typicality. Plaintiffs' claim for a bond hearing "is reasonably co-extensive with the claims of the class" because the class representatives, as well as the class as a whole, have been detained pursuant to section 1231(a)(6) for six months or longer and have not received a bond hearing. *See Rodriguez*, 591 F.3d at 1124. Although Plaintiffs and the proposed class were ordered removed under different statutes and are at different points in the removal process and hence do not raise identical claims, they all, as already discussed, are detained under the same statute, raise the same statutory-based argument, and are "alleged victims of the same practice of prolonged detention while in immigration proceedings." *See id*.

The Government claims that Plaintiffs' proposed class lacks typicality for the same reasons it lacks commonality: that the factual variations in individual cases and Plaintiffs' differences in the likeliness of removal preclude typicality. These arguments fail for the reasons described above.

Accordingly the typicality requirement is also met.

    iv. <u>Adequacy of Representation</u>

Rule 23(a)(4) imposes a requirement related to typicality: that the class representative will

10

"fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the actions vigorously on behalf of the class?" *Evon*, 688 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020); *see also Brown v. Ticor Title Ins.*, 982 F.2d 386, 290 (9th Cir. 1992) (noting that adequacy of representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive") (citations omitted); Fed. R. Civ. P. 23(g)(1)(B) (stating that "class counsel must fairly and adequately represent the interests of the class").

Both the named Plaintiffs and counsel will adequately represent the class. First, Plaintiffs represent that they will "think about the other class members and act on those interests." (Dkt. No. 21-1 at 52 ¶¶ 19-20, 59 ¶ 12, 60 ¶ 13). Second, Plaintiffs' counsel is highly experienced in class action litigation and immigration law. Marc Van Der Hout has four decades of experience litigating immigration class actions. (Dkt. No. 21-1 at 65-69 ¶¶ 3, 8.) His associates, Judah Lakin and Amalia Willie, are also experienced in class action litigation and practice exclusively in the area of immigration. (*Id*. ¶¶ 10-13.) The four attorneys at Centro Legal de la Raza, Alison Pennington, Lisa Knox, Julia Rabinovich and Jesse Newmark, and the four ACLU attorneys, Michael Kaufman, Bardis Vakili, Julia Mass and Vasudha Talla, have experience litigating complex immigration cases. (Dkt. No. 21-1 at 71-77, 81-86.) Finally, Matt Green has several years of experience in deportation defense, including representing immigrants detained under section 1231(a)(6). (*Id*. at 32-38.)

The Government does not dispute the adequacy of counsel. Instead it argues "the named Plaintiffs cannot represent the interests of potential putative class members who have already been denied or granted withholding-only relief." However, whether a detainee has been denied or granted withholding-only relief, or like Plaintiffs, have not yet had their request for relief reviewed, has no bearing on the detainee's right to a bond hearing under section 1231(a)(6) as interpreted by the Ninth Circuit in *Diouf II*. In other words, the granting or denial of withholding-only relief does not mean that the detainee is entitled to a bond hearing, it only means that the

11

detainee's removal process as to a particular country will or will not move forward. *See Padilla-Ramierz v. Bible*, 882 F.3d 826, 836 (9th Cir. 2017) (clarifying that the decision at stake in withholding-only proceedings is not whether the immigrant is to be removed, but the "more limited decision of whether he may be removed" to his country of origin). The detainee can still remain in detention pursuant to § 1231(a)(6) while an alternative country is identified.

The Government also asserts "both named Plaintiffs are detained as they have re-entered the United States illegally" and therefore they "cannot represent the interests of putative class members who do not have reinstated removal orders, but are detained pursuant to § 1231(a)(6)." However, the common legal question does not turn on the nature of Plaintiffs' removal but rather the statute under which Plaintiffs have been detained. Therefore Plaintiffs, who are detained pursuant to § 1231(a)(6), can adequately represent others detained under § 1231(a)(6). The Government's remaining challenges are only re-assertions of their commonality and typicality arguments. For the reasons described above, those arguments fail.

Accordingly, adequacy is met.

### B. Rule 23(b)(2) is Satisfied

If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that Plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). Rule 23(b) sets forth three general types of class actions. *See* Fed. R. Civ. P. 23(b)(1)-(b)(3). Of these types, Plaintiffs seek certification under Rule 23(b)(2). The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. "[U]nlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class." *In re Yahoo Mail Lit.*, 308 F.R.D. 577, 587 (N.D. Cal. May 26, 2015). Rather, "[i]n contrast to Rule 23(b)(3) classes, the focus [in a Rule 23(b)(2) class] is not on the claims of the individual class members, but rather whether [Defendant] has

12

engaged in a 'common policy.'" *Id*. at 599.

The Rule 23(b)(2) requirements are also met. It is the Government's uniform policy that bond hearings are not required under § 1231(a)(6) for those detained for greater than six months. Further the Government "refuses to act on grounds that apply generally to the class" – class members are denied the opportunity to request release on bond by an immigration judge. Plaintiffs seek declaratory and injunctive relief that would benefit all proposed class members: individualized bond hearings after six months of detention.

The Government argues Plaintiffs cannot satisfy Rule 23(b)(2) because 8 U.S.C. § 1252(f)(1) deprives this Court of jurisdiction to grant relief on Plaintiffs' statutory claims on a classwide basis. Section 1252(f)(1) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–1232] other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). Respondents in *Rodriguez* made the same argument to which the Ninth Circuit retorted "Respondents are doubly mistaken." *Rodriguez*, 591 F.3d at 1119. 8 U.S.C. § 1252(f)(1) does not bar either declaratory or injunctive class-wide relief. *Id*. at 1120. "Section 1252(f) prohibits only injunction of the operation of the detention statutes, not injunction of a violation of the statutes." *Id*. (internal quotations omitted). And the text of the Act clearly shows "that Section 1252(f) was not meant to bar classwide declaratory relief." *Id*. at 1119.

As the Rule 23(a) and (b)(2) requirements are met, Plaintiffs' motion for class certification is GRANTED as to their statutory claims. *See Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) ("the primary role of [Rule 23(b)(2)] has always been the certification of civil rights class actions").

**PRELIMINARY INJUNCTION**

Plaintiffs request this Court issue a class wide preliminary injunction "enjoining the government from detaining class members for more than 180 days without affording them a bond hearing" before an IJ. (Dkt. No. 22 at 8:8-11.)

A preliminary injunction is an "extraordinary remedy." *Winter v. Nat. Res. Defense*

13

*Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20. Alternatively, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (internal citation and quotation marks omitted). In this respect, the Ninth Circuit employs a sliding scale approach, wherein "the elements of the preliminary injunction test are balanced so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984) (internal citation omitted).

### A. Likelihood of Success on the Merits

Plaintiffs' likelihood of success on their now-certified statutory claim turns on whether *Diouf II* is still good law in the Ninth Circuit. In *Diouf II*, the Ninth Circuit held that immigrants detained pursuant to section 1231(a)(6) for more than six months are entitled to a bond hearing before an immigration judge. 634 F.3d at 1086, 1091. Thus, under *Diouf II,* Plaintiffs and the class members are entitled to an individual bond hearing before an immigration judge and the likelihood of success prong is satisfied. The Government nonetheless insists that *Diouf II* was overruled by the United States Supreme Court's decision in *Jennings v. Rodriguez,* 138 S.Ct. 830 (2018.)

This Court is required to follow *Diouf II* unless the theory or underlying reasoning of *Jennings* is "clearly irreconcilable" with *Diouf II*. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).

> The "clearly irreconcilable" requirement is "a high standard." So long as the court "can apply our prior circuit precedent without running afoul of the intervening authority" it must do so. "It is not

14

> enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent."

*United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017) (internal quotation marks and citations omitted). To decide whether *Jennings* is clearly irreconcilable with *Diouf II*, several cases must be reviewed.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court applied the doctrine of constitutional avoidance[4] to construe section 1231(a)(6) "to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,'" and that "six months is a presumptively reasonable period." *Jennings*, 138 S.Ct. at 843. After being detained for six months, and if the noncitizen provides reason to believe he will not be removed in the reasonably foreseeable future, "the Government must either rebut that showing or release the alien." *Zadvydas*, 533 U.S. at 701.

Seven years later, in *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008), the Ninth Circuit reviewed 8 U.S.C. section 1226(a). The court held that to construe the statute to allow prolonged detention without adequate procedural protections, that is, bond hearings before an immigration judge, "would raise serious constitutional concerns." *Id.* at 950. Applying the canon of constitutional avoidance, the court therefore held that section 1226(a) "must be construed as *requiring* the Attorney General to provide the alien without such a hearing." *Id.* (emphasis in original). In *Diouf II*, the Ninth Circuit extended the holding of *Casas-Castrillon* to aliens detained under § 1231(a)(6).

> As was the case in *Casas–Castrillon*, prolonged detention under § 1231(a)(6), without adequate procedural protections, would raise "serious constitutional concerns." *Casas–Castrillon*, 535 F.3d at 950. To address those concerns, we apply the canon of constitutional avoidance and construe § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention under that provision. *See id.* at 951. Such aliens are entitled to release on bond unless the government establishes that the alien is a flight risk or will be a danger to the community.

---

[4] "The canon of constitutional avoidance is a 'cardinal principle' of statutory interpretation. [W]hen an Act of Congress raises a serious doubt as to its constitutionality, this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Diouf II*, 634 F.3d 1086 n.7 (internal quotation marks and citations omitted).

*See id.* at 1086. Under *Diouf II*, then, the Government is required to provide Plaintiffs and the class members a bond hearing before an immigration judge.

The Supreme Court decided *Jennings v. Rodriguez* in February of this year. *Jennings* reviewed the Ninth Circuit's decision in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015). According to the Supreme Court, in *Rodriguez v. Robbins* the Ninth Circuit:

> relying heavily on the canon of constitutional avoidance, . . . construed §§ 1225(b) and 1226(c) as imposing an implicit 6–month time limit on an alien's detention under these sections. After that point, the Court of Appeals held, the Government may continue to detain the alien only under the authority of § 1226(a). The Court of Appeals then construed § 1226(a) to mean that an alien must be given a bond hearing every six months and that detention beyond the initial 6–month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified.

*Jennings*, 138 S. Ct. at 839. The Supreme Court then went on to reverse the Ninth Circuit. First, the Court held that the canon of constitutional avoidance—while a valid doctrine—could not be applied to sections 1225(b) and 1226(c) because those statutes required mandatory detention for a certain period rather than the discretionary detention called for by section 1231(a)(6). *Id.* at 842-44, 46-47. Section 1226(a), however, contains the discretionary language "may detain" which the Court held could render the statute ambiguous and thus permit the application of the canon of constitutional avoidance. With respect to section 1226(a), the Supreme Court stated:

> The Court of Appeals ordered the Government to provide procedural protections that go well beyond the initial bond hearing established by existing regulations—namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary. Nothing in § 1226(a)'s text—which says only that the Attorney General "may release" the alien "on ... bond"—even remotely supports the imposition of either of those requirements. Nor does § 1226(a)'s text even hint that the length of detention prior to a bond hearing must specifically be considered in determining whether the alien should be released.

*Jennings*, 138 S. Ct. 830, 847–48.

The Government argues that because in *Jennings* the Supreme Court held that "'[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings;' § 1226(c) 'imposes an affirmative *prohibition* on releasing detained aliens,' except under an express exception; and '[n]othing in § 1226(a)'s text . . . even remotely supports the imposition' of a bond hearing

16

requirement" *Diouf II* is clearly irreconcilable with *Jennings*. (Dkt. No. 27 at 9.) Not so.

First, the Supreme Court held that the canon of constitutional avoidance—which the Ninth Circuit used to interpret section 1225(b)(1) and (2)—could not be applied to those statutes to imply the procedural requirement of a bond hearing because the statutes "mandate detention until a certain point and authorize release prior to that point only under limited circumstances." *Id.* at 844. In doing so, the Court specifically distinguished its earlier decision in *Zadvydas* which applied the canon of constitutional avoidance to section 1231(a)(6)—the statute at issue here—to find certain procedural requirements. *Id.* ("While *Zadvydas* found § 1231(a)(6) to be ambiguous, the same cannot be said of §§ 1225(b)(1) and (b)(2)"); *see also Hurtado-Romero v. Sessions*, 2018 WL 2234500 (N.D. Cal. May 16, 2018) (noting that the factors negating ambiguity, and thus the appropriateness of the application of the canon of constitutional avoidance, are not present in section 1231(a)(6)). Thus, far from being clearly irreconcilable with *Diouf II's* application of the canon of constitutional avoidance to section 1231(a)(6), *Jennings* reaffirms the canon's application to that statute.

Second, *Jennings* does not overrule *Diouf II's* holding that pursuant to the application of the canon of constitutional avoidance section 1231(a)(6) must be construed as requiring an individual bond hearing for prolonged detention. The Government argues that since *Jennings* held that section 1226(a) cannot be construed to require periodic bond hearings every six months at which the government bears the burden of proof by clear and convincing evidence because nothing in the text of the statute hints at those requirements, 138 S.Ct. 847-48, section 1231(a)(6) cannot be interpreted as requiring a bond hearing for prolonged detention. But *Jennings* said nothing about section 1231(a)(6) not being capable of being plausibly construed as requiring a bond hearing for prolonged detention. To the contrary, *Jennings* specifically did not overrule *Zadvydas* and in *Zadvydas* the Supreme Court used the canon of constitutional avoidance to construe section 1231(a)(6) to include procedural requirements not specifically set forth in the statute. Thus, the Government's interpretation of *Jennings* is in tension with *Zadvydas*. *See Hurtado-Romero,* 2018 WL 2234500 at *2. This Court can find *Jennings* clearly irreconcilable with *Diouf II* only by ignoring *Zadvydas*. However, even if "recent Supreme Court jurisprudence

17

has perhaps called into question the continuing viability of [its precedent], [the lower courts] are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court." *Nunez-Reyes v. Holder,* 646 F.3d 684, 692 (9th Cir. 2011).

*Jennings* is in tension with *Diouf II* and perhaps even calls it and *Zadvydas* into doubt. But such circumstances do not permit this federal trial court to not follow *Diouf II*. *See Robertson*, 875 F.3d at 1291. As *Diouf II* is not clearly irreconcilable with *Jennings* it remains good law in this Circuit. Plaintiffs have therefore shown a likelihood of success on the merits of their INA and APA statutory claims that under section 1231(a)(6) the Government must provide Plaintiffs and the class members an individualized bond hearing.

### B. Remaining Injunction Factors

The Government does not address the remaining preliminary injunction factors. Instead, it simply asserts that if the Court considers them, "the key point is that the public interest favors applying federal law correctly." As *Jennings* is not clearly irreconcilable with *Diouf II*, the public interest weighs in favor of the Government providing Plaintiffs and the class member bond hearings as required by *Diouf II*.

The remaining factors, irreparable harm and balance of equities, also weigh in favor of an injunction. Plaintiffs face compounding harm with each additional day they remain in custody without a bond hearing, as required by existing Ninth Circuit authority. *See Villalta v. Sessions*, No. 17-CV-05390-LHK, 2017 WL 4355182, at *3 (N.D. Cal. Oc. 2, 2017). Further, the harm to Plaintiffs in remaining in detention without a bond hearing clearly outweighs any "harm" to the Government in providing bond hearings.

In sum, the four preliminary injunction factors weigh in Plaintiffs' favor.

## CONCLUSION

For the reasons described above, Plaintiffs' motion for class certification of section 1231(a)(6) detainees in the Ninth Circuit is GRANTED as to their statutory claims. Van Der Hout, Brigagliano & Nightingale, LLP, Centro Legal De La Raza, Matthew Green, ACLU-SC, ACLU-NC, and ACLU-SD are appointed as class counsel.

Plaintiffs' motion for a preliminary injunction under the INA and APA is also GRANTED.

The Government is enjoined from detaining Plaintiffs and the class members pursuant to section 1231(a)(6) for more than 180 days without a providing each a bond hearing before an IJ as required by *Diouff II*.

This Order disposes of Docket Nos. 21 and 22.

**IT IS SO ORDERED.**

Dated: June 5, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge