Marc Van Der Hout, CA SBN 80778
Judah Lakin, CA SBN 307740
Amalia Wille, CA SBN 293342
Van Der Hout, Brigagliano & Nightingale LLP
180 Sutter Street, Suite 500
San Francisco, CA 94104
Tel: (415) 981-3000
Fax: (415) 981-3003
ndca@vblaw.com

Alison Pennington, CA SBN 231861
Lisa Knox, CA SBN 279406
Julia Rabinovich, CA SBN 290730
Jesse Newmark, CA SBN 247488
Centro Legal de la Raza
3400 E. 12th Street
Oakland, CA 94601
Tel: (510) 679-1608
Fax: (510) 427-9164
apennington@centrolegal.org

*Attorneys for Plaintiffs-Petitioners and the Proposed Class*
*(Additional Counsel listed on following page)*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Esteban ALEMAN GONZALEZ; Jose Eduardo GUTIERREZ SANCHEZ,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>Jefferson B. SESSIONS, Attorney General, Department of Justice; Kirstjen NIELSEN, Secretary, Department of Homeland Security; James McHENRY, Director, Executive Office for Immigration Review, Department of Justice; MaryBeth KELLER, Chief Immigration Judge, Executive Office for Immigration Review, Department of Justice; Erik BONNER, Acting Field Office Director for the San Francisco Field Office of U.S. Immigration and Customs Enforcement, Department of Homeland Security; David O. LIVINGSTON, Sheriff, Contra Costa County; Kristi BUTTERFIELD, Facility Commander, West County Detention Facility, Contra Costa County,<br><br>Defendants. | Case No. 3:18-CV-01869-JSC<br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR CLARIFICATION OF THE COURT'S JUNE 5, 2018 ORDER<br><br><br>Date: July 26, 2018<br>Time: 9:00 a.m.<br>Place: 15th Floor, Courtroom F<br>Before: Hon. Jacqueline Scott Corley |

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR CLARIFICATION OF THE COURT'S JUNE 5, 2018 ORDER

1 Matthew H. Green, AZ SBN 020827*
Law Offices of Matthew H. Green
2 130 West Cushing Street
Tucson, AZ 85701
3 Tel: (520) 882-8852
Fax: (520) 882-8843
4 matt@arizonaimmigration.net

5 Vasudha Talla, CA SBN 316219
Julia Mass, CA SBN 189649
6 American Civil Liberties Union
Foundation of Northern California
7 39 Drumm Street
San Francisco, CA 94111
8 Tel: (415) 621-2493
Fax: (415) 255-8437
9 jmass@aclunc.org
vtalla@aclunc.org
10
Michael Kaufman, CA SBN 254575
11 American Civil Liberties Union
Foundation of Southern California
12 1313 West 8th Street
Los Angeles, CA 90017
13 Tel: (213) 977-5232
Fax: (213) 977-5297
14 mkaufman@aclusocal.org

15 Bardis Vakili, CA SBN 247783
American Civil Liberties Union Foundation
16 of San Diego and Imperial Counties
P.O. Box 87131
17 San Diego, CA 92138-7131
Tel: (619) 232-2121
18 Fax: (619) 232-0036
bvakili@aclusandiego.org
19
20 *Attorneys for Plaintiffs-Petitioners and the Proposed Class*

21 * admitted *pro hac vice*

22
23
24
25
26
27
28

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR CLARIFICATION OF THE
COURT'S JUNE 5, 2018 ORDER          ii
No. 3:18-CV-01869-JSC

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT ............................................................................................................. 2

    A.  The Court's June 5, 2018 Order Properly Certified a Class, and Ordered Bond Hearings, for all Members of that Class Regardless of the Posture of Their Removal Case. No Clarification is Needed. ................................................................................. 2

       1.  The Three Specific Groups Identified in Plaintiffs' Pleadings Were Illustrative of the Type of Individuals Detained Under § 1231(a)(6); They Were Not Meant to Be Limiting, as the Class Definition Made Clear .............................................................. 2

       2.  The Record Shows that this Court Was Aware of, and Contemplated, that the Certified Class Included Individuals With No Pending Challenges to Removal .......................... 7

    B.  Defendants' Arguments that Compliance with the Order is Cumbersome on the Government is Beside the Point and Raise Questions as to Their Compliance More Generally .................................................................................................................. 9

    C.  The Government's Argument that the Court's Order, "If Interpreted Broadly . . . Would Directly Conflict with Binding Supreme Court Precedent" Is An Attempt to Resurrect An Issue Already Decided by this Court ........................................................ 10

III.    CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Baños v. Asher,*
   No. 2:16-CV-01454, Dkt. #77-1, (W.D. Wash. Jan. 23, 2018) ................................................. 10
*Diouf v. Napolitano,*
   634 F.3d 1081 (9th Cir. 2011) ...................................................................... *passim*
*Edwards v. First Am. Corp.,*
   289 F.R.D. 296 (C.D. Cal. 2012) ...................................................................... 2
*Gonzales v. Arrow Fin. Servs. LLC,*
   489 F.Supp.2d 1140 (S.D. Cal. 2007) .................................................................. 2
*Jennings v. Rodriguez,*
   138 S. Ct. 830 (2018) ................................................................................. 11
*Matter of D-R-,*
   25 I&N Dec. 445 (BIA 2011) .......................................................................... 9
*Matter of Drysdale,*
   20 I&N Dec. 815 (BIA 1994) .......................................................................... 9
*Matter of Guerra,*
   24 I&N Dec. 37 (BIA 2006) ........................................................................... 9
*Rodriguez v. Holder,*
   No. CV 07-3239 TJH RNBX, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013) .................................... 3
*Zadvydas v. Davis,*
   533 U.S. 678 (2001) ............................................................................... 7, 8

**Statutes**

8 U.S.C. § 1228(b) ..................................................................................... 4, 5
8 U.S.C. § 1231(a)(5) .................................................................................. 5, 6
8 U.S.C. § 1231(a)(6) ............................................................................... *passim*
8 U.S.C. § 1231(a)(6), (2) ............................................................................... 1

**Rules**

Federal Rule of Civil Procedure 23 ....................................................................... 2

**Regulations**

8 C.F.R. § 241.4(k)(1)(i) ................................................................................. 8
8 C.F.R. § 241.4(k)(2)(ii) ................................................................................ 9

1

## I.    INTRODUCTION

2      Defendants move this Court to rule that the class it previously certified on June 5, 2018

3 no longer include "those individuals detained under 8 U.S.C. § 1231(a)(6) for more than 180

4 days who are not actively challenging their removal and have no pending application before an

5 immigration court, the Board of Immigration Appeals, or the Ninth Circuit Court of Appeals."

6 Defendants' Mot. for Clarification, Dkt. No. 36, at 2. Defendants have styled their motion as a

7 request for this Court to "clarify" its June 5, 2018 order, but what Defendants in fact seek is a

8 modification of the class definition for a class that has already been properly certified.

9      The class Plaintiffs proposed, and this Court certified, was not limited to individuals with

10 pending challenges to removal. Rather, Plaintiffs' class was defined by (1) the statutory authority

11 governing detention—8 U.S.C. § 1231(a)(6), (2) the length of detention—six months, and (3) the

12 location of detention—the Ninth Circuit. This definition is based on the Ninth Circuit's decision

13 in *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) ("*Diouf II*"), which held that individuals

14 who meet these three requirements are entitled to bond hearings. As this Court recognized in its

15 June 5, 2018 order, those detained under § 1231(a)(6) include noncitizens "*who have exhausted*

16 *all direct and collateral review of their removal orders but who, for one reason or another, have*

17 *not yet been removed from the United States*." Order of June 5, 2018 ("Order"), Dkt. No. 33, at 2

18 (emphasis added) (quoting *Diouf II*, 634 F.3d at 1085)). *Diouf II* grants § 1231(a)(6) detainees

19 the right to a bond hearing regardless of whether they are actively challenging their removal

20 orders. In turn, this Court should not exclude a group of individuals from the certified class who

21 are indisputably detained under § 1231(a)(6), and who clearly fall under *Diouf II*.

22      Plaintiffs acknowledge, as Defendants point out, that Plaintiffs' pleadings set forth three

23 groups of individuals detained under § 1231(a)(6), all of which had active challenges to removal.

24 Plaintiffs intended those three groups to be illustrative, and to provide this Court with

25 background regarding the largest groups of individuals who are in the class. But, those groups

26 were not meant to be limiting; the class has always been defined by the statute of detention,

27 § 1231(a)(6), and, as such, the individuals that Defendants seek to exclude from the class are

28

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR CLARIFICATION OF THE
COURT'S JUNE 5, 2018 ORDER            1
No. 3:18-CV-01869-JSC

properly within the class. Defendants' motion for clarification is nothing more than an attempt to re-litigate issues that this Court has already considered on the merits. Thus, Plaintiffs urge this Court to deny Defendants' motion for clarification, and re-affirm that the class encompasses all § 1231(a)(6) detainees, including those who have no pending challenges to their removal.

## II.   ARGUMENT

### A.   The Court's June 5, 2018 Order Properly Certified a Class, and Ordered Bond Hearings, for all Members of that Class Regardless of the Posture of Their Removal Case. No Clarification is Needed.

This Court certified a class of "all individuals who are detained pursuant to 8 U.S.C. § 1231(a)(6) in the Ninth Circuit by, or pursuant to the authority of, the U.S. Immigration and Customs Enforcement ("ICE"), and who have reached or will reach six months in detention, and have been or will be denied a prolonged detention bond hearing before an Immigration Judge." Order at 4-5. Nonetheless, despite the clear language of "all individuals," Defendants ask this Court to clarify that its Order "specifically applies to [noncitizens] who are detained under 8 U.S.C. § 1231(a)(6) pending a determination as to whether they can remain in the United States because they have live claims," but "does not more broadly enjoin the Government from detaining *any* [noncitizen] under 8 U.S.C. § 1231(a)(6) for more than 180 days without an individualized bond hearing," Def.'s Mot. for Clarification, Dkt. No. 36, at 2. Defendants do not seek clarification, as the Order is clear. Rather, they seek decertification of a certified class, but, in doing so, they fall well short of their "substantial" burden of showing that the requirements of Federal Rule of Civil Procedure 23 have not been met. *See Edwards v. First Am. Corp.*, 289 F.R.D. 296, 300 (C.D. Cal. 2012) (citing *Gonzales v. Arrow Fin. Servs. LLC,* 489 F.Supp.2d 1140, 1153-54 (S.D. Cal. 2007)). In seeking to "clarify" the court's prior Order, Defendants attempt to re-litigate issues that were already decided by this Court.

### 1.   The Three Specific Groups Identified in Plaintiffs' Pleadings Were Illustrative of the Type of Individuals Detained Under § 1231(a)(6);

**They Were Not Meant to Be Limiting, as the Class Definition Made Clear**

Plaintiffs initiated the instant lawsuit to ensure Defendants' compliance with the Ninth Circuit's decision in *Diouf II*. In *Diouf II*, the Ninth Circuit held that individuals detained under § 1231(a)(6) are entitled to bond hearings after their detention becomes prolonged, regardless of the procedural posture of their removal proceedings. *See Diouf II*, 634 F.3d at 1085. Plaintiffs defined their proposed class based on the statutory detention authority—rather than on the posture of an individual's removal case—in order to encompass all individuals entitled to a prolonged detention bond hearing pursuant to *Diouf II*. *See* Dkt. No. 1 at ¶ 53 (complaint); Dkt. No. 21 at 3 (motion for class certification). As the government acknowledged when it sought *en banc* re-hearing in *Diouf II*, the decision "applies with equal force to all [noncitizens] detained under section 1231(a)(6)" including those "who do not challenge their removal orders." Respondents'-Appellees' Petition for En Banc Rehearing at 1, *Diouf II*, No. 09-56771, Dkt. No. 55 (Jun 6, 2011). Defendants now seek to narrow the scope of the certified class primarily on the basis of statements in Plaintiffs' complaint, rather than the class definition Plaintiffs provided. But Plaintiffs' statements identifying groups of individuals detained under § 1231(a)(6) were illustrative, and did not control the class definition.

Plaintiffs' class definition has been clear and consistent:

> All individuals who are detained pursuant to 8 U.S.C. § 1231(a)(6) in the Ninth Circuit[1] by, or pursuant to the authority of, the U.S. Immigration and Customs Enforcement, and who have reached or will reach six months in detention, and have been or will be denied a prolonged detention bond hearing before an Immigration Judge.

*See* Dkt. No. 1 at ¶ 53 (complaint); Dkt. No. 21 at 3 (motion for class certification). The class has never been defined according to the posture of the individual class members' removal cases, or

---

[1] The Central District of California and the Western District of Washington have each certified classes of individuals detained under § 1231(a)(6) in their respective districts. *See Rodriguez v. Holder,* No. CV 07-3239 TJH RNBX, 2013 WL 5229795, at *1 (C.D. Cal. Aug. 6, 2013); *Baños v. Asher*, No. 2:16-CV-01454, Dkt. #77, Magistrate Judge's Report and Recommendation Granting Summary Judgment as to the 1231(a)(6) Class Members (W.D. Wash. Jan. 23, 2018), *report and recommendation adopted*, No. 2:16-CV-01454-JLR, Dkt. #83 (W.D. Wash Apr. 4, 2018). These individuals were excluded from the class in this case.

what type of challenge class members may have pending against their deportation. And this was by design, because what matters under *Diouf II* is the statutory source of detention, as that decision interpreted § 1231(a)(6) under the canon of constitutional avoidance to require prolonged detention bond hearings. The Ninth Circuit in *Diouf II* recognized some § 1231(a)(6) detainees have pending legal challenges to their removal from the United States, while others do not. *See Diouf II*, 634 F.3d at 1085. The procedural posture of an individuals' underlying removal case is immaterial to the statutory right to a bond hearing under *Diouf II*.

In their complaint, Plaintiffs identified three groups of individuals detained under § 1231(a)(6) in order to focus on the largest categories of individuals who were wrongfully being denied bond hearings notwithstanding the Ninth Circuit's precedent in *Diouf II*. As Defendants note, the introduction to Plaintiffs' complaint describes Plaintiffs as individuals pursuing claims that would allow them to remain in the United States, and the legal background section of Plaintiffs' complaint describes three groups of individuals detained under § 1231(a)(6)—those who have been issued a reinstatement order, those who have been issued an administrative removal order under 8 U.S.C. § 1228(b), and those awaiting judicial review of a motion to reopen. Def.'s Mot. for Clarification at 2-3 (citing Dkt. No. 1 at ¶¶ 2, 30).[2] Plaintiffs did not intend to—nor did they—limit their lawsuit to individuals who are actively challenging their removal. Plaintiffs endeavored to provide this Court with background as to the procedural posture of individuals detained under § 1231(a)(6) without unnecessarily delving into hyper-technical differences in procedural postures that were irrelevant to the issues before this Court. To the extent that Plaintiffs' mention of three groups in their complaint caused Defendants to believe that Plaintiffs' class was limited to those groups, it was clarified at oral argument before

---

[2] Defendants describe the first group as comprised of individuals who have been referred for withholding-only proceedings, but Plaintiffs never limited their class to individuals with reinstatement of removals who were referred for withholding-only proceedings. Individuals who are subject to reinstatement may be detained under § 1231(a)(6) even if they were never placed in withholding-only proceedings—for example, those who were given a negative reasonable fear determination, those who have sought judicial review of the reinstatement order, or those who have a motion to reopen pending following the reinstatement.

the Court that the class specifically included those with final orders who had reached six months of detention and whom the DHS was not expected to be able to remove to their countries of removal in the reasonably foreseeable future.[3] *See infra*, at section II. A. 2.

As a result, this Court should reject Defendants' efforts to use descriptive sentences from Plaintiffs' complaint to limit the clear class definition that has always been before this Court. The class certified by this Court includes *all* individuals detained under 8 U.S.C. § 1231(a)(6) and no clarification from the Court is needed.

In order to assist Defendants in identifying class members so they can schedule the required prolonged detention bond hearings, and to provide clarification for this Court should enforcement orders become necessary, Plaintiffs provide the following list of individuals who are detained under § 1231(a)(6), and thus, who are entitled to a bond hearing after 180 days in detention under the Order. Plaintiffs believe this list is comprehensive[4]:

### *Reasonable Fear and Withholding-Only Proceedings, Including Judicial Review*
1. Those in pending "withholding-only" proceedings before the Immigration Judge ("IJ") or the Board of Immigration Appeals ("BIA") following the issuance of a reinstated removal order under 8 U.S.C. § 1231(a)(5) or an administrative removal under 8 U.S.C. § 1228(b)
2. Those with a pending petition for review seeking judicial review of the BIA's denial of withholding of removal or protection under the Convention Against Torture following the "withholding-only" proceedings
3. Those in pending reasonable fear proceedings before the Asylum Office or the IJ
4. Those with a pending petition for review seeking judicial review of an IJ's negative reasonable fear determination

### *Motions to Reopen, Including Judicial Review*

---

[3] Moreover, to the extent Defendants argue they were confused by Plaintiffs' use of these three groups, their contention is belied by the content of their current motion. If Defendants relied exclusively on the three groups that were illustratively offered by Plaintiffs, it is unclear why they are not opposing the inclusion of other individuals who are covered by the Order, but who do not fall within those groups. *See* Comprehensive List at 5-6.

[4] This is to the best of Plaintiffs' knowledge. Immigration law is notoriously complex, and constantly changing, and it is possible that there are other unusual factual scenarios of individuals whose detention falls under § 1231(a)(6) but who are not described in this list. Obviously, if Plaintiffs erred in failing to mention any particular individual who is detained under § 1231(a)(6), this list would not deprive those individuals of the right to a hearing, as what matters is whether the individual is detained under § 1231(a)(6).

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR CLARIFICATION OF THE COURT'S JUNE 5, 2018 ORDER        5
No. 3:18-CV-01869-JSC

5.  Those with a final order of removal pending administrative adjudication of a motion to reopen, whether before the IJ or the BIA, and those petitioning for review of a denied motion to reopen

**Other Cases on Judicial Review**

6.  Those with a pending petition for review seeking judicial review of a reinstated removal order under 8 U.S.C. § 1231(a)(5)

7.  Those petitioning for direct review of a removal order for whom no stay of removal has been issued

**Indefinite Detention (Zadvydas)**

8.  Other individuals with final removal orders who have no pending challenges to removal

Although these variations in the posture of underlying removal proceedings will hopefully be useful to the government as a practical matter in identifying class members, this Court has already decided that these variations are immaterial to class membership and, in turn, immaterial to individuals' entitlement to a bond hearing under the Order. *See, e.g.*, Order at 9, 10, 19.  Indeed, as mentioned *supra*, Defendants already argued that the differences in underlying procedural postures defeated the commonality necessary for class certification. *See* Defendants Opposition to Mot. for Class Certification, Dkt. No. 28, at 11-16. This Court expressly rejected Defendants' arguments, and stated,

> Whether a Plaintiff has or has not been deemed to have a reasonable fear of return, whether there are third-party countries where Plaintiffs can be removed, or whether certain Plaintiffs may be considerably more or less likely to be removed in the reasonably foreseeable future has no bearing on the common statutory question of whether under section 1231(a)(6) Plaintiffs are entitled to a bond hearing.

Order at 9; *see also id.* (rejecting the government's arguments that the class should not be certified due to the "substantively different legal claims challenging their final removal orders" because what matters is that "all proposed class members are detained under the same statute: § 1231(a)(6)"). This Court should reject Defendants' attempt to use a motion for clarification of this Court's Order to improperly try and re-litigate an issue the Court has already decided.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.    The Record Shows that this Court Was Aware of, and Contemplated, that the Certified Class Included Individuals With No Pending Challenges to Removal**

Defendants assert that they "did not understand that the § 1231(a)(6) detention of individuals who fall outside [three particular] groups (*i.e.*, who are not pursuing relief from their final orders of removal) was at issue in this lawsuit." Def.'s Mot. for Clarification, Dkt. No. 36, at 4. But the record shows that the issue was both before and clearly decided by this Court, and Defendants were plainly on notice.

In an effort to show that Plaintiffs meant to limit their class to those with pending claims, Defendants point to language in Plaintiffs' briefing in which Plaintiffs contrasted their claim of entitlement to a bond hearing after *prolonged detention* with the separate claim certain individuals can make under *Zadvydas v. Davis*, 533 U.S. 678 (2001), who are challenging *indefinite detention*. *See* Def.'s Mot. for Clarification, Dkt. No. 36, at 4 (citing Dkt. No. 29, at 5). But, as has been the case throughout this litigation, Defendants continue to conflate *prolonged detention* with *indefinite detention*. As Plaintiffs' explained in their reply brief, *see* Dkt. No. 29 at 5-8, an individual who has been detained for six months after having exhausted all of their legal claims could *both* have a right to a prolonged detention bond hearing under *Diouf II*, and could *separately* have a right to outright release under *Zadvydas* if their removal was not reasonably foreseeable. This is because, as Plaintiffs explained, *Zadvydas* provides one due process constraint to detention under § 1231(a)(6), but not the only one. *Id.* at 5. The discussion regarding the two separate legal claims that certain § 1231(a)(6) detainees may be able to bring—one to a bond hearing, and one to outright release—undermines Defendants' claim that they did not understand that individuals who are not pursuing relief from removal were at issue in the lawsuit.

Moreover, this issue also came up at oral argument, as Defendants continued to argue that the only remedy Plaintiffs should be entitled to is controlled by *Zadvydas*. Tr. of May 31, 2018 Hearing, at 45 ("We think that this is how—the *Zadvydas* analysis is how all of named and putative class members should be seeking their relief."). In response, Plaintiffs explained that:

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR CLARIFICATION OF THE COURT'S JUNE 5, 2018 ORDER                    7
No. 3:18-CV-01869-JSC

> …The vast majority of Plaintiffs cannot seek relief via *Zadvydas* [because t]hat is not their claim . . .They are bringing a prolonged detention claim.
>
> There are people who under *Zadvydas* could do either . . . They have the option. They could file a petition for a writ if [their deportation] is not reasonably foreseeable . . . Otherwise, they could likewise seek the remedy of a bond hearing.

Tr. of May 31, 2018 Hearing, at 45. In other words, individuals who are subjected to indefinite detention—usually because there is no country that can or will accept the individual who was ordered deported—are, per *Zadvydas*, entitled to outright release. *See Zadvydas*, 533 U.S. at 699-701. Nonetheless, those same individuals are subjected to prolonged detention—i.e., detention that exceeds 180 days—and could request a bond hearing to try and effectuate their release. *See Diouf II*, 634 F.3d at 1092.

As a practical matter, individuals who may be entitled to outright release under *Zadvydas* may prefer a bond hearing under *Diouf II*. To gain outright release under *Zadvydas*, individuals often need to bring a habeas petition in federal court, a burdensome and technical process which detainees, especially pro se detainees, may not be able to effectuate. In contrast, the bond hearings required by *Diouf II* must be automatically set by the government, and thus, the detained individual need not take any action. Moreover, a bond hearing provides more robust automatic protections to individuals than they would otherwise receive under the regulations. When an individual is subject to indefinite or prolonged detention following a final removal order, the DHS is required to conduct periodic custody reviews. *See* 8 C.F.R. § 241.4(k)(1)(i). However, this review is done on paper by the DHS—the jailing authority. In *Diouf II*, the Ninth Circuit held that such administrative reviews did not provide adequate procedures to protect the liberty interests of noncitizens subject to prolonged detention under § 1231(a)(6), and that a bond hearing before a neutral adjudicator was required. *See Diouf II*, 634 F.3d at 1089-91. This issue was simply was not before the Supreme Court in *Zadvydas*.

Finally, Defendants contend that IJs are not well equipped to conduct bond hearings where there is an issue of whether there is a significant likelihood that respondents will be

removed in the reasonably foreseeable future. *See* Defendants Mot. for Clarification, Dkt. No. 36, at 4-5, note 2. According to Defendants, IJs "lack the expertise and relevant information" to make such a determination. *Id.* at 5. This argument should be dismissed out of hand: whether an individual is likely to be removed in the foreseeable future because he lacks any claim for relief and the government can effectuate his removal goes directly to flight risk—a determination that falls squarely within the purview of an IJ at a bond hearing. *See, e.g., Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006); *Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994). In addition, as to Defendants' assertion that IJs do not have the expertise and/or knowledge to determine how soon travel documents might be obtained, *See* Defendants Mot. for Clarification, Dkt. No. 36, at 4-5, note 2, the DHS can present such evidence through witnesses. Immigration judges are regularly presented with expert witnesses and both sides would be free to present such witnesses, expert or otherwise, to aid the IJ in his or her determination. *See, e.g.*, *Matter of D-R-*, 25 I&N Dec. 445, 459 (BIA 2011). Defendants are grasping at straws claiming to the contrary.

### B. Defendants' Arguments that Compliance with the Order is Cumbersome on the Government is Beside the Point and Raise Questions as to Their Compliance More Generally

Defendants complain that "interpreting" the Court's June 5, 2018 order "broadly to apply to *all* § 1231(a)(6) detainees" would pose "logistical and practical difficulties" for the government, because this would require a "tedious manual search by every Deportation Officer overseeing the detained docket in the Ninth Circuit." Defendants Mot. for Clarification, Dkt. No. 36, at 4-5, note 2. First, it is unclear why identifying class members without a pending challenge to removal imposes a uniquely heavy burden on Defendants. The regulations mandate that the DHS conduct an internal 180-day custody review for each § 1231(a)(6) detainee. 8 C.F.R. § 241.4(k)(2)(ii); *Diouf II*, 634 F.3d at 1089-91 (discussing custody review procedures). It would appear that Defendants can identify class members in the course of completing that mandatory review. [5]

---

[5] Moreover, government counsel's bald assertions that searching for these class members is uniquely burdensome are not evidence. If Defendants wanted to make this argument to the Court, they could have presented declarations in opposition to Plaintiffs' motions and asked for an

Second, even if it were true that it is uniquely tedious for Defendants to identify class members with no pending challenges to removal, the burden on the government to comply with the law is not a factor this Court considers when deciding whether the government should comply with the law.[6] That the government's internal systems may require a "manual search" to identify the statutory authority for the detainees in its custody is not a reason for this Court to relieve Defendants of their obligation to comply with its Order and with *Diouf II*. Moreover, it is unclear why it is uniquely tedious for the government to identify § 1231(a)(6) detainees awaiting travel documents, as opposed to any other § 1231(a)(6) detainee. If the government can identify the authority pursuant to which it is detaining the people within its custody—which it should be able to do, and which it must be able to do to comply with this Court's order—the individuals it seeks to exclude from the class should be as equally identifiable as any other class member.

To the extent the government is claiming that it cannot identify the statutory authority for individuals within its custody, Plaintiffs are concerned that the government is not in compliance with this Court's order, and is failing to identify class members. In turn, Plaintiffs take this opportunity to respectfully request that this Court, in its ruling on Defendants Motion for Clarification, or in a separate order, order Defendants to submit a report to this Court within 15 days explaining how it is making sure it properly identifies and schedules for hearings all class members. *See Baños v. Asher*, No. 2:16-CV-01454, Dkt. #77-1, (W.D. Wash. Jan. 23, 2018) (ordering that "…the Government shall file a report describing steps taken to identify all current and future class members and to ensure that they receive custody hearings and notice of those hearings.").

## C.  The Government's Argument that the Court's Order, "If Interpreted Broadly . . . Would Directly Conflict with Binding Supreme Court

---

evidentiary hearing. They chose not to do so even when it was clear at argument before this Court that those subject to indefinite detention were also included in the class definition. *See* discussion, *supra*.

[6] To the extent that the government claims that the burden to comply with this Court's order somehow relates to the preliminary injunction balance of hardships, it clearly does not outweigh Plaintiffs' hardship in remaining erroneously, and unlawfully, detained.

**Precedent" Is An Attempt to Resurrect An Issue Already Decided by this Court**

Defendants insist that if *all individuals* detained under § 1231(a)(6) were entitled to bond hearings, this would conflict with *Zadvydas*. *See* Defendants' Mot. for Clarification, Dkt. No. 36, at 5-6. This argument had no merit when it was raised by Defendants in their Opposition to Plaintiffs' Motion for a Preliminary Injunction, *see* Dkt. No. 27, at 7-8, or their Opposition to Plaintiffs Motion for Class Certification, *see* Dkt. No. 28, at 13-18, and it likewise has no merit now. This Court's order explained that *Diouf II* is still good law in the Ninth Circuit. Order at 2. *Zadvydas* was on the books when the Ninth Circuit decided *Diouf II*, and it determined that all individuals detained under § 1231(a)(6) were entitled to prolonged detention bond hearings after 180 days.[7] The Ninth Circuit was well aware that *Zadvydas* imposed one constraint on § 1231(a)(6)—the inability of the government to indefinitely detain an individual—but, nonetheless, it saw no issue in imposing a second constraint—the inability of the government to detain an individual for a prolonged period of time, absent a bond hearing. As has been the case throughout this litigation, Defendants' real issue is with *Diouf II*, but this Court has already decided that *Diouf II* is law of the circuit and that it survives *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). This Court should therefore decline Defendants' request to reconsider that decision.

**III.    CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' Motion for Clarification and instruct Defendants that they must provide bond hearings for *all* individuals detained under § 1231(a)(6).  The Court should additionally order defendants to submit a report to this Court and Plaintiffs in 15 days as to how it is identifying current class members, and will identify future class members, to ensure they receive the required hearings and notice of the same.

Dated: July 5, 2018                                      Respectfully submitted,

---

[7] As discussed *supra*, the government acknowledged as much in its petition for rehearing en banc in *Diouf II*. Nonetheless, undeterred, the government now attempts to use a motion for clarification to take yet another bite at the apple to argue that *Diouf II* was wrongly decided.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: s/Amalia Wille_____
Amalia Wille
Judah Lakin
Marc Van Der Hout
VAN DER HOUT, BRIGAGLIANO &
NIGHTINGALE LLP

Alison Pennington
Lisa Knox
Julia Rabinovich
Jesse Newmark
CENTRO LEGAL DE LA RAZA

Matthew H. Green
LAW OFFICES OF MATTHEW H. GREEN

Michael Kaufman
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA

Vasudha Talla
Julia Mass
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA

Bardis Vakili
AMERICAN CIVIL LIBERTIES UNION
SAN DIEGO AND IMPERIAL COUNTIES

*Attorneys for Plaintiffs-Petitioners and the
Proposed Class*

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR CLARIFICATION OF THE
COURT'S JUNE 5, 2018 ORDER            12
No. 3:18-CV-01869-JSC