REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

PLAINTIFFS' MOTION TO ENFORCE
THE COURT'S MARCH 13, 2019 ORDER AND
AMEND THE COURT'S JUNE 5, 2018 ORDER

Marc Van Der Hout, CA SBN 80778
Johnny Sinodis, CA SBN 290402
Van Der Hout LLP
180 Sutter Street, Suite 500
San Francisco, CA 94104
Tel: (415) 981-3000
Fax: (415) 981-3003
ndca@vblaw.com

Jesse Newmark, CA SBN 247488
Lisa Knox, CA SBN 279406
Centro Legal de la Raza
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863
Fax: (510) 437-9164
jnewmark@centrolegal.org

*Attorneys for Plaintiffs-Petitioners and the Proposed Class*
*(Additional Counsel listed on following page)*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Esteban ALEMAN GONZALEZ; Jose Eduardo GUTIERREZ SANCHEZ,<br><br>                    Plaintiffs-Petitioners,<br><br>          v.<br><br>William P. BARR, Attorney General, Department of Justice; Kevin K. McALEENAN, Acting Secretary, Department of Homeland Security; James McHENRY, Director, Executive Office for Immigration Review, Department of Justice; Christopher A. SANTORO, Acting Chief Immigration Judge, Executive Office for Immigration Review, Department of Justice; David W. JENNINGS, Field Office Director for the San Francisco Field Office of U.S. Immigration and Customs Enforcement, Department of Homeland Security; David O. LIVINGSTON, Sheriff, Contra Costa County; Kristi BUTTERFIELD, Facility Commander, West County Detention Facility, Contra Costa County,<br><br>                    Defendants. | Case No. 3:18-CV-01869-JSC<br><br>PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER AND AMEND THE COURT'S JUNE 5, 2018 ORDER<br><br><br>Date: June 18, 2020<br>Time: 9:00a.m.<br>Place: 15th Floor, Courtroom F<br>Before: Hon. Jacqueline Scott Corley |

Matthew H. Green, AZ SBN 020827
Law Offices of Matthew H. Green
130 West Cushing Street
Tucson, AZ 85701
Tel: (520) 882-8852
Fax: (520) 882-8843
matt@arizonaimmigration.net

Vasudha Talla, CA SBN 316219
American Civil Liberties Union
Foundation of Northern California
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437
jmass@aclunc.org
vtalla@aclunc.org

Michael Kaufman, CA SBN 254575
American Civil Liberties Union
Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
Tel: (213) 977-5232
Fax: (213) 977-5297
mkaufman@aclusocal.org

Bardis Vakili, CA SBN 247783
American Civil Liberties Union Foundation
of San Diego and Imperial Counties
P.O. Box 87131
San Diego, CA 92138-7131
Tel: (619) 232-2121
Fax: (619) 232-0036
bvakili@aclusandiego.org

Judah Lakin (CA SBN #307740)
Amalia Wille (CA SBN #312362)
Lakin & Wille LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Phone: (510) 379-9216
Facsimile: (510) 379-9219

Alison Pennington (CA SBN #231861)
Immigrant Legal Defense
1322 Webster St., Suite 300
Oakland, CA 94612
Phone: (510) 467-0655
Facsimile: (510) 890-3103

*Attorneys for Plaintiffs-Petitioners and the Proposed Class*

CASE NO. 3:18-CV-01869-JSC

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

Plaintiffs respectfully ask the Court to order Defendants' compliance with the Court's March 13, 2019 Order. First, despite the Court's clear instruction, Defendants have refused to provide Plaintiffs with bond decision outcomes, namely whether a bond was granted or denied, for 197 class members. Defendants' refusal to provide such data defies this Court's March 13, 2019 Order as well as the purpose of the June 5, 2018 preliminary injunction ("PI") entitling class members to a bond hearing.

Second, Defendants have failed to properly identify class members and to timely schedule bond hearings. According to the class lists, 95 class members have had delays of 21 days or more between their 180th day in detention and their bond hearing.[1] *See* Exhs. A-H. Defendants have conceded that data and clerical errors prevented the timely identification and scheduling of bond hearings for some of these individuals, including one class member who did not receive a bond hearing prior to their removal. *See* Exhs. K-N. Plaintiffs also previously notified Defendants of at least three instances in which class members did not receive timely bond hearings, in two of which Defendants were unaware until Plaintiffs' notice that those individuals were class members. *See* ECF No. 62-2 at ¶ 5-12. Further, the attorneys of record for other class members have reported a pattern by Defendants of failing to timely identify or schedule bond hearings, including several instances where Defendants did not schedule bond hearings until attorneys moved the immigration courts to do so. *See* Exhs. O-R. This is especially concerning given that the majority of class members are *pro se* and thus are at greater risk of not being properly identified.

To ensure class members receive bond hearings in a timely manner, Plaintiffs move this Court to modify its June 5, 2018, order to require that bond hearings for eligible class members be scheduled to take place within 7 days of class members' 180th day in detention and to require that Defendants notify class members and their counsel of the imminence of a bond hearing by

---

[1] To allow for Defendants' needing time to implement the Court's June 5, 2018 injunction, the 95 class members include only those with a delay of 21 days or more between their 180th day in detention and their bond decision date for bond decisions on or after August 1, 2018. This list, of course, does not include class members whom Defendants have missed completely.

1

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

their 165th day in detention. In addition, Plaintiffs ask this Court to instruct Defendants to provide the following: (1) the reason for any delay of 7 days or more in scheduling bond hearings for any future class members; (2) any and all agency guidance regarding PI implementation or class member identification; (3) other critical information regarding class member identification, as explained below; and (4) government attorney oversight of class member identification from its earliest stages. In light of Defendants' pattern of failing to identify class members and delaying the scheduling of bond hearings, Plaintiffs also renew their request that notice of the PI be posted in all detention facilities in the Ninth Circuit where class members are held in order to further safeguard class members' timely right to a bond hearing. Extensive discussions between the parties to resolve the aforementioned disputes have not been successful and Plaintiffs must now seek redress in this Court to enforce its orders.

## I.     BACKGROUND

Plaintiffs filed their class action complaint on March 27, 2018, challenging their prolonged detention by Defendants. *See* ECF No. 1 at ¶ 2. Plaintiffs are detained pursuant to 8 U.S.C. § 1231(a)(6) and alleged that they are entitled to bond hearings before an immigration judge ("IJ") under *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081 (9th Cir. 2011), and the Due Process Clause of the Constitution, once their length of detention extended beyond 180 days and became prolonged. *Id*. at ¶ 32. The Court granted Plaintiffs' motion for a PI and motion for class certification on June 5, 2018. *See* ECF No. 33. The Ninth Circuit recently affirmed this Court's order. *See Aleman Gonzalez v. Barr*, --- F.3d --- (9th Cir. 2020).

The class certified by this Court consists of "all individuals who are detained pursuant to 8 U.S.C. § 1231(a)(6) in the Ninth Circuit by, or pursuant to the authority of, the U.S. Immigration and Customs Enforcement ("ICE"), and who have reached or will reach six months in detention, and have been or will be denied a prolonged detention bond hearing before an IJ." *Id*. at 4-5. The Court later clarified that the class includes only those individuals detained under Section 1231(a)(6) whose release or removal is not imminent because they have "live claims" before an adjudicative body. *See* ECF No. 42 at 2.

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

1

2       The PI enjoined Defendants "from detaining Plaintiffs and the class members pursuant

3   to section 1231(a)(6) for more than 180 days without [] providing each a bond hearing before an

    IJ as required by *Diouf[] II*." *See* ECF No. 33 at 19.

4       Plaintiffs moved to enforce this Court's June 5, 2018 Order, on November 16, 2018. *See*

5   ECF No. 46. Most relevant here, Plaintiffs asked this Court to require Defendants to post notice

6   of the PI Order in all immigration detention facilities within the Ninth Circuit, to ensure

7   Defendants' full and timely compliance with the Order. *Id.* at 10. This Court denied Plaintiffs'

8   request, reasoning that the request was premature without any allegation that Defendants have

9   failed to schedule bond hearings for class members pursuant to the Order. *See* ECF No. 56 at 7.

10      The Court held a case management conference on January 31, 2019, and subsequently

11  issued a March 13, 2019 Order instructing Defendants to issue reports documenting their

12  compliance with the PI. *See* ECF No. 64. The March 13, 2019 Order requires Defendants to

13  provide periodic reports every 60 days that contain the following information for each class

14  member: (1) Full first and last name; (2) Alien number; (3) Base City name; (4) Hearing

15  location name; (5) Book in date; (6) Date of 180th day in detention; (7) Detention facility; (8)

16  Attorney of record; (9) Attorney firm; (10) Bond decision date; and (11) Bond decision

17  outcome. *Id.* at 1. The Order further states that "[i]f any additional information is needed to

18  explain the lack of bond decision date entry and/or bond decision outcome entry, or otherwise,

19  Defendants will provide a cover email with the report including such additional information."

20  *Id.*

21      The March 13, 2019 Order further required Defendants to provide to this Court and to

22  Plaintiffs a declaration detailing the method by which class members are being identified,

23  including: (1) the criteria with which Defendants analyze the cases of detained individuals to

24  determine whether they fall within the class definition; (2) the process by which Defendants

25  review the cases of detained individuals to determine whether they fall within the class

26  definition; (3) any automated procedures, including software programs, that Defendants utilize

27  in order to identify class members; (4) any manual procedures that Defendants utilize in order to

28

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

identify class members; (5) the process by which Defendants notify individuals that they will be receiving a bond hearing; and (6) the measures taken by Defendants to ensure that no class member is left unidentified and/or fails to receive a bond hearing. ECF No. 64 at 2.

Defendants subsequently filed an April 10, 2019 status report with declarations from agency employees. *See* ECF No. 67. Most relevant to this motion, Defendants asserted that they identify class members based on the definition of the certified class, namely individuals who are subject to final administrative orders of removal, are currently detained within the Ninth Circuit pursuant to Section 1231(a)(6), have been held in immigration detention for at least 180 days, have not received an individualized bond hearing at which the Government has the burden of justifying continued detention, have a "live claim" before the administrative agency or a circuit court of appeals, and whose release or removal is not imminent. *Id.* at 3.

The five declarations filed by ICE Enforcement and Removal Operations ("ERO") officers in each geographic Area of Responsibility ("AOR") provided almost identical information about the method of identifying class members: on a weekly basis, "ERO queries ICE electronic database systems to identify potential class members." *See, e.g.*, ECF 67-1 at ¶ 6. "ERO first queries and produces a detention report through ENFORCE to identify potential class members in the San Francisco AOR." *Id.* After deleting the names of individuals "previously reported," ERO determines the case status of the "remaining potential class members" and searches additional ICE and public databases. *Id.* ERO may also "confer with the ERO custody case officer and ICE OCC to identify potential class members." *Id.* ERO then generates a spreadsheet of potential class members, which it sends to ICE Office of Chief Counsel ("OCC") and/or ICE Office of Principal Legal Advisor ("OPLA") for review, who then generate a final list which is sent to the Executive Office for Immigration Review ("EOIR"). *Id.* at ¶¶ 6-7.

Since this Court's March 13, 2019 Order, Defendants have produced six Class Lists, which Plaintiffs received on May 13, July 11, September 9, and November 8, 2019, and January 7 and March 6, 2020. *See* Exhs. C-H. The Class Lists contain columns for the eleven categories

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

of information mandated by the March 13, 2019 Order. However, the Class Lists fail to provide the "Bond decision outcome," as required by the Court, for 197 class members. Specifically:

1. For 129 class members, the Class Lists contain the entry "No Action" in the "Bond Decision Outcome" column. "No Action" indicates that no action was taken on the bond request on the bond decision date. *See* Exh. T. Defendants have explained in correspondence that "No Action" is most frequently used when a bond hearing is continued by the immigration court, or at the request of the government or the class members. However, such a response fails to provide information on whether the class member ultimately received a bond hearing and whether a bond was granted or denied.

2. For 68 class members, the Class Lists contain the entry "No Change" in the "Bond Decision Outcome" column. This means that at a bond hearing held pursuant to the PI (an "*Aleman Gonzalez* bond hearing"), an IJ made no change to a previous custody determination by ICE or a prior IJ. *See* Exh. T. Because the previous custody determination is not reflected on the Class Lists and is unknowable by class counsel, a "No Change" designation does not show whether bond was granted or denied.

Thus, for these 197 class members, contrary to this Court's Order, the Class Lists do not show whether they were granted or denied bond.

In addition, the Class Lists show 95 class members for whom the "Bond Decision Date" is more than 21 days after the "180th Day" date. *See* Exhs. A-H. This gap indicates that these Class Members received a bond hearing 21 days or more after their 180th day in detention, in apparent violation of the Court's PI. Defendants have only selectively provided Plaintiffs with the reason for the delays for 41 of those class members. *See* Exhs. I-N. For example, Defendants informed Plaintiffs that data or clerical errors prevented 14 class members from receiving timely bond hearings, including one class member who did not receive a bond hearing prior to their removal, and that nine class members did not receive timely bond hearings because they were

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

subject to quarantine. *See* Exhs. K-N. In addition, Defendants informed class counsel that 16 class members' bond hearings were continued to another date. *Id.* Without further information on the remaining 54 class members, however, it is unclear whether there are legitimate explanations for the delays or whether Defendants' processes for timely identifying Class Members are wholly inadequate.

Defendants have already conceded that data errors prevented the timely identification and scheduling of bond hearings for some of these individuals. *See* Exhs. K-N. Indeed, Plaintiffs previously notified Defendants of at least three instances in which class members did not receive timely bond hearings, in two of which Defendants were unaware until Plaintiffs' notice that those individuals were class members who were entitled to a hearing. *See* ECF No. 62-2 at ¶ 5-12. The attorneys of record for other class members have also reported a pattern by Defendants of failing to timely identify or schedule bond hearings, including several instances where Defendants did not schedule bond hearings until attorneys moved the immigration courts to do so. *See* Exhs. O-R. This is especially concerning given that the majority of class members are *pro se* and thus are at greater risk of not being properly identified.

For all of these reasons, Plaintiffs seek this Court's intervention to order Defendants to post notice of the PI in detention centers where potential class members are detained and to provide actual "Bond decision outcome" data, explanations for delays in scheduling bond hearings, and other information to ensure future compliance with the Court's order, as discussed below.

## II.     ARGUMENT

In light of Defendants' persistent pattern of failing to timely identify class members and schedule bond hearings, Plaintiffs ask this Court to order Defendants to provide the following: (1) "Bond decision outcome" data – whether someone was granted or denied bond – for the 197 current class members with "No Action" or "No Change" designations and for all individuals on future Class Lists; (2) the reason for a 7-day or more delay in scheduling bond hearings for class members on all future class lists; (3) any and all agency guidance on PI implementation or class

member identification; (4) other critical information regarding class members' identification, as explained below; and, (5) government attorney oversight of class member identification from its earliest stages. Lastly, Plaintiffs renew their request that this Court order Defendants to post notice of the PI in all Ninth Circuit detention facilities to further safeguard this largely *pro se* class' entitlement to a timely bond hearing.

    A.  <u>This Court Should Order That Defendants Provide the Bond Decision Outcome for Each Class Member, as Required by This Court's Order and the PI.</u>

        Pursuant to this Court's March 13, 2019 Order and the PI itself, Defendants must provide an actual outcome – whether an individual was granted or denied bond – for each class member. *See* ECF No. 64. Defendants have failed to do so.

        The Court's March 13, 2019 Order, which was intended to ensure Defendants' compliance with the PI, required Defendants to provide an "outcome" for each bond hearing, *i.e.*, whether the class member was granted or denied bond. *Id.* at 1 ¶ 2. This Court further envisioned the need for updated reporting by ordering that if "any additional information is needed to explain the lack of bond decision date entry and/or bond decision outcome entry, or otherwise, Defendants will provide a cover email with the report including such additional information." *Id*. Defendants have failed to comply with these requirements of the Court's Order.

        Moreover, the PI requires the provision of a bond hearing to class members under *Diouf II. Diouf II* held that given the "serious constitutional concerns" raised by prolonged detention, individuals are entitled to certain procedural protections, including a bond hearing before an IJ where the burden of proof is on the government to establish that an individual is a flight risk or danger to the community. *Diouf II*, 634 F.3d at 1082. As the Ninth Circuit explained in *Diouf II*, each individual "is *entitled* to release on bond unless the government establishes that he is a flight risk or a danger to the community." *Id.* (emphasis added). The Ninth Circuit has just re-affirmed that in the instant case. *See Aleman Gonzalez v. Barr*, --- F.3d --- (9th Cir. 2020). To

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

comply with *Diouf II* and this Court's PI, affirmed by the Ninth Circuit, Defendants must provide bond hearings applying this burden of proof and standard.

Bond hearing outcome data – whether a bond is granted or denied – are therefore essential to ensuring that class members receive bond hearings with the requisite procedural protections, including the appropriate burden of proof and legal standard. For example, were the bond hearing outcome data to indicate that immigration courts were more frequently denying bonds to class members, in contrast to bond hearings for other immigrant detainees, without any valid explanation, that might show failure to comply with *Diouf II* and this court's PI. In addition, bond hearing outcome data might indicate that class members are not receiving full and fair bond hearings consistent with *Diouf II* if, for example, the bond hearing outcomes demonstrated an unusual number of bond denials.

Despite the Court's clear mandates, the Class Lists fail to provide bond outcome information for over 30% of Class Members. Defendants' Class Lists contain a "Bond decision outcome" field, which to date has generally consisted of four entries: "New Amount," "No Bond," "No Change" and "No Action." *See* Exhs. C-H. The "New Amount" and "No Bond" designations are not at issue, as they reflect that a class member was granted or denied a bond, respectively, and thus provide the bond decision outcome required.

In contrast, the "No Change" and "No Action" designations do not provide a bond hearing outcome. The "No Change" designation indicates only that, at a bond hearing held pursuant to the PI (an "*Aleman Gonzalez* bond hearing"), an IJ made no change to a previous custody determination by ICE or a prior IJ. *See* Exh. T. Because the previous custody determination is not reflected on the Class Lists and is unknowable by class counsel, a "No Change" designation does not show whether the IJ actually granted or denied bond to the class member. The "No Action" designation indicates only that no action was taken on the bond request on the date scheduled for the *Aleman Gonzalez* bond hearing. *See id*. Defendants have explained in correspondence that "No Action" is *most frequently* used when a bond hearing is continued at the request of the immigration court, the government, or the class member. The

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

"No Action" designation therefore provides no information on the bond outcome, or whether a hearing was even held.

Plaintiffs have requested updated information on the 197 class members with "No Action" and "No Change" entries on the Class Lists, to ensure a compliant bond hearing was ultimately held and ascertain its outcome. Defendants have refused to provide that information, asserting that bond hearing outcomes are not required under the PI and that this Court's Order does not require ongoing reporting of updated information after a class member is initially identified in a report. *See* Exh. U. For example, if a class member is designated as "No Action" because their bond hearing was continued to a later date, Defendants assert they are not required to update that class member's Bond Decision Outcome field when their bond hearing ultimately occurs. *Id.*

As discussed above, Defendants' position plainly contradicts this Court's Order, which requires that Defendants provide the "Bond decision outcome" – whether a bond was granted or denied – for each class member in their compliance reports. *See* ECF No. 64. Defendants position also contradicts the purpose of the PI, to ensure that each class member receives a bond hearing that complies with the requirements of *Diouf II*.

Plaintiffs therefore seek an updated report from Defendants with bond decision outcomes for all 197 class members with current "No Change" and "No Action" designations and such bond decision outcomes in all future class lists. In compliance with the Court's orders and the PI, the report must indicate whether each class member received a bond hearing, when such a bond hearing occurred, and the outcome of that bond hearing, *i.e.*, whether a bond was granted or denied.

### B. This Court Should Order That Defendants Explain the Significant Delays Between Class Members' 180th Day in Detention and the Bond Decision Date.

This Court should also order Defendants to provide the reason for delay for individuals with a significant gap between their 180th day in detention and their bond decision date. Plaintiffs have identified 95 individuals who have had delays of 21 days or more in receiving

**PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER AND AMEND THE COURT'S JUNE 5, 2018 ORDER**

bond hearings after their 180th day in detention. Defendants have provided information on the reason for delay for only 41 of those individuals. For example, a data or clerical error prevented 14 class members from being scheduled for timely bond hearings; eight class members were subject to quarantine at the time of their scheduled bond hearing; and 16 class members received continuances to a later hearing date. *See* Exhs. K-N. As to the remaining 54 individuals, Defendants have offered only hypothetical situations to explain the delay; for example, that these 54 individuals may have become Class Members not at their 180th day in detention, but at some other point after their 180th day in detention. Defendants, however, have not identified any class member who in fact fits their hypothetical explanations.

Plaintiffs believe that Defendants are failing to properly identify many class members, resulting in the failure to schedule bond hearings and/or delays in the scheduling of bond hearings. For 14 class members, Defendants concede that a data error prevented them from being identified or scheduled for timely bond hearings. *See* Exhs. K-N. Notably, these data errors were not specific to one immigration court or detention facility, but instead span the system. *Id.*

Class counsel's inquiries to the attorneys of record for other class members yield further disturbing information of a pattern of failing to timely identify or schedule bond hearings. For example, ████████████, A# ████████, detained at the Tacoma Northwest Detention Center in Washington, became eligible for a bond hearing on June 19, 2019, but was not scheduled for a bond hearing until October 1, 2019. *See* Exh. O. Similarly, ████████ ████, A# ████████, detained at the Nevada Southern Detention Center in Pahrump, Nevada, became eligible for a bond hearing on September 3, 2018, but was not scheduled for a bond hearing until January 11, 2019. *See* Exh. P. In addition, ████████████, A# ████████, detained in Eloy, Arizona, became eligible for a bond hearing on October 30, 2018, and despite multiple bond hearing requests, did not receive a bond hearing until December 11, 2018. *See* Exh. Q. And, ████████████, A# ████████, detained in Tucson, Arizona, became eligible for a bond hearing on May 20, 2019, but was not scheduled

CASE NO. 3:18-CV-01869-JSC

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER AND AMEND THE COURT'S JUNE 5, 2018 ORDER

for a bond hearing until June 26, 2019. *See* Exh. R. Of the above class members, Defendants have only provided an explanation for the delay in scheduling █████████ bond hearing, stating that "[d]ue to a data error related to a recent expansion of the detention center, the immigration court did not receive notice that this respondent was a class member until 6/14/19." *See* Exh. K.

Given the widespread delays in scheduling class members' bond hearings, Plaintiffs thus ask this Court to modify its June 5, 2018 order to require that bond hearings for eligible class members be scheduled to take place within 7 days of class members' 180th day in detention and to require that Defendants notify class members and their counsel of the imminent bond hearing by their 165th day in detention. In addition, Plaintiffs ask this Court to order Defendants to provide the reason for delay for future class members with bond decision dates that are 7 days or more after their 180th day of detention.

### C. This Court Should Order That Defendants Provide Critical Information Regarding Implementation of the PI and Identification of Class Members.

Plaintiffs further request that this Court order Defendants to provide Plaintiffs with critical information regarding implementation of the PI and identification of class members. This Court's March 13, 2019 Order instructed Defendants to explain the method by which they identify class members, including: the criteria for determining class membership; the process of reviewing cases to deem if they meet class membership; and measures taken to ensure that no class member is left unidentified. *See* ECF No. 64 at 2.

Defendants' April 10, 2019 status report states that they identify class members based on the class definition criteria, and that the ICE Enforcement and Removal Operations ("ERO") for each geographic Area of Responsibility ("AOR") that detains individuals within the Ninth Circuit queries ICE databases to identify potential class members, prepares a spreadsheet of potential class members based on their queries, and sends the spreadsheet to ICE Office of Chief Counsel ("OCC") and/or ICE Office of Principal Legal Advisor ("OPLA") for review. *See* ECF No. 67 at 3-4. ICE OCC and/or ICE OPLA then send a final list of potential class

members to the Executive Office for Immigration Review ("EOIR") for scheduling of the hearings. *Id*. at 5.

Defendants' status report and declarations, however, omit critical information on the process by which class members are identified, including: precise criteria by which class members are identified within the referenced databases; the process and criteria by which ERO officers, who are not attorneys, identify potential class members; the process and criteria by which ICE OCC and/or ICE OPLA review the list of potential class members prepared by ERO; and how Defendants track and identify if and when their detention authority has shifted to Section 1231(a)(6), the primary marker by which class members are identified and provided bond hearings.

For example, the ERO officers' declarations, which assert only that "ERO first queries and produces a detention report through ENFORCE to identify potential class members within" the AOR, does not detail the criteria that ERO officers, who are not attorneys, are using to identify "potential class members." *See* ECF No. 67-1 at ¶ 6; ECF No. 67-2 at ¶ 4; ECF No. 67-3 at ¶ 6; ECF No. 67-4 at ¶ 6; ECF No. 67-5 at ¶ 6. It is unclear whether ERO is searching for: all individuals detained in the AOR; all individuals with a final order of removal; all individuals detained pursuant to section 1231(a)(6); all individuals in "withholding only" proceedings; or some other set of potential class members. Next, the declarations make clear that ERO officers make a determination by which some potential class members are placed on a spreadsheet and sent to OCC, while other individuals are not placed on that spreadsheet. *Id.* It is clear that no attorney reviews that determination by ERO to ensure that it has been made correctly.

It is critical that Defendants provide the details of how they identify class members, given Defendants' repeated failures and delays in scheduling class members for bond hearings. Plaintiffs previously notified Defendants of at least three instances in which class members did not receive timely bond hearings, in two of which Defendants were unaware until Plaintiffs notice that those individuals were class members. *See* ECF No. 62-2 at ¶ 5-12. As discussed above, Defendants' Class Lists and Plaintiffs' inquiries with class members' attorneys further

reveal Defendants' widespread failure to timely schedule class members for bond hearings. Moreover, Plaintiffs have become aware of the circumstances underlying some of the bond hearing delays only because those class members are represented by attorneys. However, the majority of class members are *pro se* and thus are at greater risk of not being properly identified. *See* Exhs. A-H. Full disclosure as to Defendants' method of identifying class members is essential to ensuring they properly identify class members and schedule their bond hearings.

In addition, Defendants report that EOIR provided remedial guidance on implementation of the PI to the immigration courts on May 9, 2019, and that ICE issued supplemental guidance on May 21, 2019. *See* Exh. T. However, they have refused to provide Plaintiffs with such guidance, citing attorney-client privilege.[2] To ensure that Defendants properly identify and provide timely bond hearings to class members, Plaintiffs seek: (1) copies of the May 2019 remedial and supplemental guidance as well as any prior guidance on implementation of the PI; (2) the precise criteria by which class members are identified within the referenced databases; (3) the process and criteria by which ERO officers identify potential class members; (4) the process and criteria by which ICE OCC and/or ICE OPLA review the list of potential class members prepared by ERO; and (5) the process by which Defendants identify that their detention authority has shifted to Section 1231(a)(6).

### E. This Court Should Order That Defendants Include Their Attorneys at the Earliest Stages of Class Member Identification.

Plaintiffs request that this Court order Defendants to include their attorneys at the initial stage of class member identification. As discussed above, Defendants' current system for identifying class members and timely scheduling their bond hearings is inadequate. Dkt. No. 64. Plaintiffs have identified 95 class members who have had significant delays in their receipt of bond hearings, several of whom were not automatically scheduled for bond hearings and, in

---

[2] No privilege log has been provided by Defendants to support their assertion of attorney-client privilege.

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

fact, no hearings were scheduled at all until attorneys moved the immigration courts to do so. Moreover, Defendants failed to identify other class members until Plaintiffs brought them to Defendants' attention. *See* ECF No. 62-2 at ¶ 5-12. Because these individuals were represented by counsel, they ultimately received their bond hearings. However, the majority of the class members are *pro se*, and there is good reason to believe that, without counsel to take affirmative efforts, they are not receiving the bond hearings to which they are entitled.

Plaintiffs are particularly concerned that ERO officers, who are not attorneys, generate the initial list of potential class members. The class definition is highly technical and is therefore vulnerable to misconstruction and omissions, particularly by non-attorneys. While ICE OCC and/or OPLA review of the class list occurs at its final stages, such attorney review is only of individuals already designated as potential members by non-attorneys. Given the errors already committed, Plaintiffs believe that ERO officers are not properly identifying class members, resulting in their omission from the class list and Defendants' failure to provide the bond hearings to which they are entitled. Plaintiffs thus request that this Court order Defendants to ensure that attorneys oversee ERO's initial production of the list of potential class members, including attorney review of all individuals who have reached 180 days in detention to assess class membership.

### F. This Court Should Order Defendants to Post Notice of the PI Order in All Ninth Circuit Detention Facilities, to Help Ensure Compliance with the Order.

In light of Defendants' documented failures and delays in identifying class members and scheduling timely bond hearings, Plaintiffs renew their request that this Court order Defendants to post notice of this Court's June 5, 2018 PI Order in all detention facilities within the Ninth Circuit. *See* Exh. S. The Court previously denied Plaintiffs' request to compel notice of the Order, finding that the request was premature as Plaintiffs had not alleged that Defendants had failed to schedule bond hearings for class members pursuant to the PI. *See* ECF No. 56, at 7.

Plaintiffs' request is no longer premature. As discussed above, the class lists demonstrate that 95 class members had significant delays in receiving bond hearings, including

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

14 individuals with delays due to a data error, several individuals who were not automatically scheduled for bond hearings and one individual who never received a bond hearing prior to his removal. Moreover, Defendants have fully failed to identify a number of class members. *See* ECF No. 64-2 at ¶ 5-12. The attorneys of record for other class members have also reported a substantial pattern by Defendants of failing to timely identify or schedule bond hearings. *See* Exhs. O-R. Plaintiffs therefore have good reason to believe that individuals in the largely *pro se* class are not receiving and remain unaware of their right to the required bond hearing.

In the immigration detention context, courts have ordered notice that ensures that class members are properly identified and receive the bond hearings to which they are entitled. *See Rodriguez v. Holder*, 2013 WL 5229795 at *2-*3 (C.D. Cal. Aug. 6, 2013) (ordering notice to detainees of bond hearings in plain language, and that defendants submit a status report describing steps taken to timely identify all current and future class members, a class member list, and updated status reports and class members lists every 90 days); *see also Preap v. Johnson*, 303 F.R.D. 566 (N.D. Cal. May 15, 2014) (ordering parties to provide a proposed Redetermination Notice in plain language notifying class members that they are no longer subject to mandatory detention, of the result of DHS' custody reevaluation, and of the procedure for requesting a bond hearing, if necessary).

The relevant Advisory Committee Notes further encourage proper notice. With respect to notice to (b)(2) class members, Rule 23(c)(2) was modified to "call attention to the court's authority . . . to direct notice of certification." Fed. R. Civ. P. 23(c)(2)(A) advisory committee notes (2003 amendment). Members of a (b)(2) action "have interests that may deserve protection by notice" and "[n]otice facilitates the opportunity to participate." *Id.* Moreover, if a court directs notice in a (b)(2) class action, "the discretion and flexibility established by subdivision (c)(2)(A) extend to *the method of giving notice.*" *Id.* (emphasis added). Informal methods can be effective and courts weigh "the costs of notice in relation to the probable reach of inexpensive methods." *Id.* Notably, "[a] simple posting in a place visited by many class members, directing attention to a source of more detailed information, may suffice." *Id.* In

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

addition, the Ninth Circuit has repeatedly looked to the Advisory Committee Notes as a unique indicator of legislative intent and thus afforded them significant weight. *See U.S. v. Petri*, 731 F.3d 844, 839 (9th Cir. 2013) ("the construction given to [a rule] by the [Advisory] Committee is of weight" (quoting *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986)); *United States v. Saeturn*, 504 F.3d 1175, 180 (9th Cir. 2007) ("We look to Advisory Committee Notes when interpreting a federal rule for guidance and insight." (internal quotations omitted)).

Here, posting notice in the Ninth Circuit detention facilities is a low-cost, unburdensome notice option with the potential to reach all class members. Defendants have done so in other cases. Exh. V. Such notices serve as an essential check on Defendants' currently imperfect system of identifying class members and scheduling timely bond hearings. Posting of notice is critical to helping ensure that class members – particularly *pro se* ones – are aware of the PI and their entitlement to a prolonged detention bond hearing. Plaintiffs propose that the Court order the attached Exhibit S, be posted in all detention facilities where potential class members may be detained within 21 days of the Court's order.

## III.   CONCLUSION

For all of these reasons, Plaintiffs respectfully request that this Court modify its June 5, 2018 order to require that class members' bond hearings be scheduled to take place within 7 days of their 180th day in detention and to require that Defendants notify class members and their counsel of the imminent bond hearings by their 165th day in detention. In addition, Plaintiffs ask that this Court order Defendants to provide the following: (1) "Bond decision outcome" data, *i.e.*, whether a bond was granted or denied, for all 197 current class members without such data and all future class members; (2) the reason for the delay for future class members whose bond hearing was scheduled 7 days or more after their 180th day in detention; (3) any remedial, supplemental, and prior agency guidance regarding the implementation of the PI and Order; (4) the criteria by which class members are identified within the referenced databases, the process and criteria by which ERO officers identify potential class members, the process and criteria by which ICE OCC and/or ICE OPLA review the list of potential class

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

members prepared by ERO, and the process by which Defendants identify that their detention authority has shifted to Section 1231(a)(6); and (5) attorney oversight of ERO's production of the initial potential class membership list to ensure that no class members are inadvertently not scheduled for hearings.

Finally, this Court should require Defendants to post notice of the PI in all Ninth Circuit detention facilities within 21 days of the Court's order and suggest that the Court order that that notice be as proposed in Exhibit S.

Dated: April 10, 2020                    Respectfully submitted,

                                         /s/ Alison Pennington

                                         Alison Pennington
                                         Counsel for the Plaintiffs
                                         Immigrant Legal Defense

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on April 10, 2020.   I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.  Executed this 10th day of April 2020 in San Francisco, California.

/s/ Johnny Sinodis
Johnny Sinodis

CASE NO. 3:18-CV-01869-JSC

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER
AND AMEND THE COURT'S JUNE 5, 2018 ORDER