1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN ALEMAN GONZALEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM P. BARR, et al.,<br><br>Defendants. | Case No. 18-cv-01869-JSC<br><br>**ORDER RE: PLAINTIFFS' MOTION TO ENFORCE THE COURT'S MARCH 13, 2019 ORDER AND AMEND THE COURT'S JUNE 5, 2018 ORDER**<br><br>Re: Dkt. No. 75 |

On June 5, 2018, the Court issued an order granting Plaintiffs' motions for preliminary injunction and class certification. (Dkt. No. 33.)[1] On March 13, 2019, the Court issued an order directing Defendants to provide Plaintiffs a periodic Class List to demonstrate Defendants' compliance with the June 2018 Order. (Dkt. No. 64.) Now before the Court is Plaintiffs' motion to enforce the March 2019 Order and amend the June 2018 Order. (Dkt. No. 75.) After careful consideration of the parties' briefing and having had the benefit of oral argument on June 18, 2020, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion.

**BACKGROUND**

**I.     June 2018 Order**

The June 2018 Order certified a class consisting of:

> [A]ll individuals who are detained pursuant to 8 U.S.C. § 1231(a)(6) in the Ninth Circuit by, or pursuant to the authority of, the U.S. Immigration and Customs Enforcement ("ICE"), and who have reached or will reach six months in detention, and have been or will be denied a prolonged detention bond hearing before an Immigration Judge ("IJ").

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

1    (Dkt. No. 33 at 4-5.)  The Order also issued a preliminary injunction enjoining Defendants from

2    detaining Plaintiffs and the class members pursuant to section 1231(a)(6) for more than 180 days

3    without a bond hearing before an IJ.  (*Id.* at 19.)  On July 20, 2018, the Court issued an order,

4    (Dkt. No. 42 ("July 2018 Clarification Order")), in response to Defendants' motion for

5    clarification of the June 2018 Order, (Dkt. No. 36).  The Court clarified that the class includes

6    only those individuals detained pursuant to section 1231(a)(6) who have live claims before an

7    adjudicative body challenging their removal from the United States.  (Dkt. No. 42 at 2.)

8           In November 2018 Plaintiffs filed a motion to enforce the June 2018 Order.  (Dkt. No. 46.)

9    The motion sought to broaden the class definition to include individuals transferred outside the

10   jurisdiction of the Ninth Circuit prior to their 180th day in detention, and to compel Defendants to

11   post notice of the June 2018 Order in all immigration detention facilities in the Ninth Circuit.  (*Id.*

12   at 3.)  The Court denied the motion, finding that Plaintiffs' reading of the certified class was too

13   broad and that Plaintiffs' request to compel posting of the June 2018 Order was premature because

14   Plaintiffs did not allege that Defendants had failed to schedule bond hearings in accordance with

15   the Order.  (Dkt. No. 56 at 7.)

16          On April 7, 2020, the Ninth Circuit affirmed the Court's June 2018 Order.  *See Aleman*

17   *Gonzalez v. Barr*, 955 F.3d 762 (9th Cir. 2020).

18   **II.    March 2019 Order**

19          The March 2019 Order requires Defendants, in pertinent part, to provide periodic reports

20   ("Class Lists") every 60 days containing the following information for each class member: (1) full

21   first and last name; (2) alien number; (3) base city name; (4) hearing location name; (5) book in

22   date; (6) date of 180th day in detention; (7) detention facility; (8) attorney of record (if any); (9)

23   attorney firm (if any); (10) bond decision date; and (11) bond decision outcome.  (Dkt. No. 64 at ¶

24   2.)  The Order further requires Defendants to provide a cover email with each Class List that

25   provides any additional information needed to explain the lack of a bond decision date entry

26   and/or bond decision outcome entry, or any other clarifying information.  (*Id.*)

27          The March 2019 Order also directed Defendants to provide the Court and Plaintiffs a

28   declaration addressing six categories of information detailing the method by which Defendants

2

United States District Court
Northern District of California

1   identify class members; specifically:

> 2   (1) the criteria with which Defendants analyze the cases of detained
> 3   individuals to determine whether they fall within the class definition;
> (2) the process by which Defendants review the cases of detained
> 4   individuals to determine whether they fall within the class definition;
> (3) any automated procedures, including software programs, that
> 5   Defendants utilize in order to identify class members; (4) any manual
> procedures that Defendants utilize in order to identify class members;
> 6   (5) the process by which Defendants notify individuals that they will
> be receiving a bond hearing; and (6) the measures taken by
> 7   Defendants to ensure that no class member is left unidentified and/or
> fails to receive a bond hearing.

8   (*Id.* at ¶ 4.)

9   ## III.   April 2019 Report

10   In response to the March 2019 Order, Defendants filed a status report on April 10, 2019

11   ("April 2019 Report").  (Dkt. No. 67).  The Report includes the supporting declarations of: April

12   Jacques, Assistant Field Office Director with U.S. Department of Homeland Security ("DHS"),

13   U.S. Immigration Customs and Enforcement ("ICE"), Enforcement and Removal Operations

14   ("ERO"), San Francisco Field Office, (Dkt. No. 67-1, Ex. A ("Jacques Decl.")); Brian Muirhead,

15   Supervisory Detention and Deportation Officer with DHS, ICE, ERO, Seattle Field Office, (Dkt.

16   No. 67-2, Ex. B ("Muirhead Decl.")); Jamison Matuszewski, Deputy Field Office Director, DHS,

17   ICE, ERO, San Diego Field Office, (Dkt. No. 67-3, Ex. C ("Matuszewski Decl.")); John E. Cantu,

18   Officer in Charge, DHS, ICE, ERO, Florence Detention Center in Florence, Arizona, (Dkt. No.

19   67-4, Ex. D ("Cantu Decl.")); Matthew Cantrell, Supervisory Detention and Deportation Officer,

20   DHS, ICE, ERO, Salt Lake City Field Office, (Dkt. No. 67-5, Ex. E ("Cantrell Decl.")); and Mary

21   Cheng, Deputy Chief Immigration Judge, Executive Office for Immigration Review, (Dkt. No. 67-

22   6, Ex. F ("Cheng Decl.")).

23   The April 2019 Report addresses the six categories of information specified in the March

24   2019 Order.  First, as to the criteria with which Defendants analyze the cases of detainees to

25   determine whether they are class members, the Report explains:

> 26   Defendants identify class members to include aliens who are subject
> to final administrative orders of removal; are currently held in
> 27   immigration detention under 8 U.S.C. § 1231(a)(6) within the
> jurisdiction of the Ninth Circuit Court of Appeals; have been held in
> 28   immigration detention for at least 180 days; have not received an

3

United States District Court
Northern District of California

1    individualized bond hearing at which the Government has the burden
     of justifying further detention; have a "live claim" before an
2    Immigration Court, the Board of Immigration Appeals, or a circuit
     court of appeals; and whose release or removal is not imminent.

3    (Dkt. No. 67 at 3 (citing June 2018 Order; July 2018 Clarification Order; Jacques Decl. ¶ 4;

4    Muirhead Decl. ¶ 2; Matuszewski Decl. ¶ 4; Cantu Decl. ¶ 4; Cantrell Decl. ¶ 4).)

5          Second, as for the process by which Defendants review the cases of detained individuals to

6    determine whether they fall within the class definition, the Report explains that on a weekly basis

7    the ICE ERO office for each area of responsibility "that houses detainees within the Ninth Circuit

8    queries ICE electronic database systems to identify potential class members." (*Id.* (citing Jacques

9    Decl. ¶ 6; Muirhead Decl. ¶ 4; Matuszewski Decl. ¶ 6; Cantu Decl. ¶ 6; Cantrell Decl. ¶ 6).)  The

10   Report describes the process as follows:

11              Each ERO office first queries and produces a detention report through
                the ENFORCE detention and removal modules within the
12              Enforcement Integrated Database . . . to identify potential class
                members within its [area of responsibility].  To avoid multiple reports
13              of the same alien, ERO then deletes the names of the aliens previously
                reported as class members. *Id.* ERO then reviews information in
14              ENFORCE to determine the case status of the remaining potential
                class members. *Id.* If there is any uncertainty, ERO may search
15              additional ICE Office of Chief Counsel [("OCC")] and/or public
                electronic databases, including Public Access to Court Electronic
16              Records (PACER), and/or confer with the ERO custody case officer
                and ICE OCC or ICE Office of the Principal Legal Advisor
17              [("OPLA")] to identify potential class members. *Id.*

18              ERO then prepares an Excel spreadsheet identifying potential class
                members and sends it to ICE OCC and/or ICE OPLA for review.  *Id.*
19              ICE OCC and/or ICE OPLA then reviews the list of potential class
                members for accuracy and legal sufficiency through ICE and/or
20              PACER databases and may consult with other ICE personnel.
                Jacques Decl. ¶ 7; Muirhead Decl. ¶ 5; Matuszewski Decl. ¶ 7; Cantu
21              Decl. ¶ 7; Cantrell Decl. ¶ 7.  On a weekly basis, ICE OCC and/or
                ICE OPLA sends a final list of potential class members to the
22              Executive Office for Immigration Review . . . by electronic
                transmission. *Id.*; Cheng Decl. ¶ 5. This list includes at least the
23              detainees' names, alien numbers, and dates of book-in to detention to
                enable the applicable immigration court to schedule *Aleman Gonzalez*
24              bond hearings for the identified class members by their 180th day of
                detention.  Cheng Decl. ¶ 5
25

26    (Dkt. No. 67 at 3-4.)

27         Third, as to any automated procedures, including software programs that Defendants

28   utilize in order to identify class members, the Report explains that:

                                            4

United States District Court
Northern District of California

1
2
3
4
5
6

> [t]here is no single automated procedure by which Defendants can identify class members. Instead, identification is a manual process that often requires ICE ERO to consult multiple databases and other ICE offices, including ICE OCC and ICE OPLA. ICE ERO offices utilize various software programs to gather the data necessary to determine class membership, most notably the ENFORCE detention and removal modules within [the Enforcement Integrated Database]. Jacques Decl. ¶ 6; Muirhead Decl. ¶ 4; Matuszewski Decl. ¶ 6; Cantu Decl. ¶ 6; Cantrell Decl. ¶ 6.  In some cases, ERO may also search additional ICE OCC and/or public electronic databases, including [PACER], and/or confer with the ERO custody case officer and ICE OCC or ICE OPLA to identify potential class members.  *Id.*

7

(Dkt. No. 67 at 4-5.)

8

Fourth, as to any manual procedures that Defendants utilize to identify class members, the

9

Report reiterates the manual processes described above.  (*Id.* at 5.)  Fifth, as to the process by

10

which Defendants notify class members that they will be receiving a bond hearing, the Report

11

explains that the Executive Office for Immigration Review notifies detainees "using the detention

12

facility mail system."  (*Id.* at 5 (citing Cheng Decl. ¶ 6).)  Notice is also sent to counsel's address

13

of record if a detainee is represented; counsel may also receive notice by telephone.  (*Id.* at 5-6.)

14

Finally, as to measures taken by Defendants to ensure that no class member is left unidentified or

15

fails to receive a bond hearing, the Report explains:

16
17
18
19
20
21
22
23

> In certain situations where class membership is unclear, ICE ERO personnel will consult with legal counsel at ICE OCC or ICE OPLA. Jacques Decl. ¶ 6; Muirhead Decl. ¶ 4; Matuszewski Decl. ¶ 6; Cantu Decl. ¶ 6; Cantrell Decl. ¶ 6. When ERO offices prepare a list identifying potential class members, ICE OCC and/or ICE OPLA then reviews the list for accuracy and legal sufficiency through ICE and/or PACER databases and may consult with other ICE personnel. *Id.* Additionally, in some cases, detainees and/or their counsel of record may request an *Aleman Gonzalez* bond hearing by motion to the immigration court or in person while appearing before an immigration judge.  Cheng Decl. ¶ 7.  In an abundance of caution, [Executive Office for Immigration Review] personnel in these circumstances may schedule the detainee promptly for a bond hearing to allow an immigration judge to determine the individual's eligibility for an *Aleman Gonzalez* bond hearing at the hearing.  *Id.*

24

(Dkt. No. 67 at 6.)

25

**IV.   Class Lists**

26

Defendants have provided Plaintiffs seven Class Lists subsequent to the March 2019

27

Order.  (*See* Dkt. Nos. 74-8, Exs. C-H (Class Lists dated May 13, 2019, July 11, 2019, September

28

9, 2019, November 8, 2019, January 7, 2020, March 7, 2020) (filed under seal) & 78-5, Ex. A

1    (Class List dated May 6, 2020) (filed under seal).)  The Class Lists include the headings required

2    under the March 2019 Order; specifically: (1) full first and last name; (2) alien number; (3) base

3    city name; (4) hearing location name; (5) book in date; (6) date of 180th day in detention; (7)

4    detention facility; (8) attorney of record (if any); (9) attorney firm (if any); (10) bond decision

5    date; and (11) bond decision outcome.  (*Compare id. with* Dkt. No. 64 at ¶ 2.)  In connection with

6    the Class Lists, Defendants included cover emails providing additional information regarding the

7    bond hearings and status of some class members.  (*See* Dkt. Nos. 75-4, Exs. I-N; & 79-2, Ex. B

8    (redacted versions of documents filed under seal).)

9                                              **DISCUSSION**

10   **I.     Motion to Amend June 2018 Order**

11           Plaintiffs seek to amend the June 2018 Order to require that Defendants "(1) schedule bond

12   hearings for eligible class members to take place within 7 days of the class members' 180th day of

13   detention; (2) notify class members and their counsel of the scheduled bond hearing by the class

14   members' 165th day in detention, and; (3) explain any delay for class members with bond decision

15   dates that are 7 days or more after their 180th day of detention."  (Dkt. No. 81 at 7.)  Plaintiffs also

16   renew their previous request that Defendants post notice of the preliminary injunction in all

17   immigration detention facilities in the Ninth Circuit.  (Dkt. No. 75 at 5.)  Plaintiffs base their

18   renewed request on Defendants' purported "pattern of failing to identify class members and

19   delaying the scheduling of bond hearings."  (*Id.*)

20           Defendants oppose the request to amend the June 2018 Order on the grounds that the

21   additional requirements are unnecessary "because Defendants are working in good faith to identify

22   class members and provide them with bond hearings as promptly as possible."  (Dkt. 79 at 4.)

23   Defendants also assert that the additional requirements sought are excessively burdensome.

24           Before addressing whether amendment is warranted, the Court denies Plaintiffs' request to

25   require Defendants to "notify class members and their counsel of the scheduled bond hearing by

26   the class members' 165th day in detention," (*see* Dkt. No. 81 at 7), because a detainee is not a

27   class member *until* the individual reaches his or her 180th day in detention.  Indeed, in denying

28   Plaintiffs' previous motion to enforce the June 2018 Order the Court emphasized that "the class

United States District Court
Northern District of California

6

1    includes only those individuals detained pursuant to section 1231(a)(6) for six months or longer

2    who have not received a bond hearing." (*See* Dtk. No. 56 at 4.)  Because Plaintiffs' requested

3    amendment involves individuals who may not become class members, the amendment is not

4    necessary to ensure that class members—those detained for 180 days or longer—receive bond

5    hearings.

6           **A.       Scheduling Bond Hearings and Explaining Delays**

7           As for requiring Defendants to schedule bond hearings within 7 days of a class member's

8    180th day in detention, the Court concludes that such amendment is not necessary because

9    Defendants demonstrate that in 88% of cases within the last 12 months class members received a

10   bond hearing within 15 days of entering the class.  (*See* Dkt. No. 79 at 8 n.5 (citing Combined

11   Class List Chart identifying 301 class members included in Defendants' "six most recent class

12   lists" (Dkt. No. 78-8, Ex. C (filed under seal)).)  Providing bond hearings to 88% of class

13   members within 15 days of class eligibility does not evince a "pattern" of failing to timely identify

14   class members and schedule bond hearings.  It instead shows Defendants' good faith attempts to

15   comply with the June 2018 preliminary injunction within the confines of a system that is not

16   immune to human error and delay based on the "availability of immigration court dockets,

17   interpreter availability, and availability of the parties and their representatives." (*See* Dkt. No. 79

18   at 8.)  Indeed, for some delays beyond 15 days the Combined Class List Chart includes

19   explanations such as "data error," "inadvertent clerical error by agency staff," and requests for

20   continuance by class members or their counsel.  (*See* Dkt. No. 78-8, Ex. C at 6-7, 9-13.)  Such

21   delays would exist regardless of any injunctive requirements this Court could issue.

22          That said, Defendants' demonstrated ability to hold bond hearings for the vast majority of

23   class members within 15 days of their 180th day of detention shows that it is reasonable to require

24   Defendants to provide an explanation when it is unable to do so.  This is especially true given that

25   Defendants' Combined Class List does not include explanations for the delay in granting bond

26   hearings to 15 out of the 35 class members who received bond hearings between 16 and 113 days

27   after meeting class eligibility.  (*See* Dkt. No. 78-8, Ex. C.)  Defendants should explain such delays

28   because doing so will help Defendants identify and mitigate issues in timely identifying class

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    members and scheduling them for bond hearings in accordance with the June 2018 Order.

2    　　　Accordingly, the June 2018 Order is amended to require Defendants to provide Plaintiffs

3    an explanation in all cases where Defendants are unable to hold a bond hearing within 15 days of a

4    class member's 180th day of detention.  That explanation may be provided in the cover email that

5    accompanies the Class List.

6    　　　　　**B.　　　Posting Notice of the Preliminary Injunction**

7    　　　In support of their renewed request to compel Defendants to post notice of the preliminary

8    injunction at immigration detention facilities within the Ninth Circuit, Plaintiffs assert that

9    Defendants' documented failure to timely identify class members due to a data error in some

10   instances or automatically schedule others for bond hearings upon their 180th day in detention

11   demonstrates that the "request is no longer premature."  (Dkt. No. 75 at 17-18; *see also* Dkt. No.

12   75-5, Ex. S (Proposed Notice).)[2]  Defendants oppose the request, in part because Plaintiffs

13   demonstrate only *delays* in providing the required bond hearings in all but one instance, and the

14   lone exception involved an individual who "fell out of the class and had already been removed

15   before a bond hearing could be held."  (Dkt. No. 79 at 17.)  Defendants further assert that "the

16   posting of public notices is unnecessary in this case because Defendants are proactively

17   identifying potential members of the class and automatically scheduling them for bond hearings

18   once they become class members."  (*Id.*)  The Court disagrees.

19   　　　Defendants' own submissions indicate that in some cases class members' bond hearings

20   were significantly delayed by over a month—and in one case over three months—due to "data

21   error[s]" or "inadvertent clerical error[s]."  (*See* Dkt. No. 78-8, Ex. C at 6-7, 9-10, 12-13.)  In two

22   other cases, bond hearings were delayed by over three months with no explanation.  (*See id.* at 8.)

23   The Court does not expect Defendants to implement the preliminary injunction to perfection;

24   delays and inadvertent errors will occur despite Defendants' good faith efforts to "automatically"

25   identify class members and schedule them for bond hearings.  That said, it is conceivable that

26

27   ───────────────────
[2] Plaintiffs' citation to "ECF No. 64-2 at ¶ 5-12" for the proposition that "Defendants have fully
28   failed to identify a number of class members" is erroneous.  (*See* Dkt. Nos. 75 at 18; *see also* Dkt.
     No. 81 at 14.)  There is no such document on the Court's docket.

United States District Court
Northern District of California

1   posting Plaintiffs' proposed notice of the preliminary injunction will alert class members to their

2   rights under the June 2018 Order and help mitigate the delays caused by inadvertent errors in

3   identifying class members.  Further, requiring Defendants to post notice of the preliminary

4   injunction is a minimal burden that is outweighed by the risk of harm in significantly delaying a

5   class member's right to a bond hearing upon his or her 180th day in detention.

6          Defendants assert that posting notice is "an inefficient and ineffective way to facilitate

7   compliance with [the] . . . injunction" because the class definition is complex and "it is difficult to

8   imagine that *pro se* detainees would be able to self-identify class membership."  (Dkt. No. 79 at

9   18.)  Thus, Defendants argue, there is "substantial risk that posting public notices would only

10   invite confusion if detainees mistakenly identify themselves as class members and ERO officers,

11   ICE attorneys, and immigration judges are forced to address and deny erroneous claims of class

12   membership and improper requests for bond hearings from individuals who are not class

13   members."  (*Id.*)  Defendants overstate that risk in relation to the harm to class members who are

14   not timely identified as such.

15          First, Plaintiffs' proposed notice states the requirements for class membership, (*see* Dkt.

16   No. 75-5, Ex. S at 24), such that a reasonable individual would know whether or not they are class

17   eligible.  If a detainee mistakenly believes that he or she is a class member and requests a bond

18   hearing on those grounds, an ERO Officer should be able to quickly dispose of such requests by

19   utilizing the same initial method for identifying class members described in Defendants' April

20   2019 Report.  Second, and more importantly, the burden of addressing an erroneous request for a

21   bond hearing is significantly outweighed by the harm in delaying—in some documented instances

22   by months—a class member's right to a bond hearing upon their 180th day in detention.

23          Accordingly, the June 2018 is amended to require Defendants to post Plaintiffs' proposed

24   notice of the preliminary injunction in all immigration detention facilities in the Ninth Circuit.

25   The proposed notice must be amended to read, in pertinent part: "2) You are presently detained

26   under 8 U.S.C. § 1231(a)(6) and have a live claim challenging your detention."  Defendants shall

27   post the notice within 30 days of this Order.

28   //

1

**II.     Motion to Enforce March 2019 Order**

2      Plaintiffs move to enforce the March 2019 Order and require Defendants to: (1) "provide

3  Plaintiffs with bond decision outcomes, namely whether a bond was granted or denied, for 197

4  class members"; and (2) "provide Plaintiffs with critical information regarding implementation of

5  the PI and identification of class members" and "include [Defendants'] attorneys at the initial

6  stage of class member identification." (Dkt. No. 75 at 4, 14, 16.)  The Court addresses

7  Defendants' purported failures to comply with the March 2019 Order in turn.

8      **A.     Bond Decision Outcomes**

9      Plaintiffs argue that the Class Lists provided subsequent to the March 2019 Order are

10  deficient because they do not provide the bond decision outcomes for 197 class members.  Based

11  on Defendants' purported failure to comply, Plaintiffs ask the Court to require Defendants to

12  provide the following "'bond decision outcome data, i.e., whether a bond was granted or denied

13  for all 197 current class members without such data and [for] all future class members." (Dkt. No.

14  81 at 17.)

15      The Class Lists contain a heading entitled "Bond Decision," "Bond Decision Outcome," or

16  "Bond Decision Description" that lists one of the following for each class member with a "Bond

17  Decision Date": "No Bond," "No Action," "No Change," "New Amount," "Own Recognizance,"

18  or "No Jurisdiction." (*See* Dkt. Nos. 74-8, Exs. C-H & 78-5, Ex. A.)  In response to questions

19  from Plaintiffs' counsel regarding the "No Action" and "No Change" entries, Defendants' counsel

20  explained in an August 2019 email:

21          a.  "No Action" is the code used to indicate that no action was taken
            on the bond request.  This could happen before, during or at the
22          conclusion of the bond hearing.  However, this does not preclude
            respondent from having another bond hearing after that date, which is
23          why in many cases, . . . there was a subsequent bond hearing.

24          b.  "No Change" means that the IJ has made no change to the previous
            custody determination which may been made by either DHS or an IJ.
25

26  (Dkt. No. 75-6, Ex. T at 3.)

27      Plaintiffs acknowledge Defendants' explanations, and recognize that since the March 2019

28  Order "Defendants have readily included the bond decision outcome for the majority (70%) of

10

1   class members, with 'New Amount' and 'No Bond' codes." (Dkt. No. 81 at 8.)  Plaintiffs argue,

2   however, that the "No Action" and "No Change" entries are not "bond decision outcomes"

3   because they do not indicate whether bond was granted or denied.  The Court addresses the

4   challenged entries in turn.

5          First, the Court rejects Plaintiffs' assertion that the March 2019 Order requires Defendants

6   to indicate whether bond was granted or denied.  Instead, the Order requires only that Defendants

7   provide a "bond decision outcome," and the "No Change" entry satisfies that requirement because

8   it means precisely what it says—the class member will continue to be detained under the terms set

9   before the bond hearing.  In other words, the class member is in custody under certain terms at the

10  time of the bond hearing and "No Change" clearly indicates the IJ's decision that the class

11  member will remain in custody under those same terms after the bond hearing.  Thus, the Court is

12  satisfied that the "No Change" entry complies with the March 2019 Order because it provides a

13  definitive "outcome."

14         Plaintiffs' argument to the contrary is unavailing.  Plaintiffs assert that the "No Change"

15  entry "fails to comply with the Court's order to provide the 'bond decision outcome,'" because it

16  "does not show the outcome of the initial custody decision that the [IJ] has declined to change."

17  (Dkt. No. 81 at 9.)  However, the March 2019 Order does not require Defendants to provide

18  information regarding a class member's previous custody determination.  And more importantly, it

19  is unclear how such information is even relevant to effectuating the purpose of the June 2018

20  preliminary injunction—providing individualized bond hearings to detainees who meet class

21  eligibility.

22         Second, as for the "No Action" entry, Plaintiffs argue that it fails to indicate "whether the

23  class member ultimately received a bond hearing and whether a bond was granted or denied."

24  (Dkt. No. 75 at 8.)  The Court agrees that the "No Action" entry does not constitute a "bond

25  decision outcome" absent clarifying information regarding an actual outcome.  In some cases

26  Defendants have provided additional information in the cover emails that accompany the Class

27  Lists regarding class members whose bond decision is entered as "No Action."  However,

28  Defendants' most recent Class List and cover email for May 2020 demonstrate that the additional

United States District Court
Northern District of California

11

1    information is insufficient.  For example, for one class member with a "No Action" code

2    Defendants' cover email states: "A bond hearing was held on 2/28/20 but continued at the request

3    of respondent's counsel.  The hearing was reset and held on 3/20/20."  (Dkt. No. 79-2, Ex. B at 2

4    (redacted version of document filed under seal).)  Merely indicating that the bond hearing was

5    held on a certain date does not provide a bond decision outcome, and Defendants' explanation to

6    Plaintiffs that the "No Action" code "indicate[s] that no action was taken on the bond request" is

7    meaningless without information explaining *why* no action was taken or whether the class member

8    was scheduled for a subsequent hearing that resulted in an actual bond decision outcome.  Indeed,

9    Defendants' explanation to Plaintiffs suggests that in some instances the "No Action" code may

10   reflect that the bond hearing was not actually held on the date indicated on the Class List.  (*See*

11   Dkt. No. 75-6, Ex. T at 3 (noting that "no action" may be taken *before*, during or at the conclusion

12   of the bond hearing[,]" and "in many cases, . . . there was a subsequent bond hearing") (emphasis

13   added).).  Simply put, "No Action" does not constitute a "bond decision outcome" as required

14   under the March 2019 Order.

15        Defendants' opposition asserts that, in general, no action is taken on a bond request "if, for

16   example, the individual sought and received a continuance or asked to withdraw the bond,

17   enabling the class member to pursue bond at a later time."  (Dkt. No. 79 at 12.)  That is a

18   reasonable explanation.  However, Defendants must provide that information in their cover emails

19   for every class member with a "No Action" code.  A review of Defendants' Class Lists and

20   corresponding cover emails indicates that Defendants have not done so.

21        At the June 2018 hearing, Defendants noted that the Court's March 2019 Order adopted

22   Defendants' proposed language regarding the content of the Class Lists verbatim; thus,

23   Defendants argued that they did not expect that the Court would find that the "No Action" code

24   was insufficient.  Defendants are correct that the following language from the March 2019 Order

25   is taken directly from Defendants' proposed order, filed March 7, 2019:

26            For each individual identified on the Class List described in paragraph
              1, above, Defendants shall include the following information in
27            addition to the individual's full first and last name: (1) Alien number;
              (2) Base City name; (3) Hearing location name; (4) Book in date; (5)
28            Date of 180th day in detention; (6) Detention facility; (7) Attorney of

                                          12

United States District Court
Northern District of California

1

2

3

> Record (if any); (8) Attorney Firm (if any); (9) Bond decision date;
> and (10) Bond decision outcome. If any additional information is
> needed to explain the lack of bond decision date entry and/or bond
> decision outcome entry, or otherwise, Defendants will provide a cover
> email with the report including such additional information.

4   (*Compare* Dkt. No. 63-1 at 3 (Defendants' March 7, 2019 proposed order) *with* Dkt. No. 64 at ¶ 2

5   (Court's March 2019 Order).)  However, neither Defendants' briefing filed in connection with

6   their March 2019 proposed order nor the proposed order itself references the "No Action" code.

7   (*See generally* Dkt. Nos. 63 & 63-1.)  Further, the parties did not discuss the "No Action" code at

8   the January 2019 case management conference during which the Court addressed Plaintiffs'

9   request for periodic compliance reports.  (*See generally* Dkt. No. 61.)  In other words, this is the

10  first time the Court has been asked to assess the "No Action" code.  Thus, any "expectations"

11  Defendants had regarding its validity in relation to the Court's March 2019 Order are irrelevant.

12         As stating "No Action" does not provide a bond decision outcome, and as the March 2019

13  order requires Defendant to provide a cover email with additional information for every entry that

14  lacks a bond decision outcome, Defendant has not complied with the March 2019 Order.

15  Accordingly, Defendants must provide Plaintiffs with an updated list of every class member

16  whose bond decision outcome was entered as "No Action."  The list must provide the actual bond

17  decision outcome for each of those class members (i.e., "No Bond," "No Change," "New

18  Amount," "Own Recognizance," or "No Jurisdiction").  Going forward, Defendants' Class Lists

19  must provide clarifying information for every "No Action" entry, including whether the class

20  member has been rescheduled for a bond hearing and if so, the date of that hearing.  Defendants

21  shall then include that class member on the Class List that covers the time period when he or she

22  receives an actual bond decision outcome.

23         **B.    Information Regarding Class Identification and Preliminary Injunction
              Implementation**

24

25         Plaintiffs assert that Defendants' April 2019 Report and supporting declarations submitted

26  in response to the March 2019 Order:

27

28

> omit critical information on the process by which class members are
> identified, including: precise criteria by which class members are
> identified within the referenced databases; the process and criteria by

1

2

3

> which ERO officers, who are not attorneys, identify potential class members; the process and criteria by which ICE OCC and/or ICE OPLA review the list of potential class members prepared by ERO; and how Defendants track and identify if and when their detention authority has shifted to Section 1231(a)(6), the primary marker by which class members are identified and provided bond hearings.

4    (Dkt. No. 75 at 15.)  Thus, Plaintiffs argue that Defendants must be ordered to provide the

5    following: (1) "any remedial, supplemental, and prior agency guidance regarding the

6    implementation of the Court's injunction and orders"; (2) "the criteria by which class members are

7    identified within the referenced databases, the process and criteria by which ERO officers identify

8    potential class members, the process and criteria by which ICE OCC and/or ICE OPLA review the

9    list of potential class members prepared by ERO, and the process by which Defendants identify

10   that their detention authority has shifted to Section 1231(a)(6)"; and (3) "attorney oversight of

11   ERO's production of each potential class membership list to ensure that no class members are

12   erroneously not scheduled for hearings."  (Dkt. No. 81 at 17.)

13        In determining whether the requested information is necessary, the Court must first

14   determine whether Defendants' April 2019 Report fails to provide the information specified in the

15   March 2019 Order.  It does not.  The Report and supporting declarations are sufficiently detailed

16   and provide the requisite information; specifically, Defendants describe the criteria used for

17   determining class membership, (*see* Dkt. No. 67 at 3), the processes by which Defendants both

18   review the cases of detained individuals to determine whether they are class members and notify

19   those individuals that they will receive a bond hearing, (*see id.* at 3-5), and the measures

20   Defendants take to ensure that class members are identified, (*see id.* at 6).  That those measures in

21   practice are not completely error proof does not indicate that Defendants have failed to comply

22   with the Court's March 2019 Order.

23        Accordingly, the Court denies Plaintiffs' motion to enforce the March 2019 Order to the

24   extent it seeks to require that Defendants produce additional information regarding its processes

25   for identifying class members and implementing the preliminary injunction.  Further, the Court

26   denies the motion to the extent it seeks to require Defendants to provide "attorney oversight of

27   ERO's production of each potential class membership list" because the record shows that the vast

28   majority of class members have been identified and timely scheduled for bond hearings, and

United States District Court
Northern District of California

14

1   Plaintiffs fail to demonstrate a "pattern" of noncompliance with either the March 2019 Order or

2   the June 2018 Order warranting such further injunctive relief.

3   **III.    Administrative Motions to Seal**

4          Pursuant to Civil Local Rules 7-11 and 79-5, and the stipulated Protective Order in this

5   case, (Dkt. No. 41), both parties move to file under seal portions of their briefing and exhibits filed

6   in connection with the underlying motion to enforce.  (Dkt. Nos. 74; 78; 80.)  The information

7   consists of "the names and alien registration numbers . . . of absent class members who have not

8   publicly disclosed or authorized disclosure of [that] identifying information."  (Dkt. Nos. 74 & 80

9   at 3.)  The Protective Order designates the material as confidential.  (Dkt. No. 41 at ¶ 2.)

10         A party seeking to seal court filings must comply with the Civil Local Rules, which

11   provide that sealing is appropriate only where the requesting party "establishes that the document,

12   or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection

13   under the law[,]" and narrowly tailors its requests only to sealable material and redacts the

14   documents accordingly.  Civil L.R. 79-5(b),(d).  Further, a party seeking to seal a document filed

15   in connection with a motion related to the merits of a case must overcome the "strong presumption

16   in favor of public access" to judicial records by meeting the "compelling reasons" standard.

17   *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1171, 1178-79 (9th Cir. 2006); *see also Ctr. for*

18   *Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098, 1101 (9th Cir. 2016) (noting that the

19   "compelling reasons" test applies "to most judicial records," including documents attached to

20   nondispositive motions that are "more than tangentially related to the merits of a case") (internal

21   quotation marks and citation omitted).  Plaintiffs' motions to seal "[a]ssum[e] the 'compelling

22   reason' standard applies here," (*see* Dkt. Nos. 74 & 80 at 4), and the Court agrees that Plaintiffs'

23   underlying motion is related to the merits of the case.

24         In support of sealing, Plaintiffs submit the declaration of Plaintiffs' counsel Jesse

25   Newmark, who attests that "[m]any of the absent class members . . . are in withholding only

26   proceedings, and therefore particularly vulnerable to harm from disclosure of their identities."

27   (Dkt. No. 74-1 at ¶ 8 & 80-1 at ¶ 7.)  Thus, Plaintiffs assert that compelling reasons justify sealing

28   the identifying information of the absent class members because public disclosure could subject

1   them to harm and retaliation in their home countries if deported.  (Dkt. Nos. 74 & 80 at 4-5.)

2   Defendants submit the declaration of counsel Matthew Seamon, who attests that the parties met

3   and conferred and agree that the information should be filed under sealed.  (Dkt. No. 78-1 at ¶ 6.)

4          The Court agrees that sealing is warranted.  The parties' declarations in support of sealing

5   comply with the Civil Local Rules and the proposed redactions are narrowly tailored to only the

6   names and alien registration numbers of absent class members, many of whom are in withholding

7   only proceedings.  Compelling reasons justify sealing that identifying information because the

8   information has no bearing on the merits of this action, and the public's interest in the identities of

9   absent class members is minimal to non-exist and outweighed by the risk of harm to those

10   individuals given that many are seeking asylum.

11          Accordingly, the Court grants the parties' administrative motions to seal in full.

12                                        **CONCLUSION**

13          For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART

14   Plaintiffs' motion.  The June 2018 Order is amended to require Defendants to provide an

15   explanation in every instance in which a class member's bond hearing is not held within 15 days

16   after the class member's 180th day of detention.  Further, within 30 days, Defendants shall post

17   Plaintiffs' proposed notice of the preliminary injunction (with the amended language discussed

18   above) in all immigration detention facilities in the Ninth Circuit.

19          Defendants must also provide Plaintiffs a list containing updated bond decision outcomes

20   for every class member whose bond decision was initially entered as "No Action."  Defendants'

21   future Class Lists must provide clarifying information for every "No Action" entry, including

22   whether or not the class member has been rescheduled for a bond hearing and if so, the date of that

23   hearing.  Defendants shall then include that class member on the Class List that covers the time

24   period when he or she receives an actual bond decision outcome.

25   //

26   //

27   //

28   //

1    Plaintiffs' motion is denied in all other respects.

2    **IT IS SO ORDERED.**

3    Dated: June 19, 2020

4

5    _____

6    JACQUELINE SCOTT CORLEY
     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

17